UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| L-S, a minor, by P.S., his parent and next friend, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>vs.<br><br>WEBLOYALTY.COM, INC., GAMESTOP CORPORATION and VISA INC.,<br><br>            Defendants. | Case No. 3:10-CV-1372 (CHS)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS WEBLOYALTY.COM, INC.'S AND GAMESTOP CORPORATION'S REQUEST FOR JUDICIAL NOTICE**<br><br>***Oral Argument Requested*** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS WEBLOYALTY.COM, INC.'S AND GAMESTOP CORPORATION'S REQUEST FOR JUDICIAL NOTICE**

## TABLE OF CONTENTS

I. Introduction ................................................................................................................ 1

II. Legal standard ........................................................................................................... 3

III. Argument .................................................................................................................. 4

    A. Judicial Notice Of The Exhibits Is Proper Because They Form The Basis Of Plaintiff's Claims. ......................................................................................... 4

    B. Webloyalty Has Authenticated The Exhibits Properly and Adequately. ............... 7

# TABLE OF AUTHORITIES

### FEDERAL CASES

*Baxter v. Intelius, Inc.*,
   No. SACV 09-1031 AG (MLGx), 2010 WL 3791487,
   (C.D. Cal. Sept. 16, 2010) .......................................................................... 2, 5, 7, 8, 9, 11

*Browne v. Avvo, Inc.*,
   525 F. Supp. 2d 1249, 1251 (W.D. Wash. 2007) ................................................................ 6

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2nd Cir. 1991) ................................................................................................ 3

*Cvent, Inc. v. Eventbrite, Inc.*,
   No. 1:10-cv-00481 (LMB/IDD), 2010 WL 3732183 (E.D. Va. Sept. 15, 2010) ................. 6

*Datel Holdings, Ltd. v. Microsoft Corp.*,
   712 F. Supp. 2d 974, 985 (N.D. Cal. 2010) ........................................................................ 6

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
   423 F. Supp. 2d 173 (S.D.N.Y. 2006) ................................................................................. 5

*Ferrington v. McAfee, Inc.*,
   No. 10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ..................... 9, 10, 11

*Fershtadt v. Verizon Commc'ns Inc.*,
   No. 07 Civ. 6963(CM), 2010 WL 571818 (S.D.N.Y. Feb. 9, 2010) .................................... 8

*Hotel Employees & Restaurant Employees Union, Local 100 of New York, N.Y. &
   Vicinity, AFL-CIO v. City of New York Dep't of Parks & Recreation*,
   311 F.3d 534 (2nd Cir. 2002) .............................................................................................. 5

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3rd Cir. 1997) ............................................................................................ 4

*In re Citigroup Auction Rate Sec. Litig.*,
   700 F. Supp. 2d 294 (S.D.N.Y. 2009) ................................................................................. 6

*In re Easysaver Rewards Litig.*,
   No. 09-CV-2094-MMA (BLM), 2010 WL 3259752 (S.D. Cal. Aug. 13, 2010) ............ 9, 10

*In re Merrill Lynch Auction Rate Sec. Litig.*,
   704 F. Supp. 2d 378 (S.D.N.Y. 2010) .............................................................................. 2, 5

*In re Vistaprint Corp. Marketing and Sales Practices Litig.*,
   No. 4:08-md-1994, 2009 WL 2884727 (S.D. Tex. Aug. 31, 2009) ............................ 2, 7, 11

*Kinderstart.com LLC v. Google, Inc.*,
   No. C 09-2057 JF (RS), 2007 WL 831806 (N.D. Cal. Mar. 16, 2007) .................................. 6

*Kramer v. Time Warner Inc.*,
   937 F.2d 767 (2nd Cir. 1991) ............................................................................................... 3

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007) ................................................................................................ 3

*Schnall v. Marine Midland Bank*,
   225 F.3d 263 (2nd Cir. 2000) ............................................................................................... 6

*Sira v. Morton*,
   380 F.3d 57 (2nd Cir. 2004) ................................................................................................. 3

