UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| L.S., a minor, by P.S., his parent and next friend, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>   v.<br><br>WEBLOYALTY.COM, INC., GAMESTOP CORPORATION and VISA INC.,<br><br>      Defendants. | Case No. 10-CV-01372 (CSH)<br><br><br><br><br><br>March 7, 2011 |

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT VISA INC.'S MOTION TO
<u>DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

ORAL ARGUMENT IS REQUESTED

## TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|---|
| I. | PRELIMINARY STATEMENT | | 1 |
| II. | ARGUMENT | | 1 |
| | A. | Plaintiff Identifies No Reason For Needing Discovery From Visa To Oppose Its Motion To Dismiss | 1 |
| | B. | Plaintiff Proffers No Basis For Maintaining A Claim Against Visa To The Extent That He States No Claim Against The Other Defendants | 1 |
| | C. | Plaintiff Proffers No Independent Basis For A Claim Against Visa Under Federal Law | 2 |
| | | 1. Plaintiff Can Identify No Liability Provision Of The Electronic Funds Transfer Act That Visa Allegedly Violated | 2 |
| | | 2. Plaintiff Concedes That The Federal Statutes On Which He Relies Impose No Liability For Aiding And Abetting | 2 |
| | D. | Plaintiff Proffers No Independent Basis For A Claim Against Visa Under Connecticut State Law | 3 |
| | | 1. Plaintiff Identifies No Basis for Applying The Civil Damages Statute For Theft To An Alleged Aider And Abettor Like Visa | 3 |
| | | 2. Plaintiff Can Allege No Payment From Him To Visa For Which He Could Seek Restitution Under An Unjust Enrichment Theory | 4 |
| | | 3. Plaintiff Provides No Basis For A Claim Against Visa Based On Asserted Negligent Misrepresentations | 4 |
| | |     a. Plaintiff Alleges No Visa Statement To Him And On Which He Relied | 4 |
| | |     b. Plaintiff Offers No Legal Or Alleged Factual Basis For His Claim That Visa Aided and Abetted The Other Defendants' Asserted Misrepresentations | 6 |
| | | 4. Plaintiff Identifies No Basis For A Claim Against Visa Under The Connecticut Unfair Trade Practices Act | 6 |
| | |     a. Plaintiff Alleges No Facts That Could Support His Claim That Visa Violated The Unfair Trade Practices Act | 6 |

                                                                                                                      <u>Page</u>

                b.     Plaintiff Provides No Basis For Imposing Aiding And Abetting Liability Under The Unfair Trade Practices Act ......... 8

       5.     Plaintiff Alleges No Facts That Could Establish Visa's Agreement To Participate In A Civil Conspiracy ....................... 10

III.     CONCLUSION ................................................................................................ 10

## **TABLE OF AUTHORITIES**

Page

**CASES**

*Bennett Restructuring Fund, L.P. v. Hamburg*,
   2003 WL 178753 (Conn. Super. Ct. Jan. 2, 2003) ............................................................. 5

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
   511 U.S. 164 (1994) ............................................................................................................. 9

*Connecticut National Bank v. Ealahan Electric Co.*,
   1992 WL 335729 (Conn. Super. Ct. Nov. 6, 1992) ............................................................. 9

*Connecticut National Bank v. Giacomi*,
   233 Conn. 304, 659 A.2d 1166 (1995) ................................................................................ 8

*Connecticut National Bank v. Voog*,
   233 Conn. 352, 659 A.2d 172 (1995) .................................................................................. 8

*Dudrow v. Ernst & Young, LLP*,
   1998 WL 800204 (Conn. Super. Ct. Nov. 4, 1998) ............................................................. 8

*Dudrow v. Ernst & Young*,
   1999 WL 786343 (Conn. Super. Ct. Sept. 14, 1999) ....................................................... 5, 9

*D'Ulisse-Cupo v. Board of Directors of Notre Dame High School*,
   202 Conn. 206, 520 A.2d 217 (1987) .................................................................................. 5

*Efthimiou v. Smith*,
   268 Conn. 499, 84 A.2d 222 (2004) .................................................................................... 6

*Loureiro Contractors, Inc. v. City of Danbury*,
   2010 WL 4942983 (Conn. Super. Ct. Nov. 18, 2010) ......................................................... 5

