# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| L-S, a minor, by P.S., his parent and next friend, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>WEBLOYALTY.COM, INC., GAMESTOP CORPORATION and VISA INC.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 3:10-CV-1372 (CHS)<br><br>***Oral Argument Requested*** |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS WEBLOYALTY.COM, INC.'S AND GAMESTOP CORPORATION'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

James E. Nealon (ct 08161)
KELLEY DRYE & WARREN LLP
400 Atlantic Street
Stamford, Connecticut  06901
Tel.:  (203) 324-1400
Fax:  (203) 327-2669
jnealon@kelleydrye.com

James W. Prendergast (MA SBN: 553073)
John J. Regan (MA SBN: 4151201)
Daniel M. Esrick (MA SBN: 647676)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
james.prendergast@wilmerhale.com
john.regan@wilmerhale.com
daniel.esrick@wilmerhale.com

Dated:  March 7, 2011

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................................1

II. ARGUMENT.....................................................................................................................2

    A.  Dismissal Under Rule 12(b)(6) is Required Because The Opposition Fails To Address The Lack Of Factual – As Opposed To Conclusory – Allegations In The Complaint Identifying Statements By The Defendants On Which Plaintiff Relied ..................................................................................................................2

    B.  The Amended Complaint Fails To Provide Sufficient Detail To Meet Rule 9(b)'s Particularity Requirement .......................................................................................5

    C.  Plaintiff Cannot Support His Connecticut Unfair Trade Practices Act ("CUTPA") Claims By Linking Them to the Restore Online Shoppers' Confidence Act ("ROSCA"). .........................................................................................................7

    D.  Plaintiff's Request for Discovery Should be Rejected, Because the Authenticity of the Enrollment Page is Not in Reasonable Dispute ................................................8

III. CONCLUSION................................................................................................................10

## TABLE OF AUTHORITIES

Federal Cases

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ................................................................................................... 2

*Bautista v. Los Angeles County*,
   216 F.3d 837 (9th Cir. 2000) ......................................................................................... 2

*Baxter v. Intelius, Inc.*,
   No. SACV 09-1031 AG (MLGx), 2010 WL 3791487 (C.D. Cal. Sept. 16, 2010) ............... 3, 8

*Bell Atlantic v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................... 2

*Bott v. Vistaprint USA, Inc.*,
   392 F. App'x 327 (5th Cir. 2010) ……………………………………………………………..3

*Catalano v. Bedford Associates, Inc.*,
   9 F. Supp. 2d 133 (D. Conn. 1998) ............................................................................... 6

*Chicago Area International Brotherhood of Teamsters v. Watermelon Depot, Inc.*,
   No. 94-C-5819, 1996 WL 447254 (N.D. Ill. July 31, 1996) ........................................... 5

*Chicago Truck Drivers, et al. v. Dudack Trucking Co., Inc.*,
   267 F. Supp. 2d 884 (N.D. Ill. 2003) .......................................................................... 4, 5

*City of New York v. Permanent Mission of India to the United Nations*,
   618 F.3d 172 (2d Cir. 2010) ........................................................................................... 8

*DeBlasio v. Merrill Lynch, Inc.*,
   No. 07-Civ-318, 2009 WL 2242605 (S.D.N.Y. July 27, 2009) ....................................... 6

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
   822 F.2d 1242 (2d Cir. 1987) ......................................................................................... 7

*Ferrington v. McAfee, Inc.*,
   No. 10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ............................ 8

*Gregory v. Dillard's, Inc.*,
   565 F.3d 464 (8th Cir. 2009) ......................................................................................... 2

*In re Musicland Holding Corp.*,
   398 B.R. 761 (Bankr. S.D.N.Y. 2008) ........................................................................... 7

*In Re Vistaprint Corp. Marketing and Sales Practices Litig.*,
   No. 4:08-md-1994, 2009 WL 2884727 (S.D. Tex. Aug. 31, 2009) ................................ 3

*Landgraf v. USI Film Products*,
　511 U.S. 244 (1994) ................................................................................................................. 8

*Lentini v. Fidelity Nat'l Title Ins. Co. of New York*,
　479 F. Supp. 2d 292 (D. Conn. 2007) ..................................................................................... 6

*Lerner v. Fleet Bank, N.A.*,
　459 F.3d 273 (2d Cir. 2006) ..................................................................................................... 7

*Matsumura v. Benihana Nat. Corp.*,
　542 F. Supp. 2d 245 (S.D.N.Y. 2008) ..................................................................................... 6

