**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| L.S., a minor, by P.S., his parent and next friend, on behalf of himself and all others similarly situated, | ) ) ) | Case No. 3:10-CV-1372 (CHS) |
| Plaintiff, | ) ) | **Oral Argument Requested** |
| vs. | ) ) | |
| WEBLOYALTY.COM, INC., GAMESTOP CORPORATION and VISA INC., | ) ) ) | |
| Defendants. | ) ) ) | |

**WEBLOYALTY.COM, INC.'S AND GAMESTOP CORPORATION'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE**

James E. Nealon (ct 08161)
KELLEY DRYE & WARREN LLP
400 Atlantic Street
Stamford, Connecticut  06901
Tel.:  (203) 324-1400
Fax:  (203) 327-2669
jnealon@kelleydrey.com

James W. Prendergast (MA SBN: 553073)
John J. Regan (MA SBN: 4151201)
Daniel M. Esrick (MA SBN: 647676)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
james.prendergast@wilmerhale.com
john.regan@wilmerhale.com
daniel.esrick@wilmerhale.com

Dated:  April 7, 2011

## TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................1

II.     ARGUMENT ...........................................................................................................3

        A.      Plaintiff Should Not Be Permitted To Raise A Claim In Opposition To
                Dismissal That He Did Not Make In The Amended Complaint...........................3

        B.      The Documents Challenged Are Integral To Plaintiff's Late-Raised EFTA
                Claim ...............................................................................................................5

        C.      Webloyalty Has Properly Authenticated The Documents. ......................................9

III.    CONCLUSION......................................................................................................14

## TABLE OF AUTHORITIES

**Federal Cases**

*Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.,*
   Civ. A. No. 90-7952, 1992 WL 97826 (E.D. Pa. Apr. 30, 1992) ................................. 3

*Baxter v. Intelius, Inc.,*
   No. SACV 09-1031 AG (MLGx), 2010 WL 3791487 (C.D. Cal. Sept. 16, 2010) ................ 14

*Barthelemy v. Air Lines Pilots Ass'n,*
   897 F.2d 9th Cir. 1990 ......................................................................... 11

*Belmont Holdings Corp. v. Unicare Life & Health Ins. Co.,*
   Civ. A. No. 98-2365, 1999 WL 124389 (E.D. Pa. Feb. 5, 1999) ........................... 3

*Bott v. Vistaprint USA, Inc.,*
   No. 09-20648, slip op. at 2, 2010 WL 3303692 (5th Cir. August 23, 2010) .............. 7

*Cantu v. Vitol, Inc.,*
   No. H-09-0576, 2011 WL 486289 (S.D. Tex. 2011) ..................................... 11

*Dalton v. FDIC,*
   987 F.2d 1216 (5th Cir. 1993) ....................................................... 11

*DIRECTTV, Inc. v. Budden,*
   420 F.3d 521 (5th Cir. 2005) ........................................................ 10

*FDIC v. Patel,*
   46 F.3d 482 (5th Cir. 1995) ......................................................... 11

*FDIC v. Selaiden Builders, Inc.,*
   973 F.2d 1249 (5th Cir. 1992) ....................................................... 11

*Halo Technology Holdings, Inc. v. Randall Cooper,*
   No. 3:07-cv-489, 2010 WL 1330770 (D. Conn. Mar. 30, 2010)............................ 4

*Hamilton v. Trover Solutions, Inc.,*
   No. 03-30547, 2004 WL 1491587 (5th Cir. 2004) ..................................... 11

*Hook v. Intelius, Inc.,*
   Civ. A. No. 5:10-cv-239 (MTT), 2011 WL 1196305 (M.D. Ga. Mar. 28, 2011)............. 14

*In re Easysaver Rewards Litig.,*
   No. 09-CV-2094-MMA (BLM), 2010 WL 3259752 (S.D. Cal. Aug. 13, 2010) .............. 13

*In re Merrill Lynch Auction Rate Sec. Litig.,*
   704 F. Supp. 2d 378 (S.D.N.Y. 2010) ............................................... 14

*In Re Vistaprint Corp. Marketing and Sales Practices Litigation,*
    No. 4:08-md-1994, 2009 WL 2884727 (S.D. Tex. Aug. 31, 2009).................................... 7, 14

*Knatt v. Hospital Service District No. 1 Of East Baton Rouge Parish,*
    289 Fed. Appx. 22 (5th Cir. 2008)......................................................................... 4

*Lexington Ins. Co. v. W. Pa. Hosp.,*
    423 F.3d 318 (3d Cir. 2005) ................................................................................ 9