### STATE CASES

*Drabik v. Town of East Lyme*,
   234 Conn. 390, 662 A.2d 118 (1995) .................................................................................. 7

*First Union Nat. Bank v. Woermer,*
   887 A.2d 893, 92 Conn. 696 (Conn. App. Ct. 2005) ............................................................ 8

*Jewett v. Jewett*,
   265 Conn. 669, 830 A.2d 193 (2003) .................................................................................. 7

### FEDERAL RULES

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 3, 6

Fed. R. Civ. P. 12(c) ........................................................................................................... 6

Fed. R. Evid. 201 ............................................................................................. 3, 9, 10, 11

Fed. R. Evid. 201(b) ............................................................................................................ 3

Fed. R. Evid. 901(b)(1 ...................................................................................... 3, 9, 10, 11

- iii - Memorandum in Support of Defendants'
Request for Judicial Notice
Case No. 10-CV-1372

In connection with their concurrently filed Motion to Dismiss, Defendants Webloyalty.com, Inc. ("Webloyalty") and GameStop Corporation ("GameStop") submit this memorandum of points and authorities in support of their motion, pursuant to Rule 201 of the Federal Rules of Evidence, that the Court take judicial notice of certain documents that are incorporated or otherwise integral to Plaintiff's Amended Complaint or available as public records.

## I. INTRODUCTION

As detailed in Webloyalty's and GameStop's Motion to Dismiss Plaintiff's Amended Complaint, Plaintiff, minor L-S ("L-S" or "Plaintiff") filed this Action under a variety of legal theories, all of which at root are predicated on Plaintiff claiming that he was deceived into providing his authorization for enrollment in Webloyalty's Shopper Discounts & Rewards program (the "Program"). After L-S completed an online internet transaction to purchase a video game on the website of GameStop, for which he paid by Visa debit card, he clicked a promotional link which took him to the Program's offer and enrollment webpage (the "Enrollment Page"). L-S then elected to join the Program by reentering the last four digits of his debit card number, entering his email address twice (right next to a full set of the Program's "Offer and Billing Details"), and then clicking yet another confirmatory web button. After a thirty-day free-trial period, Webloyalty charged his debit card for Program membership. Approximately one year later, L-S's membership in the Program ended.

All of the allegations and causes of action in the Plaintiff's Amended Complaint rise or fall on whether Plaintiff provided his authorization to join the Program informed by the disclosures on the enrollment webpage of the Program. Therefore, Webloyalty and GameStop

request that this Court take judicial notice of the Program's Enrollment Page and its billing disclosures.  (The Webloyalty Enrollment Page is attached as Ex. A to the Declaration of Richard Winiarski, Webloyalty's Vice-President of Marketing).  *See, e.g., Baxter v. Intelius, Inc.*, No. SACV 09-1031 AG (MLGx), 2010 WL 3791487, at *2, 4 (C.D. Cal. Sept. 16, 2010) (taking judicial notice of defendant's webpage viewed by plaintiffs when enrolling in the monthly membership program); *In re Vistaprint Corp. Marketing and Sales Practices Litig.*, No. 4:08-md-1994, 2009 WL 2884727 (S.D. Tex. Aug. 31, 2009) (considering on-line membership program enrollment page in connection with motion to dismiss); *In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 385 n. 4 (S.D.N.Y. 2010) (taking judicial notice of website disclosures).

Webloyalty and GameStop also request that this Court take judicial notice of L-S's account history as reflected in Webloyalty's Customer Service Administration Tool, which details the communications and interactions between L-S and Webloyalty, and further confirms (together with Mr. Winiarski's Declaration) that Webloyalty can readily identify with certainty the specific Enrollment Page on which L-S enrolled in the Program. (*See* Winiarski Decl., ¶¶ 3 and 6 and Ex. D).

Finally, Webloyalty and GameStop request that this Court take judicial notice of enrollment pages of other membership programs considered by courts which have analyzed factual and legal issues virtually identical to the issues in this Case.  Because these enrollment pages will help this Court compare Webloyalty's Enrollment Page to other pages considered by other courts in similar cases, they are undoubtedly relevant here.  Moreover, these pages are publicly available from the dockets of other United States District Courts and, thus, are readily

accessible and verifiable.