*Rea v. Rubino*,
   2010 WL 5646065 (Conn. Super Ct. Dec. 30, 2010) ....................................................... 8-9

*Retirement Program for the Employees of the Town of Fairfield v. Madoff*,
   2010 WL 2106654 (Conn. Super. Ct. Apr. 16, 2010) ......................................................... 3

*Roncari Development Co. v. GMG Enterprises, Inc.*,
   45 Conn. Supp. 408, 718 A.2d 1025 (Conn. Super. Ct. Nov. 10, 1998) .............................. 9

*State v. Liberty Mutual Holding Co.*,
   2009 WL 943094 (Conn. Super. Ct. Mar. 20, 2009) ........................................................... 9

 Page

*State v. Palkimas*,
   153 Conn. 555, 219 A.2d 220 (1966) ................................................................................. 3

*Williams Ford, Inc. v. Hartford Courant Co.*,
   232 Conn. 559, 657 A.2d 212 (1995) ................................................................................. 5

*Yankee Realty v. North Haven Lanes, Inc.*,
   1992 WL 204628 (Conn. Super. Ct. Aug. 18, 1992) ........................................................... 9

**STATUTES AND RULES**

Connecticut General Statute § 42-110b ...................................................................................... 9

Connecticut General Statute § 52-564 ........................................................................................ 3

Restore Online Shoppers' Confidence Act, Public Law No. 11-345 .......................................... 7

**OTHER AUTHORITIES**

12 C.F.R. § 205.10 ...................................................................................................................... 2

15 U.S.C. § 1693a ....................................................................................................................... 2

**I.      PRELIMINARY STATEMENT**

Defendant Visa Inc. ("Visa") submits this reply memorandum in support of its Motion To Dismiss Plaintiff's Amended Complaint (D.E. 38). When stripped of its rhetoric and factually unsupported assertions, plaintiff's opposition (D.E. 49) ("Pl.'s Opp'n") fails to identify any basis for a claim against Visa.

**II.     ARGUMENT**

    **A.      Plaintiff Identifies No Reason For Needing
          Discovery From Visa To Oppose Its Motion To Dismiss**

This Court's December 7, 2010 Order (D.E. 31) directed that "[i]f Plaintiff needs discovery in order to respond to the motions to dismiss and the parties are unable after consultation to agree to that discovery, then Plaintiff should indicate what is required and why in his opposition papers." Plaintiff did not identify any need for discovery as to Visa's motion, or consult with Visa about that, prior to filing his opposition papers. Moreover, while plaintiff's opposition now indicates certain discovery that he would like from Visa, he offers no reason why he needs any of that discovery to respond to the issues raised in Visa's motion, which is based exclusively on plaintiff's complaint allegations. *See* Pl.'s Opp'n at 11. No discovery is therefore necessary for the Court to decide Visa's motion to dismiss.

    **B.      Plaintiff Proffers No Basis For Maintaining A Claim Against Visa
          To The Extent That He States No Claim Against The Other Defendants**

Plaintiff concedes that his aiding and abetting claims against Visa should be dismissed to the extent that the Court dismisses his underlying claims against Webloyalty or GameStop. *See* Pl.'s Opp'n at 12. Plaintiff nonetheless asserts, without citing any authority whatsoever, that even if "Webloyalty and GameStop are relieved from liability by virtue of the so-called 'Enrollment Page,'" Visa's conduct "is independently actionable." *Id.* But if the Court finds that plaintiff consented to his purchase of Webloyalty's program on its enrollment page, plaintiff can

assert no injury from that purchase for which to seek relief from Visa, and so his direct claims against Visa should be dismissed.