*May Dep't Stores Co. v. Int'l Leasing Corp.*,
　1 F.3d 138 (2d Cir. 1993) ......................................................................................................... 7

*Mills v. Polar Molecular Corp.*,
　12 F.3d 1170 (2d Cir. 1993) ..................................................................................................... 7

*Operating Engineers Pension Trust v. Gilliam*,
　737 F.2d 1501 (9th Cir. 1984) .............................................................................................. 4, 5

*Ortiz v. Mortgageit, Inc.*,
　No. 09-cv-2103-WQH, 2010 WL 892202 (S.D. Cal. Mar. 9, 2010) ........................................ 9

*Robinson v. City of New Haven*,
　578 F. Supp. 2d 385 (D. Conn. 2008) ..................................................................................... 2

*Rombach v. Chang*,
　355 F.3d 164 (2d Cir. 2004) ................................................................................................. 6, 7

*Ruston v. Town Board for the Town of Skaneateles*,
　610 F.3d 55 (2d Cir. 2010) ....................................................................................................... 3

*Schnall v. Marine Midland Bank*,
　225 F.3d 263 (2d Cir. 2000) ..................................................................................................... 9

*United States v. Skelly*,
　442 F.3d 94 (2d Cir. 2006) ....................................................................................................... 3

State Cases

*Cel-Tech Commc'n, Inc. v. Los Angeles Cellular Tel., Co.*,
　973 P.2d 527, 543 (Cal. 1999) ................................................................................................. 8

*Evans v. Ameriquest Mortgage Co.*,
　No. 233115, 2003 WL 734169 (Mich. Ct. App. Mar. 4, 2003) ................................................ 5

*People Ex. Rel. Cuomo v. Wells Fargo Insurance Services, Inc.*,
　2011 N.Y. Slip Op. 01070, --- N.E.2d ---, 2011 WL 534198 (NY Ct. of App. Feb. 17, 2011) . 3

*Phoenix Leasing, Inc. v. Kosinski*,
   707 A.2d 314, 317 (Conn. App. Ct. 1998) .................................................................................. 4

*Williams Ford, Inc. v. Hartford Courant Co.*,
   657 A.2d 212, 222 (Conn. 1995) ............................................................................................... 7

Federal Statutes

Pub. L. No. 111-345, 124 Stat. 3618 (2010) ................................................................................. 8

15 U.S.C. §1693e(a) ..................................................................................................................... 5

Federal Rules

Fed. R. Civ. P. 9(b) ................................................................................................................. 2, 5

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 5, 6, 7

Fed. R. Civ. P. 11 ......................................................................................................................... 9

Federal Regulations

12 C.F.R. Pt. 205 Supp. I, § 10(b) cmt. 4 ..................................................................................... 5

**I.     INTRODUCTION**

Each of the claims in the Amended Complaint "sounds in fraud" and rests on the assertion that Defendants failed to disclose material information about the terms of an on-line promotional offer when obtaining Plaintiff L-S's authorization for enrollment in Defendant Webloyalty.com, Inc.'s ("Webloyalty") Shopper Discounts & Rewards membership program (the "Program").  L-S elected to view that offer by clicking a banner on the transaction confirmation page that was presented to him after his debit card purchase of a video game on the website of Defendant GameStop Corporation ("GameStop").

But, in amending his complaint, L-S neglects to describe what Webloyalty represented to him or what was false about any such representation.  Webloyalty and GameStop have sought dismissal by placing before the Court the very webpage (the "Enrollment Page") presented to L-S (but omitted from his Amended Complaint), which shows that Webloyalty had, in fact, disclosed each and every bit of allegedly missing information, not once but multiple times.

L-S's Opposition to the motion to dismiss is little more than a studied effort to avoid the plain truth of these disclosures.  The motion is based on the fact of these disclosures, the lack of falsity in or omissions from such disclosures, and the failure of the Amended Complaint to allege any facts to the contrary, which requires dismissal under both Rule 12(b)(6) and 9(b).  Unable to refute these simple truths, the Opposition dwells irrelevantly on bald contentions of purported bad faith on the part of Defendants and the claimed assumptions of L-S – all drawn without ever reading the Enrollment Page – regarding what he believed the Enrollment Page to be.

Now, with the completeness of the disclosures on the Enrollment Page before the Court, the Opposition attempts to excuse L-S's failure to read the disclosures by claiming for the first time that L-S was tricked into mistaking the Enrollment Page for something that it was not.  This assertion cannot save Plaintiff's claims from dismissal, because neither the Amended Complaint

nor the Opposition identifies a single affirmative act of or statement made to L-S by any Defendant that led L-S to his "mistake."