*Link v. Mercedes-Benz of N. Am., Inc.,*
    788 F.2d 918 (3d Cir. 1986) ............................................................................... 10

*Madison One Holdings, LLC et al. v. Punch International, NV,*
    No. 4:06-cv-3560, 2009 WL 911984 (S.D. Tex. March 31, 2009) ......................................... 10

*Sansom Comm. v. Lynn,*
    366 F. Supp. 1271 (E.D. Pa. 1973)......................................................................... 3

*Seatrax, Inc. v. Sonbeck Int'l Inc.,*
    200 F.3d 358 (5th Cir. 2000) .............................................................................. 4

*U.S. v. Vaghari,*
    No. 08-693-01-02, 2009 WL 2245097 (E.D. Pa. Jul. 27, 2009).......................................... 9, 12

*United States v. Safavian,*
    435 F. Supp. 2d 36 (D. D.C. 2006) ....................................................................... 12

*United States v. Siddiqui,*
    235 F.3d 1318 (11th Cir. 2000) .......................................................................... 12

*Wike v. Vertrue, Inc.,*
    566 F.3d 590 (6th Cir. 2009) .............................................................................. 7

**Federal Statutes**

15 U.S.C. § 1693a(11) .......................................................................................... 4

15 U.S.C. § 1693b(a)(1)........................................................................................ 5

15 U.S.C. § 1693e(a).................................................................................... passim

15 U.S.C. 7001 ................................................................................................ 5

15 U.S.C. § 7006(5) ........................................................................................ 2, 6

**Federal Rules**

Fed. R. Civ. P. 5.2............................................................................................ 9

Fed. R. Evid. 201 ............................................................................................................. 13

Fed. R. Evid. 901(a) ........................................................................................................... 9

Fed. R. Evid. 901(b)(1) .............................................................................................. 10, 11

Fed. R. Evid. 901(b)(4) .............................................................................................. 10, 11

**Federal Regulations**

Electronic Fund Transfers,
   66 Fed. Reg. 15187, 15188, 2001 WL 255484 (March 16, 2001) .............................. 6

12 C.F.R. § 205.10(b) ............................................................................... 5, 8, 12, 13

12 C.F.R. Pt. 205 .................................................................................................. 2, 6, 7, 8

## I.   INTRODUCTION

Plaintiff's Motion to Strike ("MTS") reflects a desperate attempt to keep from this Court authentic documents that would otherwise defeat every one of Plaintiff's claims.  Specifically, Plaintiff claims that, after he enrolled in the Shopper Discounts & Rewards membership program (the "Program"), Webloyalty.com, Inc. ("Webloyalty") ought to have provided him a "signed" copy of his enrollment authorization pursuant to the requirements of Electronic Funds Transfer Act ("EFTA") for "Preauthorized Electronic Fund Transfers." 15 U.S.C. 1693e(a).  This claim, however, should not be considered.  It is not alleged in the Amended Complaint ("AC"). Plaintiff impermissibly raised the claim for the first time in opposition to Webloyalty's and GameStop Corporation's ("GameStop") Motion to Dismiss the Amended Complaint.  Even if this Court were inclined to consider this late-raised claim under the EFTA, Plaintiff's claim is wrong as a matter of law and his Motion to Strike should be rejected.

Plaintiff first suggests that the various exhibits sought to be stricken do not amount to a "copy" of Plaintiff's "signed" authorization as purportedly required by the EFTA.  These documents include an email addressed to him (the "Join Email") (*see* Declaration of Meghan Pipkin[1] ["PD"], Ex. B) and the form of an acknowledgment page that appeared on-line to him (the "Acknowledgment Page") (*see* PD, Ex. A) fully confirming to Plaintiff the billing and membership details of his enrollment in the Program, well before any charge was ever made to his debit card.  Because these documents are not signed by Plaintiff, he contends that they are not integral to his claims.  This argument, however, miscomprehends the EFTA.  A copy of the enrollment form bearing Plaintiff's written signature is not required.  Authorization need not come from a traditional written signature, but rather "an electronic sound, symbol, or process,"

---

[1]   Submitted in support of Webloyalty's and GameStop's Reply Memorandum in support of their Motion to Dismiss the Amended Complaint (Dkt. No. 53-3).

as permitted by the Electronic Signatures in Global and National Commerce Act ("E-SIGN"),

will suffice for authorization. *See* 12 C.F.R. Pt. 205, Supp. I, § 10(b) cmt. 5; 15 U.S.C. §

7006(5).  Here, Webloyalty employed an enrollment process compliant with E-SIGN that

required **_four_** **_affirmative_** **_acts_** **_of_** **_authorization,_** *i.e.,* the entry of Plaintiff's email address twice,

the re-entry of the last four digits of Plaintiff's debit card, and Plaintiff's clicking of an

authorization "Yes" button in order to "sign up." (*See* Declaration of Richard Winiarski[2] ["WD"]

Ex. B No. 6).  Likewise, recognizing that not all authorizations will be reflected by a traditional

written signature, the Federal Reserve, as regulator for the EFTA, expressly provides that no

single manner of compliance with the requirements for a preauthorized transfer is required.