## II.  LEGAL STANDARD

Federal Rule of Evidence 201 provides that a fact is subject to judicial notice if it is "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201.  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2nd Cir. 1991).

In ruling on a 12(b)(6) motion, courts may also consider a document that is not attached to a complaint if the document forms the basis of the plaintiff's claim.  *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007) ("[E]ven if not attached or incorporated by reference, a document 'upon which [the complaint] solely relies and which is *integral to the complaint'* may be considered by the court in ruling on such a motion.") (italics added); *see also Sira v. Morton*, 380 F.3d 57, 67 (2nd Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, … materials incorporated in it by reference, … and documents that, although not incorporated by reference, are "integral" to the complaint …") (internal quotes omitted).  The purpose of this expansive approach is to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based.  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2nd Cir. 1991) ("we have held that when a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking

the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences."). Indeed, as Justice Alito made clear when he sat on the Third Circuit: "What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3rd Cir. 1997).

## III. ARGUMENT

### A. Judicial Notice Of The Exhibits Is Proper Because They Form The Basis Of Plaintiff's Claims.

L-S claims that Webloyalty deceived him into subscribing to the Program during the checkout process after he purchased his video game on GameStop's retail website. The Amended Complaint is replete with vague, conclusory (and false) allegations regarding the purportedly deceptive enrollment process. (*E.g.*, Am. Compl., ¶¶ 1-3, 22-28, 32-35). Yet, L-S did not attach the Enrollment Page, which undoubtedly is critical to his claims, to his Amended Complaint. In these circumstances, the doctrine of incorporation by reference prevents the Plaintiff from hiding his head in the sand and escaping judicial scrutiny of his claims, by permitting Defendants to submit and enabling the Court to consider the Enrollment Page in ruling on Defendants' Motion to Dismiss. *See In re Burlington Coat Factory*, 114 F.3d at 1426 ("the rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint – lack of notice to the plaintiff – is dissipated 'where plaintiff has actual notice … and has relied upon these documents in framing the complaint.' … Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by

failing to attach or explicitly cite them."); *Hotel Employees & Restaurant Employees Union, Local 100 of New York, N.Y. & Vicinity, AFL-CIO v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 549 (2nd Cir. 2002) (may be appropriate to take notice of the contents of a website); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n. 8 (S.D.N.Y. 2006) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website"); *Baxter v. Intelius, Inc.*, No. SACV 09-1031 AG (MLGx), 2010 3791487, at *2, 4 (C.D. Cal. Sept. 16, 2010) (granting motion to dismiss; after taking judicial notice of defendant's webpage, the court found that the webpage was not deceptive as a matter of law because the "disclosures [on the webpage] combined with the affirmative steps for acceptance are sufficient that, as a matter of law, the webpage is not deceptive").

*Baxter v. Intelius,* decided only three months ago, is instructive here.  Like here, the *Baxter* plaintiffs alleged that the defendants enrolled them in a monthly membership program without their knowledge or permission.  *Baxter*, 2010 WL 3791487, at *1.  In *Baxter*, after the customer made a purchase from defendant Intelius's website by inputting the customer's billing and contact information, the site displayed a webpage operated by defendant Adaptive, a company that offers discount membership programs.  *Id*.  The plaintiff was then given a choice between enrolling in the membership program or declining it.  *Id*.  Finding that the requirements of Rule 201 were met, the court granted Adaptive's request for judicial notice of the Adaptive webpage, and also considered it based on the doctrine of incorporation by reference because, as here, it was central to the plaintiff's claims.  *Id*. at *2-3.  Other courts have reached similar conclusions.  *See, e.g., In re Merrill Lynch Auction Rate Sec. Litig*., 704 F. Supp. 2d 378, 385 n.