### C. Plaintiff Proffers No Independent Basis For A Claim Against Visa Under Federal Law

#### 1. Plaintiff Can Identify No Liability Provision Of The Electronic Funds Transfer Act That Visa Allegedly Violated

Plaintiff's opposition, like his complaint, identifies no liability provision of the Electronic Funds Transfer Act that Visa supposedly violated. *See* Pl.'s Opp'n at 12-13; Am. Compl. ¶¶ 96-100. Plaintiff asserts that he "cites 15 U.S.C. § 1693a(11)," but that section simply "defines an 'unauthorized fund transfer.'" Pl.'s Opp'n at 12. Plaintiff then seeks "leave to amend," yet identifies no liability provision of the Act that he could maintain Visa violated in any amendment. *Id.* at 13. Instead, plaintiff only notes federal regulations concerning "'the person that obtains the authorization' for a preauthorized electronic fund transfer" — Webloyalty in this case — and "'the designated payee or the financial institution,'" which in this case would be the payee Webloyalty or the bank that debited the payments from plaintiff's account. *Id.* at 13 n.2 (quoting 12 C.F.R. §§ 205.10(b) & (d)); *see also* C.F.R. § 205.10(a)(1) (referring to "the account-holding financial institution"). Those regulations would not apply to Visa. Plaintiff's claim against Visa under the Act should therefore be dismissed, without leave to amend.

#### 2. Plaintiff Concedes That The Federal Statutes On Which He Relies Impose No Liability For Aiding and Abetting

Visa's initial memorandum (D.E. 39) ("Visa Mem.") established that neither the Electronic Funds Transfer Act nor the Electronic Communications Privacy Act imposes any liability on, or provides any relief against, a party that aids or abets a violation of those Acts. *See* Visa Mem. at 8-10. Plaintiff does not dispute that in his opposition (*see* Pl.'s Opp'n at 12-13), and so plaintiff's aiding and abetting claims against Visa under those Acts should be dismissed.

### D. Plaintiff Proffers No Independent Basis For A Claim Against Visa Under Connecticut State Law

#### 1. Plaintiff Identifies No Basis For Applying The Civil Damages Statute For Theft To An Alleged Aider And Abettor Like Visa

Plaintiff does not claim that Visa engaged in theft, but only that Visa is liable for aiding and abetting the asserted theft by Webloyalty and GameStop under Connecticut's civil damages statute for theft, Conn. Gen. Stat. § 52-564. *See* Am. Compl. ¶¶ 112-122, 153-155. Visa has established that neither the statute's text nor the case law interpreting the statute provides for damages against aiders and abettors, or against parties like Visa that allegedly did not know of the theft or receive proceeds from it. *See* Visa Mem. at 11-13. In response, plaintiff asserts that "Connecticut recognizes a claim of aiding and abetting theft." Pl.'s Opp'n at 13-14. But neither case that plaintiff cites for that assertion addresses the *civil damages statute* for theft, or finds that it authorizes damages against an aider and abettor. *See id.* at 14 (citing *State v. Palkimas*, 153 Conn. 555, 557, 219 A.2d 220, 222 (1966) (addressing criminal prosecution under Conn. Gen. Stat. § 53-65); *Ret. Program for the Employees of the Town of Fairfield v. Madoff*, 2010 WL 2106654, at *1 (Conn. Super. Ct. Apr. 16, 2010) (addressing whether "this court lacks subject matter jurisdiction" because "plaintiffs lack standing")). Nor could the cases that plaintiff cites addressing *federal* securities laws establish that *Connecticut's* civil damages statute for theft authorizes damages against an aider and abettor. *See* Pl.'s Opp'n at 14. Thus, plaintiff's claim against Visa for aiding and abetting under that statute should be dismissed.[1]

---

[1] Plaintiff also asserts that "Visa knowingly and substantially assisted the theft," but cites no complaint paragraph alleging that Visa knew of GameStop's alleged billing misrepresentations to him or Webloyalty's allegedly deceptive pop-up advertisement to him, through which he claims they accomplished the theft. Pl.'s Opp'n at 14 & cited Am. Compl. ¶¶ 4, 35, 75-76, 151, 153-155, 158-160; *see also id.* ¶ 115; Visa Mem. at 12. Plaintiff similarly asserts that "Webloyalty did share its illegal revenues with Visa by using a portion of the stolen funds to pay Visa's fees," but cites no complaint paragraph alleging that Webloyalty paid fees to Visa, rather than to the bank with which Webloyalty contracted to process Visa card payments. Pl.'s Opp'n at 15 & cited Am. Compl. ¶¶ 4, 35, 108, 153-155.