## II.    ARGUMENT

### A.    Dismissal Under Rule 12(b)(6) is Required Because The Opposition Fails To Address The Lack Of Factual – As Opposed To Conclusory – Allegations In The Complaint Identifying Statements By The Defendants On Which Plaintiff Relied

The Motion to Dismiss presents a simple, single issue applicable to each and every one of L-S's claims no matter how labeled: whether the Amended Complaints contains factually adequate allegations[1] that, when obtaining his authorization to enroll in the Program, Webloyalty and/or GameStop made any false or misleading statement to L-S on which he reasonably relied.[2] Neither the Defendants' alleged intent nor what L-S claims to have believed are at issue in this motion, regardless of the attention that the Opposition devotes to them.

On the single issue that is raised by the Motion to Dismiss, the Opposition is silent, because the Amended Complaint contains not one factual allegation setting forth what any Defendant represented to L-S, false or not. In fact, despite L-S's claimed beliefs otherwise, the

---

[1] A plaintiff is obligated to provide the grounds of his entitlement to relief with more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See Robinson v. City of New Haven*, 578 F. Supp. 2d 385, 389 (D. Conn. 2008). *See also Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

[2] L-S cannot avoid dismissal by relying on purported facts regarding the experience of other members of the proposed class, as heavily-quoted from the Senate Commerce Committee Reports. (*See* AC, ¶¶ 36-84; Opp., pp. 5-7, 8-16). Rather, L-S must sufficiently plead the facts of *his* experience. Yet, L-S's experience when enrolling in the Program is found in only a few short paragraphs of the Amended Complaint that fail to identify a single statement made by any Defendant or on which L-S relied. (*See* AC, ¶¶ 22-31). *See, e.g., Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000) (plaintiff seeking to represent putative class must prove "the operative facts giving rise to an enforceable right in favor of that plaintiff."). *See also Gregory v. Dillard's, Inc.*, 565 F.3d 464, 469 n.6 (8th Cir. 2009) (affirming dismissal, and rejecting plaintiffs' contentions that each plaintiff did not need to satisfy each element of § 1981 claims and that the court should "lump them together" when analyzing the sufficiency of evidence.).

Another class plaintiff's recent attempt to rely on the Senate Reports to buttress deficient allegations was emphatically rejected by U.S. District Judge Huff in a parallel case against Webloyalty. *See* Tr. of Nov. 15, 2010 Motion to Dismiss Hearing in *Berry v. Webloyalty.com, Inc.*, Case No. 10-CV-1358-H (CAB) (S.D. Cal. Nov. 16, 2010), at 29 (The Committee Reports are "not binding in this Court. It's a political report based on a different branch of the government with different interests." The findings of the Committee Reports "may not be the same as whether . . . [the plaintiff] . . . legally can state a claim for fraud and class action in court.") (Attached as Ex. A to the Declaration of Daniel M. Esrick ("Esrick Decl."), submitted herewith).

Enrollment Page from which L-S joined the Program clearly and conspicuously disclosed all of the Program's offer and billing details, including the monthly fee; disclosed seven times that Plaintiff would be charged for membership; disclosed that by entering his email twice and re-entering the last four digits of his debit card number, he was authorizing transfer of his debit card information from GameStop to Webloyalty[3]; and disclosed that the Program was presented by Webloyalty and is not affiliated with GameStop. (*See* Exs. A and B of the Declaration of Richard Winiarski submitted with Webloyalty's Motion to Dismiss (Dkt. No. 17) ("Winiarski Decl.")). Such disclosures are "not deceptive as a matter of law"[4] and undermine entirely the Amended Complaint's allegation that such information was omitted. (See AC, ¶115).[5]

In short, neither the Amended Complaint nor the Opposition identifies any statement by Defendants that was false, that omitted any material information, that led L-S to make the incorrect assumptions that he purportedly made, or that compelled L-S to neglect his duty to read

---

[3] To avoid dismissal of his claim under the Electronic Communications Privacy Act ("ECPA"), L-S persists with the false (and conclusory) recitation that his billing data was "intercepted" by Webloyalty. (*See* Opp., p. 35, citing AC, ¶¶ 87-88). However, he cites no factual support for his contention, which is not plausible in light of the terms on the face of the Enrollment Page. *Ruston v. Town Board for the Town of Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010) (Complaint must allege facts sufficient to establish a "plausible claim of relief."). In particular, that page plainly indicates that the data is transferred only after the consumer takes the necessary steps to authorize the transaction: "By entering my email address as my electronic signature and clicking YES, I have read and agree to the Offer and Billing Details and authorize MovieTickets.com to securely transfer my name, address and credit or debit card information to Shopper Discounts & Rewards for billing and benefit processing." (*See* Winiarski Decl., Ex. A).