Rather, a party may meet its obligation "in various ways", including use of a "confirmation

form."  *See* 12 C.F.R. Pt. 205, Supp. I, § 10(b) cmt. 4.  These are precisely the confirmation

forms that Webloyalty has adequately authenticated and placed before the Court for

consideration, but which Plaintiff seeks to strike.

As his second attempt to prevent the Court from considering these documents, Plaintiff

attacks the manner by which Webloyalty has authenticated them.  Nowhere, however, does

Plaintiff dispute the content of these documents or say that he did not receive them.  In addition,

his challenge to authentication fails miserably.  As courts have repeatedly noted, the burden of

proof for authentication is slight.  All that is required is a foundation from which the fact-finder

could infer that the evidence is what the proponent claims it to be.  There need be only a *prima*

*facie* showing to the court of authenticity, not a full argument on admissibility.  Webloyalty's

affiants with responsibility for these very documents and personal knowledge of their retention

---

[2]      Attached as Exhibit A to the Declaration of Daniel Esrick in Support of Defendants'
Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. No. 40-3).

have described in detail how the documents were sent to Plaintiff and the relevant manner in which the documents can be identified as the ones containing the confirmatory information provided to Plaintiff in compliance with the EFTA, including the fact that at least one of these documents was addressed and sent directly to Plaintiff.

## II.   ARGUMENT

### A.   Plaintiff Should Not Be Permitted To Raise A Claim In Opposition To Dismissal That He Did Not Make In The Amended Complaint

The EFTA requires that preauthorized electronic transfers "may be authorized by the consumer only in writing," and that "a copy of such authorization . . . be provided to the consumer when made." 15 U.S.C. § 1693e(a). Webloyalty provided the documents that Plaintiff now moves to strike in order to refute Plaintiff's claim that Webloyalty had not complied with this provision of the EFTA. Before even reaching the merits of Plaintiff's claim, however, the claim, including the challenge to Webloyalty's documents that spring from it, must be rejected because Plaintiff never alleged it in his original or amended complaint. Rather, the first time this EFTA claim appears is in Plaintiffs' Opposition to Webloyalty's and GameStop's Motion to Dismiss the Amended Complaint ("Opp."). (*See* Opp., p. 35). Plaintiff failed to include the claim in his Amended Complaint, even though he had the benefit of all of Defendants' original motion to dismiss arguments before his amendment. Under such circumstances, courts refuse to address "claims raised for the first time in a brief in opposition to a motion to dismiss." *Belmont Holdings Corp. v. Unicare Life & Health Ins. Co.,* Civ. A. No. 98-2365, 1999 WL 124389, at *4 n. 3 (E.D. Pa. Feb. 5, 1999). *See also Sansom Comm. v. Lynn,* 366 F. Supp. 1271, 1278 (E.D. Pa. 1973); *Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.,* Civ. A. No. 90-7952, 1992 WL 97826, *12 (E.D. Pa. Apr. 30, 1992).