4 (S.D.N.Y. 2010) ("The Court takes judicial notice of … the remedial disclosures subsequently placed on Merrill Lynch's website."); *Cvent, Inc. v. Eventbrite, Inc.*, No. 1:10-cv-00481 (LMB/IDD), 2010 WL 3732183, at *4 (E.D. Va. Sept. 15, 2010) (the court considered the disclosures on screenshots of defendant's website, including whether it contained terms of use); *Datel Holdings, Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 985 (N.D. Cal. 2010) (court took judicial notice of printouts from defendant's website); *In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. 2d 294, 301 n. 2 (S.D.N.Y. 2009) (taking judicial notice of website disclosures); *Browne v. Avvo, Inc.*, 525 F. Supp. 2d 1249, 1251 (W.D. Wash. 2007) (screen shots of websites fall within categories of documents which a court is allowed to consider in ruling on a 12(c) or 12(b)(6) motion); *Kinderstart.com LLC v. Google, Inc.*, No. C 09-2057 JF (RS), 2007 WL 831806, at *21 & n. 20 (N.D. Cal. Mar. 16, 2007) (granting request for judicial notice of Google's webpage printouts that were offered to demonstrate steps a user must take to solicit one of Google's services).

The Amended Complaint also includes numerous allegations concerning charges made to L-S's account and L-S's purported lack of awareness that he had entered into a financial relationship with Webloyalty (*e.g.,* Am. Compl., ¶¶ 22, 24, 31, 49). Plaintiff's account history as reflected in Webloyalty's Customer Service Administration Tool computer screen (Winiarski Decl., Ex. D), which details the communications and interactions between L-S and Webloyalty, is therefore, equally relevant and appropriate for judicial notice. *See, e.g.*, *Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2nd Cir. 2000) (affirming dismissal; "[o]rdinarily our consideration is limited to the face of the complaint and documents attached to the complaint or incorporated by reference, but here we may also consult Schnall's Cardholder Agreement,

*account history and monthly statements* because they are integral to his claims and Schnall had notice of that information.") (emphasis added).  L-S's account history, together with Mr. Winiarski's declaration, also further confirms that Webloyalty can readily identify and provide the Court with the specific Enrollment Page on which L-S enrolled in the Program.  As explained by Mr. Winiarski, each enrollment page is identified by a unique ID number, which corresponds to an identifying number on the members account record.  Winiarski Decl., ¶ 3, Ex. A (Enrollment Page, bearing unique ID No. 125208 at bottom) and ¶ 6, Ex. D (L-S's membership record indicating "solicitation" no. 125208).

Finally, it is proper for the Court to take judicial notice of the publicly available enrollment pages of other programs considered in connection with the decisions of other courts, which have analyzed factual and legal issues similar to this Case, and on which the parties here rely.  *See, e.g., Jewett v. Jewett*, 265 Conn. 669, 679, 830 A.2d 193, 202 (2003) ("There is no question that the trial court may take judicial notice of the file in another case, whether or not the other case is between the same parties"); *Drabik v. Town of East Lyme*, 234 Conn. 390, 398, 662 A.2d 118, 122 (1995) (same).  The enrollment pages considered in connection with cases such as *Vistaprint* (Winiarski Decl., Ex. B) and *Baxter* (Esrick Decl., Ex. D) show this Court the basis for those decisions and the context in which such decisions were rendered.  They leave no doubt as to the insufficiency of L-S's claims, and are therefore relevant to the resolution of this Action.

    **B.**    **Webloyalty Has Authenticated The Exhibits Properly and Adequately.**

Federal Rule of Evidence 901(b)(1) provides for authentication by "[t]estimony of witness with knowledge that a matter is what it is claimed to be."  Webloyalty authenticated the Exhibits by a declaration from its Vice-President of Marketing, Mr. Richard Winiarski

("Winiarski Decl.").