### 2. Plaintiff Can Allege No Payment From Him To Visa For Which He Could Seek Restitution Under An Unjust Enrichment Theory

Plaintiff concedes that he cannot obtain relief under an unjust enrichment or money had and received theory unless Visa wrongfully obtained money from him.  *See* Pl.'s Opp'n at 15 (those theories seek to restore "a benefit which has come to [the defendant] at the expense of [the plaintiff]" or to "recover back money paid") (internal quotations omitted).  Plaintiff then asserts that Visa "took its share of the profits from Webloyalty's and GameStop's fraudulent charges through the fees it charged for the processing thereof."  *Id.*  But the complaint paragraphs that plaintiff cites do not allege that Visa received fees for any fraudulent conduct of Webloyalty or GameStop.  *See* Am. Compl. ¶¶ 72, 101-111, 153-155.  Plaintiff does not allege that any fees Webloyalty or GameStop paid for processing plaintiff's transaction were any different than for their transactions not involving any allegedly deceptive conduct.  *See id.*  Plaintiff's unjust enrichment and money had and received claims against Visa should accordingly be dismissed.

In addition, plaintiff does not dispute that Connecticut has not recognized a claim for aiding and abetting the unjust enrichment or money had and received of others, and so those claims against Visa also should be dismissed.  *See* Visa Mem. at 15; Pl.'s Opp'n at 15-16.

### 3. Plaintiff Provides No Basis For A Claim Against Visa Based On Asserted Negligent Misrepresentations

#### a. Plaintiff Alleges No Visa Statement To Him And On Which He Relied

Plaintiff concedes that his negligent misrepresentation claim requires him to show both that Visa "supplie[d] false information" to him and his "justifiable reliance upon the information."  Pl.'s Opp'n at 16 (internal quotations omitted).  But although plaintiff asserts that Visa made various representations, the complaint paragraphs that he cites do not allege that Visa represented anything *to him*.  *See id.* at 17 (citing Am. Compl. ¶¶ 12, 35, 72-76, 82, 133).

Plaintiff thus proffers only conclusory allegations that he "relied upon Visa's misrepresentations and omissions and [was] damaged thereby." Am. Compl. ¶ 135, cited at Pl.'s Opp'n at 17. Such conclusory allegations are not sufficient to defeat a motion to dismiss. *See* Visa Mem. at 5.[2]

Plaintiff tries to suggest that "Connecticut law requires the rejection" of Visa's argument that "for a negligent misrepresentation to be actionable it must be stated directly into the plaintiff's ear." Pl.'s Opp'n at 18. But in one of the cases that plaintiff cites in support of his position, the court subsequently granted summary judgment against the plaintiff because she "cite[d] no case in which any Connecticut court has found that the requirement of reliance is met by a plaintiff who has not even seen or been told of the alleged misrepresentation in entering into the transaction at issue." *Dudrow v. Ernst & Young*, 1999 WL 786343, at *8 (Conn. Super. Ct. Sept. 14, 1999). Consistent with that, courts in the other cases that plaintiff cites allowed claims to proceed only where the plaintiff did hear or see, and rely on, the defendant's allegedly negligent misrepresentation.[3] Because plaintiff here fails to allege that he saw or relied upon any Visa representation, his negligent misrepresentation claim against Visa should be dismissed.

---

[2] Plaintiff suggests two cases found conclusory allegations to be sufficient, but unlike here, in both cases the plaintiff allegedly received a representation directly from the defendant and offered facts explaining how the plaintiff relied on the representation. *See* Pl.'s Opp'n at 17-18, citing *D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High Sch.*, 202 Conn. 206, 208, 218 n.5, 520 A.2d 217, 218, 223 n.5 (1987) ("the defendant . . . orally represented to the plaintiff . . . that 'there would be no problem with her teaching certain courses and levels the following year,'" and the plaintiff explained that "[s]he did not search for other employment, relying instead on the defendants' representations that she would be rehired"); *Loureiro Contractors, Inc. v. City of Danbury*, 2010 WL 4942983, at *3-4 (Conn. Super. Ct. Nov. 18, 2010) (defendant made "representations as communicated in the project plans and specifications" to the plaintiff contractor, and plaintiff "reasonably relied on such plans and specifications in formulating its bid proposal and in subsequently commencing work").