[4] *See Bott v. Vistaprint USA, Inc.*, 392 F. App'x 327, 327-28 (5th Cir. 2010), *affirming In Re Vistaprint Corp. Marketing and Sales Practices Litig.*, No. 4:08-md-1994, 2009 WL 2884727 (S.D. Tex. Aug. 31, 2009) ("*Vistatprint*"). *See also Baxter v. Intelius, Inc.*, No. SACV 09-1031 AG (MLGx), 2010 WL 3791487, at *4-5 (C.D. Cal. Sept. 16, 2010) (granting motion to dismiss and holding that "affirmative acceptance and disclosure [on a website less detailed than Webloyalty's Enrollment Page] negates any deception [and establishes that] the website was not deceptive as a matter of law").

[5] Although L-S also asserts that Webloyalty and GameStop did not disclose their financial arrangements and that the Program provides no benefit (AC, ¶ 115), such complaints have no legal or factual merit. First, selling parties have no duty to disclose their financial incentive arrangements to their customers. *See, e.g., United States v. Skelly,* 442 F.3d 94, 97 (2d Cir. 2006) ("Tracing back to the common law principle of *caveat emptor,* it is a fundamental tenet of Anglo-American commercial law that neither a seller nor a middleman has an obligation to disclose his financial incentives for selling a particular commodity."); *People Ex. Rel. Cuomo v. Wells Fargo Insurance Services, Inc.*, 2011 N.Y. Slip Op. 01070, --- N.E.2d ---, 2011 WL 534198 (NY Ct. of App. Feb. 17, 2011) ("insurance broker does not have a common-law fiduciary duty to disclose to its customers 'incentive' arrangements that the broker has entered into with insurance companies."). Second, L-S fails to identify a single reward, discount, or purchase protection benefit promised by the Program that was not made available to its members. He also fails to allege that he ever sought to take advantage of any benefit, or that he did not receive a benefit that he requested.

Webloyalty's fully adequate disclosures.[6] At the same time, the Amended Complaint makes no factual allegation that any disclosure was hidden from L-S, or was otherwise inconspicuous, vague, not understandable, or contradicted by any other statement.[7]

Hoping to avoid these fully adequate disclosures, the Opposition – without citation to a single allegation in the Amended Complaint – claims that L-S was tricked into "executing the instrument without reading it, and therefore, that the minds of the parties did not meet on a contract." (Opp. at 24). Again, however, neither the Amended Complaint nor the Opposition sets forth a single factual allegation of any statement made by any Defendant leading L-S to believe that he was not enrolling in a membership Program. Similarly lacking is any allegation in the Amended Complaint of any affirmative act taken by any Defendant inducing L-S not to read, or preventing L-S from taking the time to read the repeated disclosures on the Enrollment Page. This is what distinguishes the authority on which L-S relies. *See, e.g., Chicago Truck Drivers, et al. v. Dudack Trucking Co., Inc.*, 267 F. Supp. 2d 884, 890-91 (N.D. Ill. 2003);

---

[6] As even Plaintiff's authority makes clear, a party has "a duty to read the [a document] and cannot now plead his self-induced ignorance of its contents." *See Phoenix Leasing, Inc. v. Kosinski*, 707 A.2d 314, 317 (Conn. App. Ct. 1998); *Operating Engineers Pension Trust v. Gilliam*, 737 F.2d 1501, 1504 (9th Cir. 1984) ("a party who signs a written agreement generally is bound by its terms, even though he neither reads it nor considers the legal consequences of signing it.").

[7] Although not alleged in the Amended Complaint, the Opposition conclusorily asserts that the Enrollment Page is "entirely misleading," purportedly because "GameStop" is referenced on the Enrollment Page "17 times" (Opp. at 3). Yet, L-S never claims that he read or relied on these references, never describes the content of the GameStop references, never claims that they were false, and never explains how they purportedly were misleading. L-S also fails to mention the **22 references** to "Shopper's Discount" on the page or that the most prominent logo on the page is for Shopper's Discount, which appears immediately at the top left of the Enrollment Page and specifically states that Shoppers Discount is "**presented by Webloyalty**." (emphasis supplied). (*See* Winiarski Decl., Ex. A.).