Although the Amended Complaint asserts a claim under the EFTA (*i.e.,* Count II), that claim is based solely on the allegation that "Webloyalty engaged in unauthorized electronic funds transfers, within the meaning of 15 U.S.C. § 1693a(11) by charging or debiting Plaintiff's and the Class's accounts without their knowledge, consent or permission." (AC, ¶ 94). Webloyalty's and GameStop's motion to dismiss clearly demonstrated Plaintiff's authorization, rendering this claim meritless. Therefore, to avoid dismissal, the Opposition changed Plaintiff's theory under the EFTA. But Plaintiff cannot shoe horn his new theory into his original EFTA claim. The provision of the EFTA asserted in the Amended Complaint, *i.e.,* 15 U.S.C. § 1693a(11), does not cross-reference or in any way incorporate the provision about which his Opposition now complains, *i.e.,* 15 U.S.C. § 1693e(a). At the same time, nowhere in the Amended Complaint is there any allegation that Webloyalty failed to provide Plaintiff with a "copy" of his "signed" authorization. If Plaintiff had wanted to bring a distinct preauthorized transfer claim under § 1693e(a) of the EFTA,  he "had ample opportunity to do so" in his original or amended complaint. *See Halo Technology Holdings, Inc. v. Randall Cooper*, No. 3:07-cv-489, 2010 WL 1330770, *6 n.1 (D. Conn. Mar. 30, 2010) (refusing to consider new contract claim first raised opposition to motion to dismiss). *See also Knatt v. Hospital Service District No. 1 Of East Baton Rouge Parish*, 289 Fed. Appx. 22, 27 n. 2 (5th Cir. 2008) (affirming dismissal of tortious interference claim because it was raised for the first time in opposition to the defendants' motion to dismiss) (citing *Seatrax, Inc. v. Sonbeck Int'l Inc.,* 200 F.3d 358, 368 (5th Cir. 2000)). Plaintiff's §1693e(a) claim is late, improper, and cannot support the Motion to Strike.

**B.** **The Documents Challenged Are Integral To Plaintiff's Late-Raised EFTA Claim**

To avoid fair judicial notice of documents that are referenced or integral to Plaintiff's claims, the Motion to Strike asserts that the documents offered are not integral because an authorization "confirmation form" sufficient to comply with 15 U.S.C. § 1693e(a) "must be a 'copy' of the 'signed' document and must be given to the consumer, pursuant to EFTA, 'when made.'" (Memorandum in Support of MTS ["MTS memo"], p. 4).  This is not the law under the EFTA.

As an initial matter, the statute itself does not require that the authorization to be provided to the payor must be "signed."  *See* 15 U.S.C. § 1693e(a).  Rather, Regulation E promulgated by the Federal Reserve[3] implementing the EFTA provides that preauthorized electronic transfers "may be authorized only by a writing signed *__or similarly authenticated__* by the consumer."  *See* 12 C.F.R. § 205.10(b) (emphasis supplied).  The Motion to Strike deceptively omits reference to the alternate "similarly authenticated" method of permissible compliance.

Moreover, after Congress enacted the Electronic Signatures in Global and National Commerce Act ("E-SIGN") in 2000, the Federal Reserve issued an Official Interpretation of "similarly authenticated" under Regulation E to address the specific issues present with transactions conducted over the Internet, stating:

> 5. <u>Similarly authenticated</u>. The similarly authenticated standard permits signed, written authorizations to be provided electronically. The writing and signature requirements of this section are satisfied by complying with the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. 7001 et seq., which defines electronic records and electronic signatures. Examples

---

[3]    Cognizant of the expanding mechanisms for electronic commerce, the EFTA charges the Board of Governors of the Federal Reserve System with the responsibility to promulgate regulations that carry out the purposes of the Act, and that "take into account, and allow for, the continuing evolution of electronic banking services and the technology utilized in such services." 15 U.S.C. § 1693b(a)(1).

of electronic signatures include, but are not limited to, digital signatures and security codes. A security code need not originate with the account-holding institution. The authorization process should evidence the consumer's identity and assent to the authorization. The person that obtains the authorization must provide a copy of the terms of the authorization to the consumer either electronically or in paper form. Only the consumer may authorize the transfer and not, for example, a third-party merchant on behalf of the consumer.

*See* 12 C.F.R. Pt. 205, Supp. I, § 10(b) cmt. 5.[4]

Under E-SIGN, the definition of an electronic signature is intentionally flexible, requiring simply "an electronic sound, symbol, or process, attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record." 15 U.S.C. § 7006(5). This broad definition makes it crystal clear that "written authorization" is not restricted to a signed document, particularly when considered with the Federal Reserve's non-exclusive list of examples of what is acceptable, including the use of security codes. In short, "[a]n authorization is valid" simply if it is "readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." *See* 12 C.F.R. Pt. 205, Supp. I, § 10(b) cmt. 6.

Here, Webloyalty assured Plaintiff's authorization by requiring the completion of the four affirmative steps of twice entering his email address, re-entering the last four digits of his debit card, and then clicking a "YES" button in order to "sign up," all placed immediately adjacent to the Program's Offer and Billing Details and directly below a "clear and readily understandable" disclosure that states plainly:

---

[4]     In authorizing the recognition of electronic signatures under E-SIGN, the Federal Reserve explained that it "proposed to revise comment 10(b)-5 to ensure that financial institutions had guidance on the ***flexibility of establishing authentication methods***. . . . [R]evisions have been made to ensure consistency with the E-Sign Act and ***to provide flexibility***." Electronic Fund Transfers, 66 Fed. Reg. 15187, 15188, 2001 WL 255484, *3 (March 16, 2001) (Emphasis supplied).