Mr. Winiarski declared that he has detailed knowledge about the world-wide-web page flows and enrollment processes that were in place for customers like L-S who joined the Program through the GameStop.com website in 2009, and that he has reviewed Webloyalty's records regarding Plaintiff's enrollment in the Program. (Winiarski Decl., ¶¶ 1-2). Mr. Winiarski also explained that he could determine with certainty that the Enrollment Page attached to his declaration was the page L-S viewed during his enrollment process, because each specific Shopper Discounts & Rewards enrollment page has a unique identifying number, referred to as its Campaign ID, or CPID. (Winiarski Decl., ¶¶ 3, 6 and Exs. A and D). Mr. Winiarski has unquestionably provided sufficient information to properly authenticate the Exhibits. *See First Union Nat. Bank v. Woermer*, 887 A.2d 893, 901-02, 92 Conn. 696, 708-09 (Conn. App. Ct. 2005) (Employee's testimony was sufficient to authenticate mortgage history document because even though she was not personally familiar with the load or origin of the document, she was familiar with the records and the computer system the mortgagee used; "The witness who authenticates a business record need not have prepared the report. The witness need only testify as to his familiarity with the computer system and its reliability"); *Fershtadt v. Verizon Commc'ns Inc.*, No. 07 Civ. 6963(CM), 2010 WL 571818, at *9 (S.D.N.Y. Feb. 9, 2010) (employee benefits summary document properly authenticated by defendant's Director of Benefits, "who submitted a declaration stating her familiarity with the document and recognizing the document's authenticity"); *Baxter*, 2010 WL 3791487, at *2 (taking judicial notice of defendant Adaptive's webpage, attached as an exhibit to the declaration of the defendant

Intelius' Director of Program Management[1]).

Mr. Winarski's personal knowledge and the certainty with which he is able to identify the precise page viewed by the Plaintiff contrast sharply with two recent cases in which the Courts declined to take judicial notice of the offered enrollment pages. *See In re Easysaver Rewards Litig.*, No. 09-CV-2094-MMA (BLM), 2010 WL 3259752 (S.D. Cal. Aug. 13, 2010); *Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010).

In *Easysaver*, the court was unable to determine whether the webpage submitted by the defendant was the webpage upon which the plaintiff actually enrolled. *See Easysaver*, 2010 WL 3259752, at *5 ("The Court finds that whether these are the webpages Plaintiffs would have viewed during their online transactions is subject to 'reasonable dispute.'") (quoting Fed. R. Evid. 201). The court's uncertainty stemmed from a number of causes, including the following: (1) *Easysaver* involved multiple plaintiffs, each with slightly different enrollment experiences; (2) the affiant in *Easysaver*, who was not even an employee of the defendant, only "cross-checked the records of the four named plaintiffs' orders with the versions of the webpages in effect and accessible on those dates" and conceded that the enrollment pages were "changed, modified, and revised over time." *Id.* at *4-5 and (3) there were distinct differences between the five versions of the enrollment pages offered in *Easysaver*, including a different ordering of the paragraphs and varying text under the green acceptance button. *Id.* at *5.

In contrast, Mr. Winiarski is an experienced executive at Webloyalty who explained in his declaration that the attached Enrollment Page "has a unique identifying number" confirming

---

[1] *See* Decl. of Ron Thunen III, filed on July 9, 2010 as Attachment 1 at Docket No. 83 in *Baxter v. Intelius, Inc.*, Case No.: SA CV-09-01031-AG-(MLG) (C.D. Cal. 2010).

that L-S enrolled on the specified page. Winiarski Decl., ¶ 3. *Contra Easysaver*, 2010 WL 3259752, at *21 n. 4 ("It is questionable whether Rabinovitz, an employee of Provide [the merchant owning the Proflowers website] has the personal knowledge to authenticate webpages controlled by EMI [owner of the membership program].").

Likewise, in *Ferrington*, the court denied the defendant's request for judicial notice largely because of the discrepancies between the screen shots provided by the defendant and plaintiff. *Ferrington* , 2010 WL 3910169, at *3. More specifically, because the relevant pop-up ad was no longer running, the defendant had to "recreate the image Plaintiffs would have seen . . . . [This] reconstruction is materially different from the screen shot provided by the plaintiffs, which was created at a time when the pop-up still appeared on the McAfee website." *Id*. ("Based on the discrepancies between the images submitted by Defendant and Plaintiffs, the Court finds that Defendant's image is subject to reasonable dispute."). There is no similar discrepancy here. Mr. Winiarski confirmed that the Enrollment Page submitted by Webloyalty is the Enrollment Page viewed and acted upon by Plaintiff L-S.