[3] *See Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 578, 657 A.2d 212, 221-22 (1995) ("[t]he jury found that the [defendant] Courant, in the course of its direct dealings with the [plaintiff] dealerships, supplied false information for the guidance of these specific dealerships in their business transactions"); *Bennett Restructuring Fund, L.P. v. Hamburg*, 2003 WL 178753, at *15 (Conn. Super. Ct. Jan. 2, 2003) ("the plaintiffs allege that the defendants supplied false or misleading information about the financial health of RCI in the 1997 and 1998 10-Ks, and that they reasonably relied upon such information when they purchased the [RCI] Notes").

> **b.      Plaintiff Offers No Legal Basis Or Alleged Factual
> Basis For His Claim That Visa Aided And Abetted
> <u>The Other Defendants' Asserted Misrepresentations</u>**

Plaintiff points to no decision by a Connecticut appellate court recognizing a claim for aiding and abetting negligent misrepresentation.  *See* Pl.'s Opp'n at 18-19.  Nor does plaintiff offer any reason why such a claim should be recognized.  *See id.*  Plaintiff cites only *Efthimiou v. Smith,* 268 Conn. 499, 846 A.2d 222 (2004), which was a breach of fiduciary duty case.  *See id.*

In addition, plaintiff alleges no factual basis for a claim of aiding and abetting negligent misrepresentation.  Plaintiff asserts that Visa knew "the 'data pass' to be a scam and deceptive practice," knew "its own operating rules, merchant agreements, and fraud detection procedures, yet ignored them all," and "failed to act when its own rules were violated."  Pl.'s Opp'n at 19.  But regardless of what Visa may have known about any such data passing or violations of its rules, that would not show that Visa aided and abetted the alleged *negligent misrepresentations* — i.e., that Visa knew of, and substantially assisted in, the allegedly deceptive pop-up advertisement that Webloyalty provided to plaintiff, or the alleged billing misrepresentations that GameStop made to plaintiff.  Plaintiff alleges no facts that could show Visa knowingly assisted in the provision of those alleged misrepresentations to plaintiff.  His claim against Visa for aiding and abetting negligent misrepresentations accordingly should be dismissed.

> **4.      Plaintiff Identifies No Basis For A Claim Against
> <u>Visa Under The Connecticut Unfair Trade Practices Act</u>**
>
>> **a.      Plaintiff Alleges No Facts That Could Support His
>> <u>Claim That Visa Violated The Unfair Trade Practices Act</u>**

Plaintiff agrees that the Connecticut Unfair Trade Practices Act (or "CUTPA") requires him to show that he lost money or property as a result of unfair or deceptive practices by Visa.  *See* Pl.'s Opp'n at 20; Visa Mem. at 21-22.  Plaintiff then asserts that "Visa's processing of charges *not supported by full billing information*, perpetrated pursuant to a 'data pass,' . . .

offends public policy" as declared in the Restore Online Shoppers' Confidence Act. Pl.'s Opp'n at 21 (emphasis added). But plaintiff has not alleged and cannot allege that Visa processed his charges without his full billing information. To the contrary, plaintiff alleges that the "data-pass is the transmittal of a customer's *full credit or debit cardholder's number and billing information* from one merchant to another." Am. Compl. ¶ 2 (emphasis added).

The "data pass" thus allegedly allowed Webloyalty to obtain plaintiff's *full* billing information from GameStop and then use it to process his payment through the Visa network — without Visa knowing whether Webloyalty had obtained the full billing information through a "data pass" or directly from the plaintiff. Consistent with that, the federal statute that plaintiff references does not manifest any public policy regarding *Visa's* processing of charges, but instead is directed solely at *merchants*, prohibiting a merchant that is a "post-transaction third party seller" from using passed data, and prohibiting "an initial merchant" from passing data "to any post-transaction third party seller." Pub. L. No. 111-345, §§ 3(a) & (b).