*Chicago Area International Brotherhood of Teamsters v. Watermelon Depot, Inc.*, No. 94-C-5819, 1996 WL 447254, at *6-7 (N.D. Ill. July 31, 1996).[8]

Without factual allegations of such an affirmative act or representation, L-S's allegedly mistaken and un-pled belief as to the nature of the Enrollment Page is no excuse. All of his claims – each dependent on his authorization having been obtained deceptively – must be dismissed under Rule 12(b)(6).[9]

### B. The Amended Complaint Fails To Provide Sufficient Detail To Meet Rule 9(b)'s Particularity Requirement.

Not even mentioned in the Opposition, let alone addressed, is the Amended Complaint's failure to plead with the particularity demanded by Rule 9(b) when allegations of fraud or mistake are made. In identical circumstances involving this Webloyalty Program, Judge Huff of

---

[8] As explained in *Chicago Truck Drivers*, the plaintiff in *Operating Engineers Pension Trust v. Gilliam,* 737 F.2d 1501 (9th Cir. 1984), on which L-S relies, justifiably thought the contract he signed involved only an application for union membership, because the defendant affirmatively and falsely confirmed the document to be only an application. In contrast, when, as here, there is no averment that a defendant affirmatively misrepresented the nature of the document, a party's ignorance of the contents of that document may not be excused. *See Chicago Truck Drivers*, 267 F. Supp. 2d at 890-91. "[T]here can be no fraud where the means of knowledge regarding the truthfulness of the representation are available to the plaintiff and the degree of their utilization has not been prohibited by the defendant." *Evans v. Ameriquest Mortgage Co.*, No. 233115, 2003 WL 734169, at *1 (Mich. Ct. App. Mar. 4, 2003) (internal citations omitted). Here, L-S had all the time in the world to read the disclosures set forth on the Enrollment Page. There is no fact-based allegation of anything that any Defendant did or said that prevented L-S from doing so.

[9] In trying to avoid dismissal of the Electronic Funds Transfer Act ("EFTA") claim under Rule 12(b)(6), which would otherwise be required in light of the complete and truthful disclosure of the Program's billing and membership terms, the Opposition claims that Webloyalty never provided L-S with a copy of his authorization as required by 15 U.S.C. §1693e(a) – an allegation not made in the Amended Complaint. This charge is false. As stated in the Official Interpretations of Regulation E implementing the EFTA, no single manner of compliance is required. Rather, a party may meet this obligation "in various ways." One "way" is to use a "confirmation form." *See* 12 C.F.R. Pt. 205, Supp. I, § 10(b) cmt. 4.

Here, following the instruction of this Interpretation, Webloyalty, after L-S enrolled in the Program by entering his email address twice and clicking "YES," presented an Acknowledgement Page to him on-screen, confirming his authorization for enrollment and instructing him to print out the page for future reference. On the same day, Webloyalty sent an email to L-S at the address he used to enroll in the Program. Like the Acknowledgment Page, this email: (a) again confirmed that L-S had enrolled in the Program; (b) provided the Program's Offer and Billing Details, including that the debit card L-S had used with GameStop would be charged; (c) specified "12/26/2009" as the exact date after which his free trial would expire and his debit card would begin to be charged; and (d) identified that "$12 a month" would automatically "be billed by Shopper's Discounts & Rewards to the credit or debit card you authorized (VISA, Last 4 digits ************ XXXX." (*See* Declaration of Meghan Pipkin ("Pipkin Decl.") ¶ 3-4, Exs. A-B, filed herewith) (Pursuant to L.R. 5(e), certain personal information has been redacted from both the Pipkin Decl. and exhibits. Should the Court wish to view unredacted versions, Webloyalty will make them available). There can be no doubt that the Acknowledgment Page and the Join Email confirmed to L-S, consistent with the EFTA, that he had authorized his enrollment in the Program.

the U.S. District for the Southern District of California has already identified – very plainly – the factual specificity needed:

- the "misrepresentations or specific advertisement that [L-S] relied on when he entered his email address";

- "what the coupon stated to mislead him to think that it was a free coupon offer";

- "what exactly was deceiving about the way the coupon was presented to make him think it was free";

- "all the steps he took to sign up for the offer"; and

- "what representations or omissions were made to him at each step."