> Enter the last four digits of your credit or debit card and your email
> address as your ***electronic signature*** to confirm that you have read and
> agree to the Offer and Billing Details and ***authorize Gamestop to securely
> transfer your name, address and credit or debit card information to
> Shoppers Discount & Rewards for billing*** after your 30 day FREE trial.

(*See* WA Ex. B No. 6) (emphasis supplied).  As the Federal Reserve's Official Interpretation

confirms, this manner of authorization is effective because it plainly "evidence[s] the consumer's

identity and assent to the authorization."  *See* 12 C.F.R. Pt. 205, Supp. I, § 10(b) cmt. 5; *see also*

*In Re Vistaprint Corp. Marketing and Sales Practices Litigation*, No. 4:08-md-1994, 2009 WL

2884727, *9 (S.D. Tex. Aug. 31, 2009) (finding, in connection with dismissing plaintiffs' EFTA

claims, that "[p]laintiffs typed their email addresses into the spaces provided on [d]efendants'

webpages, ***thereby authorizing*** Defendants to 'charge/debit [their] account according to the

Offer Details.'") (emphasis added), *aff'd sub. nom. Bott v. Vistaprint USA, Inc.* No. 09-20648,

slip op. at 2, 2010 WL 3303692, *1 (5th Cir. August 23, 2010).

    The Motion to Strike builds on Plaintiff's misinterpretation of the EFTA to claim that the

Join Email and the Acknowledgement Page – both provided to Plaintiff before any charge to his

debit card[5] – do not sufficiently comply with 15 U.S.C. § 1693e(a), allegedly because neither is a

"signed" "copy" of Plaintiff's enrollment.  As discussed, however, a traditionally "signed"

authorization is unnecessary.  Rather, under E-Sign, a "sound, symbol, or process" is entirely

_____

[5]      A "preauthorized transfer" requires, among other things, that the copy of authorization
must be provided to a payor "when made." 15 U.S.C. § 1693e(a).  "But nothing in § 1693e(a)
pinpoints *when* [the payee] ha[s] to fulfill those obligations." *Wike v. Vertrue*, Inc., 566 F.3d
590, 594 (6th Cir. 2009).  The courts, however, have "pin[ned] the accrual [of the date by when
the record of authorization must be provided] on an identifiable date when the plaintiff has been
injured *and* an EFTA duty necessarily has been violated–***the date of the first transfer***." *Id.*
(emphasis supplied).  As the Amended Complaint acknowledges, Webloyalty charges its new
members only following a 30-day free trial period after enrollment.  (AC, ¶46).  Therefore,
Webloyalty complied with its § 1693e(a) obligation when it provided Plaintiff with both the
November 27, 2009 Join Email and the Acknowledgement Page on the date of Plaintiff's
enrollment (*see* PD Ex. B, A), before the "date of the first transfer." *Wike,* 566 F.3d at 594.

sufficient. Given the mixture of methods by which "authorization" may be obtained, the Federal Reserve made it clear that no single manner of compliance with 15 U.S.C. § 1693e(a) or Regulation E (12 C.F.R. § 205.10(b)) is required. Rather, a party may meet this obligation "in various ways." 12 C.F.R. Pt. 205, Supp. I, § 10(b) cmt. 4. Indeed, there is no signed writing when authorization comes from a "sound, symbol or process." Accordingly, one such "way" is to use a "confirmation form," which is precisely what Webloyalty did here when it employed a Join Email and an Acknowledgment Page.[6] *See* 12 C.F.R. Pt. 205, Supp. I, § 10(b) cmt. 4.

Immediately after Plaintiff enrolled in the Program by entering his email address twice, re-entering the last four digits of his debit card, and clicking "YES" to "sign up," but well before Webloyalty ever charged Plaintiff's debit card, Webloyalty presented an Acknowledgement Page to him on-screen, confirming his authorization for enrollment and instructing him to print out the page for future reference. On the same day, Webloyalty sent the Join Email to Plaintiff at the address he used to enroll in the Program. Like the Acknowledgment Page, this email: (a) again confirmed that Plaintiff had enrolled in the Program; (b) provided the Program's Offer and Billing Details, including that the debit card Plaintiff had used with GameStop would be charged; (c) specified "12/26/2009" as the exact date after which his free trial would expire and his debit card would begin to be charged; and (d) identified that "$12 a month" would