The circumstances in *Ferrington* differed in other notable ways, including the fact that the defendant in *Ferrington* admitted to making changes to the webpages, while Webloyalty made no such changes. *See id.* at *3-4. Moreover, the *Ferrington* court accepted the plaintiff's basic contention as true, *i.e.,* that clicking on the ad in the pop-up is a necessary step to download the software that plaintiff just purchased. *Id.* at *9. L-S makes no similar allegation here. And, even if this was the impression with which L-S was left as he moved from the GameStop site to the Webloyalty Enrollment Page, L-S had the benefit of a page full of disclosures before he

enrolled. There was no similar, subsequent disclosure page in *Ferrington*.

Finally, the *Ferrington* court's holding is based on expressly distinguishing *Vistaprint* on several grounds: (1) the plaintiffs in *Vistaprint* "were required to proactively enter their email addresses, rather than merely click on a button, in order to authorize charges to their credit cards, . . ."; (2) "[T]he terms of the pop-up offer were affirmatively presented to plaintiffs in close proximity to the place where they entered their email addresses.; and (3) "The ad in *Vistaprint* also clearly identified the third party receiving Plaintiffs' billing information as a service provider for *Vistaprint*." *Id*. at 11. Webloyalty did precisely the same thing as in *Vistaprint* (in which case, again, the court did take judicial notice of the enrollment page and ancillary disclosures), and more, by also requiring that L-S proactively enter the last-4 digits of the debit card that would be billed.[2]

## IV.   CONCLUSION

For the foregoing reasons, Defendants Webloyalty and GameStop respectfully request that their Request for Judicial Notice be granted.

---

[2] The enrollment pages reviewed in *Vistaprint* and *Baxter* have, likewise, been properly authenticated as the pages that those Courts considered. As explained in the Winarksi Decl. and the declaration of Webloyalty's and Gamestop's attorney, Daniel Esrick (filed with the accompanying Motion to Dismiss), the enrollment pages reviewed in *Vistaprint* and *Baxter* are publicly available from the courts' dockets and, thus, are readily accessible and verifiable. Specifically, the *Vistaprint* enrollment page is publicly available on the *Vistaprint* case docket on the Case Management/Electronic Case Filing Link on the website of the U.S. District Court for the Southern District of Texas (http://www.casd.uscourts.gov/cmecf), and the *Baxter* enrollment page is publicly available on the *Baxter* case docket on the Case Management/Electronic Case Filing Link on the website of the U.S. District Court for the Central District of California (http://www.casd.uscourts.gov/cmecf). Winiarski Decl., ¶ 4; Esrick Decl., ¶ 5.

Dated:  December 23, 2010

DEFENDANTS
WEBLOYALTY, INC. AND
GAMESTOP CORPORATION


By:_____/s/_____
    James E. Nealon (ct 08161)
    KELLEY DRYE & WARREN LLP
    400 Atlantic Street
    Stamford, Connecticut  06901
    Tel.:  (203) 324-1400
    Fax:   (203) 327-2669
    jnealon@kelleydrye.com


James W. Prendergast (MA SBN: 553073) (*Pro hac vice*)
John J. Regan (MA SBN: 4151201) (*Pro hac vice*)
Daniel M. Esrick (MA SBN: 647676) (*Pro hac vice*)
Anant Saraswat (MA SBN: 676048)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
Email:  james.prendergast@wilmerhale.com
Email:  john.regan@wilmerhale.com
Email:  daniel.esrick@wilmerhale.com
Email:  anant.saraswat@wilmerhale.com

Niki Z. Moore (CA SBN: 244968)
950 Page Mill Road,
Palo Alto, CA 94304
Tel.:  (650) 858-6000
Fax:  (650) 858-6100
Email:  niki.moore@wilmerhale.com