Plaintiff also claims that Visa "tout[ed] its fraud protections . . . and consumer protections," and "informed the public that the 'data pass' was prohibited," but "despite those statements processed charges incurred thereby anyway." Pl.'s Opp'n at 21. Yet in the complaint paragraphs plaintiff cites for those assertions, he identifies no statement from Visa that it would not process a transaction involving a prohibited "data pass," instead of assessing the penalties or fines provided in Visa's rules for prohibited conduct. *See* Am Compl. ¶¶ 35, 76, 81-82. To the contrary, plaintiff acknowledges that when Visa was contacted by the Commerce Committee, "Visa notified Webloyalty's acquiring banks" — which processed Webloyalty's Visa card payments — "that they 'will be subject to fines' if they fail to remedy the violations." *Id.* at ¶ 75.

Indeed, the only specific Visa statement that plaintiff alleges is a press release that nowhere said that Visa could identify such "data pass" transactions or would not process them. *See id.* ¶ 76.

Moreover, plaintiff contends that GameStop passed his card data to Webloyalty in "November 2009," more than four months before Visa's press release "[i]n April 2010," so plaintiff could not have lost money from relying on any statement in Visa's press release. Am. Compl. ¶¶ 22, 76.

Because plaintiff alleges no facts that could establish a claim against Visa for violating CUTPA, plaintiff's claim against Visa under that Act should be dismissed.

> **b.** **Plaintiff Provides No Basis For Imposing Aiding And Abetting Liability Under The Unfair Trade Practices Act**

Plaintiff does not dispute that the text of CUTPA fails to use the words "aid" or "abet," or otherwise provide for aiding and abetting liability. *See* Pl.'s Opp'n at 22-24; Visa Mem. at 23-24. Nor does plaintiff identify any legislative history of CUTPA showing that it was intended to impose liability for aiding and abetting. *See* Pl.'s Opp'n at 22-24. No such liability should therefore be imposed. The Connecticut Supreme Court has directed that, as a matter of statutory construction, there is no aiding and abetting liability when "the express language of the statute . . . does not expressly include aiders and abettors" and "[t]he legislative history . . . does not indicate that the legislature intended to include aiders and abettors." *Conn. Nat'l Bank v. Giacomi*, 233 Conn. 304, 319, 659 A.2d 1166, 1173 (1995). Plaintiff claims that analysis applies only under the Uniform Securities Act (*see* Pl.'s Opp'n at 13 n.3), but relies only upon a case applying that analysis to *reject* aiding and abetting liability under the Continuing Care Act. *See Dudrow v. Ernst & Young, LLP*, 1998 WL 800204, at *5-6 (Conn. Super. Ct. Nov. 4, 1998).

Plaintiff asserts that "many Connecticut cases have upheld CUTPA claims grounded on accessorial conduct." Pl.'s Opp'n at 22. Yet most of the cases that plaintiff cites involve claims that a defendant conspired to violate CUTPA, not that it aided and abetted a CUTPA violation.[4]

---

[4] *See Conn. Nat'l Bank v. Voog*, 233 Conn. 352, 368, 659 A.2d 172, 180 (1995) ("conspired" to engage in "fraudulent misrepresentations" in "a CUTPA violation"); *Rea v. Rubino*, 2010 WL 5646065, at *1
*(footnote continued on next page)*

The only cases that plaintiff cites that may have involved aiding and abetting claims are unpublished Connecticut Superior Court decisions, which fail to engage in the required statutory analysis to determine whether such a claim exists under CUTPA. *See State v. Liberty Mut. Holding Co.*, 2009 WL 943094, at *5-8 (Conn. Super. Ct. Mar. 20, 2009); *Dudrow*, 1999 WL 786343, at *6; *Yankee Realty v. North Haven Lanes, Inc.*, 1992 WL 204628, at *4 (Conn. Super. Ct. Aug. 18, 1992). Those case are neither controlling authority for this Court nor persuasive given their failure to engage in the required statutory analysis.

Plaintiff also acknowledges that CUTPA instructs courts to be guided by interpretations given to the Federal Trade Commission Act ("FTCA"), and argues that "accessory liability not only exists under the FTCA, but that fact was well-settled when the Connecticut General Assembly enacted CUTPA in the 1970s." Pl.'s Opp'n at 23. But as Visa demonstrated, accessory liability no longer exists under the FTCA, in light of the 1994 decision in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), as the Federal Trade Commission itself has recognized. *See* Visa Mem. at 24-25. Plaintiff cites only to federal cases that are no longer good law because they pre-date the *Central Bank* decision by more than forty years, and to one unpublished Connecticut Superior Court decision that mistakenly relied on those cases. *See* Pl.'s Opp'n at 23-24; Visa Mem. at 26 (discussing that decision). Nothing in the Legislature's directive that courts "shall be guided by interpretations given" to the FTCA "as from time to time amended" suggests that courts should apply such interpretations from forty years ago, rather than currently prevailing federal judicial interpretations of the FTCA. Conn. Gen. Stat. § 42-110b(b).