*See Berry v. Webloyalty.com, Inc.*, Case No. 10-CV-1358-H (CAB), Dkt. No. 41, slip op., p. 9 (S.D. Cal. Nov. 16, 2010) (*See* Katz Decl. submitted in support of L-S's Opp. (Dkt. No. 50), Ex. 3).  Whether labeled fraud or not, each of L-S's claims requires such particularity, because, as made clear in virtually every allegation, each claim in the Amended Complaint, no matter how denominated, "sounds in fraud."[10]  *See, e.g., Rombach v. Chang*, 355 F.3d 164, 170-171 (2d Cir. 2004). (The particularity requirement of Rule 9(b) applies to all fraud-based claims, even those not styled as "fraud" claims per se, because the language of Rule 9(b) "is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action."); *Matsumura v. Benihana Nat. Corp.*, 542 F. Supp. 2d 245, 251-252 (S.D.N.Y. 2008) ("[W]here 'the wording and imputations

---

[10] In fact, rather than disavowing any allegations of fraud, each of the purported "non-fraud" counts in the Amended Complaint begins by specifically "repeat[ing] and realleg[ing]" the allegations contained in each of the preceding paragraphs [including those of alleged fraud and deception] as if fully set forth herein."  (AC ¶¶ 85, 91, 96, 101, 112, 123, 128, 132, 145, 149, 156, 158). The claimed acts of fraud and deception provide the grounds in the Amended Complaint for the purported lack of authorization on which each of these supposed non-fraud counts is based.  *See* Count I (ECPA) (AC, ¶ 88); Count II (EFTA) (AC, ¶ 94); Count IV (Unjust Enrichment) (AC, ¶ 102); Count V (Civil Theft) (AC, ¶ 115); Count VI (Money Had and Received) (AC, ¶ 125); Count VII (Negligent Misrepresentation) (AC, ¶ 129); and Count X (CUTPA) (AC, ¶ 147).  *See Lentini v. Fidelity Nat'l Title Ins. Co. of New York*, 479 F. Supp. 2d 292, 298 n.2 (D. Conn. 2007) (Rule 9(b) applies to CUTPA claims that "rely on affirmative statements or omissions involving fraud or mistake."); *Catalano v. Bedford Associates, Inc.*, 9 F. Supp. 2d 133, 136 (D. Conn. 1998)  (applying Rule 9(b) to negligent misrepresentation claim); *DeBlasio v. Merrill Lynch, Inc.*, No. 07-Civ-318, 2009 WL 2242605, at *11 (S.D.N.Y. July 27, 2009) (applying Rule 9(b) to unjust enrichment claim "premised on fraudulent conduct") (citing *Rombach*, 355 F.3d at 172).

of the complaint are classically associated with fraud,' Rule 9(b) governs any non-fraud claim that the plaintiffs have made 'little, if any, effort to differentiate' from the fraud allegations upon which the action is predicated.") (internal citations omitted).[11]  L-S's newly-minted attempt to avoid the consequences of his authorization, based on his claimed "mistake" as to the nature of the Enrollment Page (see Opp. at 21-23), requires the same particularity.  *See* Fed. R. Civ. P. 9(b).  *See also In re Musicland Holding Corp.*, 398 B.R. 761, 782 (Bankr. S.D.N.Y. 2008) ([P]arty "must particularize a claim based on mistake.").

In the Opposition and in his Amended Complaint, however, not only has L-S failed to answer with requisite Rule 9(b) particularity the direct questions posed by Judge Huff, he has failed to answer such questions at all.  Other than vaguely – and irrelevantly – describing his own purported intent and supposed impressions from what he read and saw, the Amended Complaint does not offer the content of any specific statement made to L-S by any Defendant, whether on the Enrollment Page or on the banner that appeared on the GameStop purchase confirmation page.  Nor has L-S provided any detail as to why any such statement was false.  (AC, ¶¶ 22-28).[12]

### C. Plaintiff Cannot Support His Connecticut Unfair Trade Practices Act ("CUTPA") Claims By Linking Them to the Restore Online Shoppers' Confidence Act ("ROSCA").

---

[11] To satisfy Rule 9(b), the specificity required for each of the questions posed by Judge Huff includes the time, place, and content of the alleged misrepresentations, the identities of the parties to the alleged misrepresentations, and an explanation as to why the statement or omission complained of is false or misleading.  *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006); *Rombach*, 355 F.3d at 170.  Additionally, a plaintiff must allege with particularity his reliance on the alleged fraudulent conduct.  *See May Dep't Stores Co. v. Int'l Leasing Corp.*, 1 F.3d 138, 141 (2d Cir. 1993); *Williams Ford, Inc. v. Hartford Courant Co.*, 657 A.2d 212, 222 (Conn. 1995).