---

[6]     Plaintiff also asks that the "Enrollment Page" attached to the affidavit of Richard Winiarski be stricken because purportedly "a copy of the 'Enrollment Page' was never provided to plaintiff" (MTS memo, p. 6) – an argument he never made when initially opposing Webloyalty's Request for Judicial Notice. Plaintiff, however, never denies being presented the Enrollment Page, with all of its billing and price disclosures, before he undertook the four affirmative acts of authorization just described. Nor does he claim that Webloyalty somehow prevented him from printing off the Enrollment Page when presented or when he authorized his enrollment in the Program. But, more to the point, as just discussed, there is no requirement that a "signed" copy of the Enrollment Page be provided under 15 U.S.C. § 1693e(a) or 12 C.F.R. § 205.10(b). Again, a confirmation form reflecting authorization, as used by Webloyalty here, is sufficient.

automatically "be billed by Shopper's Discounts & Rewards to the credit or debit card you authorized (VISA, Last 4 digits ************ XXXX." (*See* PD ¶ 4, Ex. B).[7] There can be no doubt that the Acknowledgment Page and the Join Email confirmed to Plaintiff, consistent with the EFTA, that he had authorized his enrollment in the Program.

As the means by which Webloyalty provided a "copy of [his] authorization" to Plaintiff (15 U.S.C. § 1693e(a)) – something which Plaintiff claims was not done – the Join Email and Acknowledgement Page have been incorporated in Plaintiff's belated claim and should be judicially noticed. *See* 12/23/10 Memorandum in Support of Request for Judicial Notice (Dkt. No. 40-8), pp. 4-7.

### C.   Webloyalty Has Properly Authenticated The Documents.

As a final attempt to deflect the Court's attention from Webloyalty's more than adequate disclosure and confirmation of relevant billing and authorization information to him, Plaintiff challenges Webloyalty's authentication of the Join Email and the Acknowledgement Page. Plaintiff, however, severely overstates the requirements for authentication.

"[T]he burden of proof for authentication is slight." *Lexington Ins. Co. v. W. Pa. Hosp.,* 423 F.3d 318, 328 (3d Cir. 2005). The burden is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *See U.S. v. Vaghari,* No. 08-693-01-02, 2009 WL 2245097, *8 (E.D. Pa. Jul. 27, 2009) (citing Fed. R. Evid. 901(a)). "'[C]ircumstantial evidence may, in principle, suffice to authenticate a document.... All that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be.'" *Id.* at *8, *citing Link v. Mercedes-Benz of N. Am., Inc.,* 788

---

[7]     Pursuant to Fed. R. Civ. P. 5.2, certain personal information has been redacted from both the Pipkin Decl. and exhibits.  Should the Court wish to view unredacted versions, Webloyalty will make them available.

F.2d 918, 927 (3d Cir. 1986).  Accordingly, in addition to "[t]estimony that a matter is what it is claimed to be," authentication may be provided through  "[d]istinctive characteristics and the like.  Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." *Id.* at *8 (citing Fed. R. Evid. 901(b)(1), (4)).  Here, both the testimony of Meghan L. Pipkin as set forth in her declaration and the characteristics of the documents themselves supply sufficient authentication.  (*See* PD ¶¶ 1-4, Ex. A, B).

Without legal authority, Plaintiff contends that Ms. Pipkin lacks personal knowledge of the documents of the documents offered because she did not draft, review or send them.  Ms. Pipkin, however, is Webloyalty's Senior Director of Marketing Strategy and, under oath, averred that she "managed the technical implementations between Webloyalty's programs and that of clients, such as GameStop [and has] detailed knowledge about the world-wide-web page flows and enrollment process that were in place for customers who joined Webloyalty's Shopper Discounts & Rewards Program (the "Program") during 2009."  (PD ¶ 1).  She further represented under oath that her declaration is "based upon my personal knowledge of Webloyalty's systems and transaction processes [and] their relationship to the systems and processes of GameStop," (PD ¶ 2) not simply, as Plaintiff incompletely contends, on a "mere 'review of Webloyalty's records regarding the Plaintiff's enrollment and membership. . . .'"  (MTS memo, p. 3).

A court may rely on affidavits where the affiant's "personal knowledge and competence to testify are reasonably inferred from their positions and the nature of their participation in the matters to which they swore." *See Madison One Holdings, LLC, et al.  v. Punch International, NV*, No. 4:06-cv-3560, 2009 WL 911984, *11 (S.D. Tex. March 31, 2009) (reasonably inferring affiant's personal knowledge from affiant's position as a high level employee overseeing and familiar with matters set forth in affidavit), *citing DIRECTTV, Inc. v. Budden*, 420 F.3d 521, 530

(5th Cir. 2005) (quoting *Barthelemy v. Air Lines Pilots Ass'n,* 897 F.2d 999, 1018 (9th Cir.