---

*(footnote continued from previous page)*
(Conn. Super Ct. Dec. 30, 2010) ("civil conspiracy to commit a CUTPA violation"); *Roncari Dev. Co. v. GMG Enters., Inc.*, 45 Conn. Supp. 408, 423, 718 A.2d 1025, 1035 (Conn. Super. Ct. Nov. 10, 1998) ("pursuant to a conspiracy to monopolize . . . the defendants violated CUTPA"); *Conn. Nat'l Bank v. Ealahan Elec. Co.*, 1992 WL 335729, at *6-7 (Conn. Super. Ct. Nov. 6, 1992) ("the plaintiff and Mr. Ealahan conspired" in violation of CUTPA).

In any event, even if CUTPA allowed a claim for aiding and abetting, plaintiff ignores Visa's showing that he states no such claim. *See* Pl.'s Opp'n at 22-24; Visa Mem. at 26. Plaintiff bases his CUTPA claim against Webloyalty and GameStop on his allegation that they "designed a pop-up advertisement" knowing that he "would be deceived by that advertisement." Am. Compl. ¶ 147. But he alleges no facts that could show that Visa knew of the advertisement or substantially assisted in its design or publication to plaintiff. *See id.* ¶¶ 153-155.

### 5. Plaintiff Alleges No Facts That Could Establish Visa's Agreement To Participate In A Civil Conspiracy

Finally, plaintiff does not dispute that to state a claim for civil conspiracy he must allege, among other things, both facts that could establish an agreement and that the agreement was to commit an underlying tort against him. *See* Pl.'s Opp'n at 24. Plaintiff argues that he "has pled that Visa operates through membership agreements with Webloyalty and GameStop." *Id.* at 25 (citing Am. Compl. ¶¶ 72-75). Yet plaintiff has pled no facts that could establish that any Visa membership agreement was an agreement to commit a tort against him. *See id.* Moreover, none of the cited complaint paragraphs in fact alleges that Visa had a membership agreement with Webloyalty or GameStop. *See* Am. Compl. ¶¶ 72-75. Nor could plaintiff truthfully allege that, since Visa has not had membership agreements with merchants, but only with banks that issue Visa-branded payment cards and/or banks that process such card transactions for merchants.

Plaintiff also argues that he has pled an underlying tort. *See* Pl.'s Opp'n at 24. But he does not dispute that if the Court dismisses his tort claims for the reasons described in defendants' motions to dismiss, the Court also should dismiss his civil conspiracy claim.

### III. CONCLUSION

For all of the foregoing reasons, this Court should enter an order dismissing this action as against defendant Visa Inc. in its entirety and with prejudice.

Respectfully submitted,


    /s/  Jonathan B. Orleans
Jonathan B. Orleans (ct05440)
PULLMAN & COMLEY LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT   06601-7006
Telephone:  (203) 330-2129
Facsimile:   (203) 576-8888
jborleans@pullcom.com

Robert C. Mason (phv4322)
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY   10022-4690
Telephone:  (212) 715-1000
Facsimile:   (212) 715-1399
robert.mason@aporter.com

Matthew A. Eisenstein (phv4321)
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, DC   20004-1206
Telephone:  (202) 942-5000
Facsimile:   (202) 942-5999
matthew.eisenstein@aporter.com

Attorneys for Defendant Visa Inc.

- 12 -

## CERTIFICATION OF SERVICE

This is to certify that on this 7th day of March, 2011, a copy of the foregoing **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VISA INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT** was filed electronically, and served by mail on any party or counsel unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

Dated: March 7, 2011                                /s/ Jonathan B. Orleans
                                                    Jonathan B. Orleans (ct05440)

ACTIVE/72868.2/JORLEANS/2395451v1