In multi-defendant cases, a plaintiff must also differentiate between defendants and allege with particularity the role or participation of each one in the alleged fraud.  *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (in a case involving multiple defendants, "the complaint should inform each defendant of the nature of his alleged participation in the fraud."); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'").

[12] This is equally true with respect to the representations of data security that L-S claims were made by GameStop.  (*See* Opp., p. 30; AC, ¶ 138).  Nowhere does L-S particularize the content of any such representation, that he relied on any such representation, or, if he did rely, where he saw such representation and when.

Unable to particularize or allege factual support for any false or misleading statement regarding the terms of his enrollment, or that allegedly led him not to read the Enrollment Page, L-S tries to supply the missing unfair or deceptive act or practice for his CUTPA claim by reference to ROSCA (see Opp. at 32), a statute which only recently imposed new rules on internet marketing practices such as "data pass" and "negative option" contracts.  (Pub. L. No. 111-345, 124 Stat. 3618 (2010)).[13]  ROSCA, however, contains no retroactivity provision and did not become law until December 29, 2010.  Therefore, as a matter of law, it has no application to L-S's enrollment in the Program more than a year earlier.  *See, e.g., City of New York v. Permanent Mission of India to the United Nations*, 618 F.3d 172, 192 (2d Cir. 2010) ("Retroactivity is not favored in the law . . . Courts, accordingly, have regularly adopted a presumption against retroactivity as a default rule for statutory interpretation.") (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 272-73 (1994)).[14]

### D. Plaintiff's Request for Discovery Should be Rejected Because the Authenticity of the Enrollment Page is Not in Reasonable Dispute.

In moving to dismiss, Webloyalty and GameStop have put only one fact in issue, for which they properly seek judicial notice – i.e., what the Enrollment Page that L-S received actually said.  In response to this request for judicial notice, L-S mounts nothing but a conclusory

---

[13] ROSCA, in fact, does not prohibit "negative option" contracts.  Rather, with respect to such contracts, ROSCA merely requires (1) clear and conspicuous disclosures of material terms; (2) a consumer's express informed consent; and (3) simple mechanisms for a consumer to stop recurring charges.  (*See* ROSCA, Pub. L. No. 111-345, § 4 (2010)).  Neither the Amended Complaint nor the Opposition explains how Webloyalty's enrollment process violates these provisions of ROSCA, even if they were applicable.  Indeed, as described above, the Enrollment Page contains all of these required disclosures.  (*See* Winiarski Decl., Ex. A).  Moreover, with the disclosures of the sort made on the Enrollment Page, a "negative option" is not deceptive as a matter of law.  *See, e.g., Baxter v. Intelius*, 2010 WL 3791487 at *4-5 (on-line enrollment website utilizing negative option but disclosing relevant billing terms and conditions not deceptive as a matter of law).

[14] That fact that, at the time of L-S's enrollment in the Program, the FTC may have issued certain guidance with respect to negative options marketing, that a congressional committee may have issued a report, or that Congress may have been contemplating a change in the laws affecting internet marketing "is not a 'legislatively declared policy' to which Plaintiffs' [unfair and deceptive practices] claims can be tethered."  *See Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2010 WL 3910169, at *12-13 (N.D. Cal. Oct. 5, 2010) (FTC guidance is not "a constitutional or statutory provision or a regulation carrying out statutory policy"; "[p]laintiffs' claims cannot be tethered to a public policy that Congress . . . has not chosen to extend to the Internet.") (citing *Cel-Tech Commc'n, Inc. v. Los Angeles Cellular Tel., Co.*, 973 P.2d 527, 543 (Cal. 1999)).

challenge to the Winiarski Declaration by which the Enrollment Page is offered, claiming the Declaration to be "subject to significant question."[15] (Op. at 16-17). However, because L-S never claims that he did not see or receive the Enrollment Page, or that the Enrollment Page is otherwise not authentic, the challenge is perfunctory and without merit. *See, e.g., Ortiz v. Mortgageit, Inc.*, No. 09-cv-2103-WQH, 2010 WL 892202, at *4 (S.D. Cal. Mar. 9, 2010) (taking judicial notice of materials attached to defendants' motion to dismiss, despite plaintiff's generic assertion that there was "a question of fact" regarding the authenticity of the document; "Plaintiff contends it is 'difficult' to gauge whether the document is authentic, yet is apparently unwilling to assert that it is, in fact, inauthentic subject to the pleading standard of Federal Rule of Civil Procedure 11.").[16]