1990)).  "An affiant ... may have personal knowledge of activities in which she has not actually

participated." *Hamilton v. Trover Solutions, Inc.,* No. 03-30547, 2004 WL 1491587, at *1 (5th

Cir. 2004) (citing *Dalton v. FDIC,* 987 F.2d 1216, 1223 (5th Cir. 1993).  For example, "a

manager of an organization can glean personal knowledge of the practices of that organization by

participating in those practices or reviewing the organization's records." *Id.* (citing *FDIC v.

Patel,* 46 F.3d 482, 484 (5th Cir. 1995); *FDIC v. Selaiden Builders, Inc.,* 973 F.2d 1249, 1255

(5th Cir. 1992)).

　　　Ms. Pipkin's position within Webloyalty, her familiarity with the web pages used in the

enrollment process, and her oversight of the technical implementations between Webloyalty's

programs and that of clients, such as GameStop, make her more than competent to testify from

her "personal knowledge" that the document she identified from Webloyalty's systems are what

she says they are and what they purport to be.  *See Cantu v. Vitol, Inc,.* No. H-09-0576, 2011 WL

486289, *2 n. 2 (S.D. Tex. 2011) (testimony of human resource director that emails were

collected from defendant's email system sufficient for authentication); Fed. R. Evid. 901(b)(1).

　　　Even in the absence of Ms. Pipkin's affidavit, the documents Webloyalty has offered are

self-authenticating under Fed. R. Evid. 901(b)(4) in light of their "distinctive characteristics."

As an initial matter, the Join Email is addressed directly to Plaintiff at "XXXXXXXX", which is

the email Plaintiff supplied twice when enrolling in the Program.  (*See* PD, ¶ 4 and Ex. B).  The

email is also dated the same date as the date of Plaintiff's enrollment in the Program, *i.e.,*

November 27, 2009.  *Compare* PD, Ex. B, *with* Customer Administration Page, attached as Ex.

D to the Winiarski Declaration.  Furthermore, the email correctly identifies Visa as the type of

debit card used by Plaintiff to enroll in the Program and the last four digits of that card.  *See* PD.

Ex. B.  Finally, Ms. Pipkin confirms that "the Join Email was sent as addressed, without it being returned as undeliverable."[8]  *See* PD, ¶ 4.  These are the very types of characteristics courts have found sufficient for self authentication of emails. *See, e.g., U.S. v. Vaghari*, 2009 WL 2245097 at *8 (finding emails bearing the recipients name and email address in the headers to be self-authenticating) (citing *United States v. Siddiqui,* 235 F.3d 1318, 1322-23 (11th Cir. 2000); *United States v. Safavian,* 435 F. Supp. 2d 36, 39-42 (D. D.C. 2006)).

Although provision of the Join Email to Plaintiff alone meets the requirements of the EFTA, 15 U.S.C. § 1693e(a), and Regulation E (12 C.F.R. § 205.10(b)), Ms. Pipkin also attached an enrollment Acknowledgement Page to her affidavit.  Unlike the Join Email, Webloyalty does not claim that the offered document is the actual page that Plaintiff received.  Rather, Ms. Pipkin states only that it is the "form" of what was presented to Plaintiff on the day of his enrollment in order to demonstrate the authorization confirming information that Webloyalty provided to Plaintiff on-line.  (PD ¶ 3).  Indeed, as is plain on the face of the document it was a template for a "testmember" who has made a "Gamestop" purchase.  In this regard, Ms. Pipkin is fully competent by virtue of her position and familiarity with the records involved in the enrollment process to authenticate the document as the template in use at the time of Plaintiffs' enrollment in the Program and the form of what was presented to Plaintiff.  *See Vaghari*, 2009 WL 2245097 at *8 (for authentication, the fact-finder [need only be able to] legitimately infer that the evidence is what the proponent claims it to be.").

---

[8]     Notably, Plaintiff complains that Ms. Pipkin does not attest that Plaintiff received any such email.  *See* MTS memo, p. 5. However, he himself never contends that the email was not delivered.  Nor does he provide any facts from which such an assertion could be deemed "plausible" in light of Ms. Pipkin's  description of Webloyalty's delivery efforts.