Finally, the Opposition fails even to attempt to offer any justification for the broad-based discovery L-S demands. (*See* Opp. at 17-18). The single document put in issue by the present motion to dismiss is the authenticity and content of the Enrollment Page displayed to L-S. As just discussed, the Opposition does not reasonably dispute that Page's authenticity or content. Nor does it explain how any of the discovery requested would raise a dispute about what was said on that Page. Therefore, the requested discovery should be denied.

---

[15] The Opposition's suggestion (based entirely on an undated and unexplained "Linked In" profile page) that Mr. Winiarski failed to disclose his former position as Webloyalty's Vice-President of Creative Services (*see* Opp. at 16-17) is wrong. *See* Winiarski Decl., ¶ 2 ("I have been employed at Webloyalty since September 2008. I am currently Vice President of Marketing, a position I have held since January 2010. Previously, I served as the company's Vice-President of Creative Services."). Similarly, L-S charges that Winiarski "falsely attests that the account statement reflects the 'dates upon which Plaintiff was both charged and reimbursed by Webloyalty . . . '", and that this is incorrect because L-S was never actually reimbursed. (Opp. at 17). Yet, this only means that the referenced exhibit (the Customer Service Administration Tool ("CSAT") screen, *see* Winiarski Decl., Ex. D) is designed to illustrate, among other things, dates and amounts that customers were charged and reimbursed. The exhibit plainly shows that L-S was not reimbursed. Webloyalty has made no argument that he was.

[16] L-S also claims that the Court should disregard his account statement (Winiarski Decl., Ex. D), purportedly because it was not mentioned in the Amended Complaint. (Opp. at 16). Judicial notice is not so limited. Rather, in ruling on a 12(b)(6) motion, courts may consider a document that is not attached to a complaint if the document forms the basis of the plaintiff's claim. *See Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000) (affirming dismissal and taking judicial notice of customer's account history that was integral to but not referenced in complaint). *See also* 12/23/10 Memorandum in Support of Request for Judicial Notice, Dkt. No. 40, attachment 8, pp. 6-7.

### III. CONCLUSION

For the foregoing reasons, and the reasons set forth in their opening Memorandum, Webloyalty and GameStop respectfully request that their Motion to Dismiss Plaintiff's Amended Complaint be granted.

Dated:  March 7, 2011               DEFENDANTS
                                    WEBLOYALTY, INC. AND
                                    GAMESTOP CORPORATION

                                    By: /s/ James E. Nealon
                                        James E. Nealon (ct 08161)
                                        KELLEY DRYE & WARREN LLP
                                        400 Atlantic Street
                                        Stamford, Connecticut  06901
                                        Tel.:   (203) 324-1400
                                        Fax:    (203) 327-2669
                                        Email:  jnealon@kelleydrye.com

                                    James W. Prendergast (MA SBN: 553073) (*Pro hac vice*)
                                    John J. Regan (MA SBN: 4151201) (*Pro hac vice*)
                                    Daniel M. Esrick (MA SBN: 647676) (*Pro hac vice*)
                                    Wilmer Cutler Pickering Hale and Dorr LLP
                                    60 State Street
                                    Boston, MA 02109
                                    Tel.:   (617) 526-6000
                                    Fax:    (617) 526-5000
                                    Email:  james.prendergast@wilmerhale.com
                                    Email:  john.regan@wilmerhale.com
                                    Email:  daniel.esrick@wilmerhale.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2010, the following documents:

1. **DEFENDANTS WEBLOYALTY.COM, INC. AND GAMESTOP CORPORATION'S REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT;**

2. **DECLARATION OF MEGHAN L. PIPKIN IN SUPPORT OF DEFENDANTS WEBLOYALTY.COM, INC.'S AND GAMESTOP CORPORATION'S REPLY IN SUPPORT OF WEBLOYALTY.COM, INC.'S AND GAMESTOP CORPORATION'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; and**

3. **DECLARATION OF DANIEL M. ESRICK IN SUPPORT OF DEFENDANTS WEBLOYALTY.COM, INC. AND GAMESTOP CORPORATION'S REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

were electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ James Nealon

James E. Nealon
Attorney for Defendants Webloyalty.com, Inc.
and GameStop Corporation

-11-