Hoping to lead this Court to conclude erroneously that courts have refused to consider documents like those offered by Webloyalty in comparable circumstances, Plaintiff has reflexively cited *In re Easysaver Rewards Litig.*, No. 09-CV-2094-MMA (BLM), 2010 WL 3259752 (S.D. Cal. Aug. 13, 2010) for support, but without substantive discussion. (*See* MTS memo, p. 7). In *Easysaver*, the court was unable to determine whether the webpage submitted by the defendant membership program was the webpage upon which the plaintiff actually enrolled. *See id.* at *5 ("The Court finds that whether these are the webpages Plaintiffs would have viewed during their online transactions is subject to 'reasonable dispute.'") (quoting Fed. R. Evid. 201). The court's uncertainty stemmed from a number of causes, including the following: (1) *Easysaver* involved multiple plaintiffs, each with slightly different enrollment experiences; (2) the affiant in *Easysaver*, who was not even an employee of the defendant, only "cross-checked the records of the four named plaintiffs' orders with the versions of the webpages in effect and accessible on those dates," and conceded that the enrollment pages were "changed, modified, and revised over time," *Id.* at *4-5; and (3) there were distinct differences between the five versions of the enrollment pages offered in *Easysaver*, including a different ordering of the paragraphs and varying text under the green acceptance button. *Id.* at *5.

In contrast, these deficiencies in authentication are not present here. There is no reasonable dispute that the Enrollment Page and Join Email Webloyalty offered here are the very pages presented to Plaintiff and that the Acknowledgement Page represents the template of the page shown to Plaintiff on-line. Not only has Plaintiff never disputed the content or receipt of these pages, but experienced executives at Webloyalty have identified the documents as those provided to Plaintiff. *Contra Easysaver*, 2010 WL 3259752, at *4 n. 4 ("It is questionable whether Rabinovitz, an employee of Provide [the merchant owning the Proflowers website] has

the personal knowledge to authenticate webpages controlled by EMI [owner of the membership program].").  Given these clear factual differences, *Easysaver* does not support Plaintiff's Motion to Strike.  Far more relevant evaluations of the sort of circumstances actually present here support the conclusion that the documents Webloyalty has offered should be considered. *See, e.g., Baxter v. Intelius, Inc.*, No. SACV 09-1031 AG (MLGx), 2010 WL 3791487, at *2, 4 (C.D. Cal. Sept. 16, 2010) (taking judicial notice of defendant's webpage viewed by plaintiffs when enrolling in the monthly membership program); *In re Vistaprint Corp. Marketing and Sales Practices Litig.*, 2009 WL 2884727 at *4-5 (considering on-line membership program enrollment page in connection with motion to dismiss); *In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 385 n. 4 (S.D.N.Y. 2010) (taking judicial notice of website disclosures); *Hook v. Intelius, Inc.*, Civ. A. No. 5:10-cv-239(MTT), 2011 WL 1196305, at *5 (M.D. Ga. Mar. 28, 2011) (rejecting plaintiffs' motion to strike because "[p]laintiffs did not present any evidence to contradict defendants' representations and did not affirmatively identify any discrepancies" in the documents submitted by the defendants) (internal citations omitted).

## III.   CONCLUSION

For the foregoing reasons, and the reasons set forth in their Memorandum in Support of their Request for Judicial Notice, Webloyalty and GameStop respectfully request that the Court deny Plaintiffs' Motion to Strike.

Dated:  April 7, 2011

DEFENDANTS
WEBLOYALTY, INC. AND
GAMESTOP CORPORATION

By: _____
James E. Nealon (ct 08161)
KELLEY DRYE & WARREN LLP
400 Atlantic Street
Stamford, Connecticut  06901
Tel.:  (203) 324-1400

Fax:  (203) 327-2669
Email:  jnealon@kelleydrye.com


James W. Prendergast (MA SBN: 553073) (*Pro hac vice*)
John J. Regan (MA SBN: 4151201) (*Pro hac vice*)
Daniel M. Esrick (MA SBN: 647676) (*Pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
Email:  james.prendergast@wilmerhale.com
Email:  john.regan@wilmerhale.com
Email:  daniel.esrick@wilmerhale.com

- 15 -

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2010, the following documents:

1.       **DEFENDANTS WEBLOYALTY.COM, INC. AND GAMESTOP
          CORPORATION'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
          MOTION TO STRIKE;**

were electronically filed with the Clerk of Court using the CM/ECF system, which will send
notification of such filing to all counsel of record.

James E. Nealon  (ct08161)
Attorney for Defendants Webloyalty.com, Inc.
and GameStop Corporation