UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| L.S., a minor, by P.S., his parent and next friend, on behalf of himself and all others similarly situated,<br><br>             Plaintiff,<br><br>   v.<br><br>WEBLOYALTY.COM, INC., GAMESTOP CORPORATION and VISA INC.,<br><br>             Defendants. | Case No. 3:10-cv-01372 (CSH)<br><br><br><br><br><br><br><br><br><br>April 21, 2011 |

# PLAINTIFF'S REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF THE MOTION TO STRIKE

Joseph H. Weiss
David C. Katz (phv04500))
WEISS & LURIE
1500 Broadway
New York, New York 10036
(212) 682-3025
(212) 682-3010 (facsimile)
jweiss@weisslurie.com
dkatz@weisslurie.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.     THE WINIARSKI DECLARATION AND PIPKIN DECLARATION, AS
WELL AS ALL DOCUMENTS ATTACHED THERETO, MUST BE STRICKEN.. . . . 2

     A.     Defendants' Improper Submissions Have Only
Established Their Brazen Violation of EFTA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     B.     Congress' Express Requirement That a "Signed" Copy of a Fund Transfer
Preauthorization Be Provided to a Consumer "When Made" Has Not Been –
and Cannot Be – Varied by Federal Reserve Regulations. . . . . . . . . . . . . . . . . . . 4

     C.     The "Enrollment Page" and Account Statement Must Be Stricken. . . . . . . . . . . . 5

     D.     The "Acknowledgment Page" and "Join Email" Must Be Stricken. . . . . . . . . . . . 6

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Plaintiff L.S., by his parent and next friend, P.S., through his counsel, respectfully submits this Reply Memorandum of Law in Further Support of Plaintiff's Motion to Strike.

**PRELIMINARY STATEMENT**

Defendants sought a discovery stay based on their false and misleading argument that their entire motion to dismiss can be determined upon the Court's consideration of one document – the so-called "Enrollment Page." Thereafter, to exploit the Court's stay order, defendants improperly filed four different internal, non-public Webloyalty documents (the "Enrollment Page," an account statement, the "Acknowledgment Page," and the "Join Email"), none of which were incorporated into or integral to plaintiff's Amended Complaint (the "Complaint"), all for the improper purpose of resolving disputed issues of material fact upon their motion to dismiss.

Defendants' duplicitous and abusive tactics have instead demonstrated Webloyalty's indisputable violations of black letter law. Webloyalty's submissions establish that a "**copy**" of the purportedly "signed" so-called "Enrollment Page" was never provided to plaintiff – in violation of the Electronic Funds Transfer Act's ("EFTA") plain language requiring that a "**copy**" of any signed preauthorization for an electronic funds transfer be provided to plaintiff by Webloyalty "when made." 15 U.S.C. § 1693e(a). Since defendants concede that they ***never*** provided plaintiff a copy of the purportedly "signed" so-called "Enrollment Page," their violation of EFTA is established, their request to skip discovery and have disputed issues of fact resolved at the motion to dismiss stage is fundamentally unfair, and the false premises upon which they secured a stay and submitted these disputed documents, e.g., that plaintiff was allegedly "hiding his head in the sand" and concealed the "signed" so-called "Enrollment Page" from the Court, must be rejected and these disputed, immaterial, and irrelevant documents stricken.

## ARGUMENT

I. **THE WINIARSKI DECLARATION AND PIPKIN DECLARATION, AS WELL AS ALL DOCUMENTS ATTACHED THERETO, MUST BE STRICKEN**

   A. **Defendants' Improper Submissions Have Only Established Their Brazen Violation of EFTA**

The "primary objective" of EFTA "is the provision of individual consumer rights." 15 U.S.C. § 1693(b). Thus, EFTA unequivocally requires that when a payee (here, Webloyalty) seeks preauthorization to make an electronic funds transfer from the account of a consumer (here, the plaintiff): "a **copy** of such authorization **shall** be provided [by the payee] to the consumer **when made**." 15 U.S.C. § 1693e(a) (emphasis added). That same EFTA provision allows that "a consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer." A payer of a preauthorized fund transfer must be given a "**copy**" of the document he signed to authorize the transfer so that he may **know** that he has purportedly authorized such a fund transfer to a payee, and cancel it promptly if he did not intend to so preauthorize a fund transfer to that payee.

The importance of that EFTA provision is dramatically brought to the fore here where Webloyalty, according to 90% of its "members," the United States Congress, expert testimony, and plaintiff's pleading, has a practice of deceiving innocent consumers into accepting what consumers believe is a coupon offer for their next GameStop purchase flashed on the screen that Webloyalty contends is a preauthorization for recurring funds transfers for a fee-based membership club virtually none of its "members" are aware of or derive any benefit from. Had Webloyalty provided plaintiff, as required by EFTA, with a "**copy**" of the so-called "Enrollment Page," with the information Webloyalty claims constituted his electronic signature filled in,

plaintiff would have had the opportunity, as required by law, to discover that the coupon offer flashed on the screen was not from GameStop rewarding him for his loyalty as a GameStop customer and video game purchase on GameStop's website, but was an unexpected and deceptive preauthorized fund transfer to a complete stranger, i.e., Webloyalty, and would have had the opportunity, as required by EFTA, to cancel that purported preauthorized fund transfer – which is, of course, exactly why Webloyalty did not provide it.

Webloyalty concedes that it never provided plaintiff with a "copy" of the "signed" preauthorization. Rather, it says that it provided plaintiff with two *different* documents, the "Acknowledgment Page" (Pipkin Declaration Exh. A) and the "Join Email" (Pipkin Declaration Exh. B) that it says purportedly advised plaintiff he had become a member of a fee-based Webloyalty club. However, by depriving plaintiff of a purportedly "signed" "**copy**" of the preauthorization "when made," plaintiff was wrongfully precluded from the ability to subsequently scrutinize the deceptive document Webloyalty claims he "signed" by entering a few items of benign identity-confirming information in pursuit of an offered GameStop coupon.

Since Webloyalty's abusive submission of documents outside the four corners of the Complaint, in violation of the most basic and well-established standards for determination of a motion to dismiss, has only demonstrated Webloyalty's clear violation of the law, it tries to change the subject by arguing that plaintiff did not specifically plead the violation of 15 U.S.C. § 1693e(a) in his Complaint. However, this motion to strike is not aimed at pleading standards, but at defendants' false statements to the Court upon which it submitted the disputed documents, e.g., that plaintiff "hid his head in the sand" and concealed the "signed" so-called "Enrollment Page" from the Court. The facts now laid bare are that **Webloyalty concealed a "copy" of the "signed" "Enrollment Page" from plaintiff**. In plain violation of the law, Webloyalty never

provided a "signed" copy to him. The premises upon which defendant submitted the disputed documents and sought and obtained a stay of discovery here were misrepresentations that should not be rewarded with procedural short-cuts, but strongly condemned.

> **B. Congress' Express Requirement That a "Signed" Copy of a Fund Transfer Preauthorization Be Provided to a Consumer "When Made" Has Not Been – and Cannot Be – Varied by Federal Reserve Regulations**

Webloyalty claims that Federal Reserve regulations allowed it to provide plaintiff with something other than a copy of the signed "Enrollment Page," citing 12 C.F.R. part 205, supplement I, § 10(b), comment 4, which states:

> Use of a confirmation form. A financial institution or designated payee may comply with the requirements of this section in various ways. For example, a payee may provide the consumer with two **copies** of a preauthorization form and ask the consumer to sign and return one and to retain the second **copy**. (Emphasis added).

That argument must be summarily rejected since Congress was clear when it unambiguously stated in EFTA that "a **copy** of such authorization **shall** be provided to the consumer when made." 15 U.S.C. § 1693e(a) (emphasis added). Ransom v. FIA Card Servs., 131 S. Ct. 716, 723-24 (2011) (Statutory analysis starts "where all such inquiries must begin: with the language of the statute itself."); Dobrova v. Holder, 607 F.3d 297, 301 (2d Cir. 2010) ("Statutory analysis necessarily begins with the plain meaning of the law's text, and, absent ambiguity, will generally end there."). The term "copy" is defined by the "ordinary meaning of the term." Ransom, 131 S. Ct. at 724. "Copy" means "an imitation, transcript, or reproduction of an original work." http://www.merriam-webster.com/dictionary/copy. Neither the "Join Email" nor the "Acknowledgment Page" were "a reproduction" of the "signed" so-called "Enrollment Page." Defendants concede as much and so, at least tacitly, concede their violation of EFTA.

4

Further, Webloyalty is clearly misrepresenting the Federal Reserve's guidance. The regulation in no way varies – nor could it – the statutory requirement that a consumer who purportedly executes a preauthorization for fund transfers be provided with a "**copy**" when made. Indeed, the example provided in the regulation, in accord with the express terms of EFTA, expressly requires the delivery of a "**copy**" of the "signed" preauthorized fund transfer by Webloyalty to the plaintiff. Regardless, Congress's unambiguous, plain requirement that a "**copy**" be provided to the consumer cannot be changed by regulation. Chevron U.S.A. v. NRDC, 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court as well as the agency must give effect to the unambiguously expressed intent of Congress").

### C. The "Enrollment Page" and Account Statement Must Be Stricken

Webloyalty's argument that the "Enrollment Page" is capable of being considered on a motion to dismiss because it was purportedly incorporated by reference into or integral to the Complaint is eviscerated by the "evidence" it has improperly submitted to the Court. To be incorporated by reference into the Complaint, plaintiff must have referred to it. However, Webloyalty repeatedly argues that plaintiff makes no allegation as to the statements on the "Enrollment Page."[1] To be integral to the Complaint, plaintiff must have "relie[d] heavily upon its terms" in drafting the Complaint. Sahu v. Union Carbide Corp., 548 F.3d 59, 69 (2d Cir.

---

[1] See, e.g., Memorandum of Points and Authorities in Support of Defendants Webloyalty.com, Inc. and GameStop Corporation's Motion to Dismiss Plaintiff's Amended Complaint at 23, 25; Reply Memorandum in Support of Defendants Webloyalty.com, Inc.'s and GameStop Corporation's Motion to Dismiss Plaintiff's Amended Complaint at 1 ("L-S neglects to describe what Webloyalty represented to him"), 2 & n. 2 ("L-S's experience when enrolling in the Program is found in only a few short paragraphs of the Amended Complaint that fail to identify a single statement made by any Defendant or on which L-S relied"), 4 n.7 ("L-S never claims that he read or relied on these references"), 7 ("the Amended Complaint does not offer the content of any specific statement made to L-S by any Defendant").

5

2008). However, Webloyalty's submissions to the Court have demonstrated that – in violation of the law – a copy of the "signed" so-called "Enrollment Page" was never provided to plaintiff by Webloyalty. Plaintiff did not possess the "signed" so-called "Enrollment Page" and could not have "relied heavily upon its terms" when drafting the Complaint.

Since the internal, non-public account statement annexed as Exhibit B to the Winiarski Declaration was indisputably never seen by plaintiff or provided to plaintiff it was likewise not incorporated into or integral to the Complaint and must be stricken. Moreover, the document makes numerous factual assertions that defendants ask the Court to assume as true based upon an incomplete and deliberately skewed record. The account statement purports to list various dates on which Webloyalty claims emails were sent to plaintiff. What were the subjects of those emails? Who was listed as the sender? Were they something that a consumer would be expected to open? Given Webloyalty's knowledge that 90% of its "members" do not even know who Webloyalty is, would it be fair to embrace Webloyalty's argument that plaintiff had a "duty" to read them? Defendants, in violation of the fundamental tenets of our adversarial system, would have the Court assume away these issues. Plaintiff respectfully submits that Due Process requires that he have full discovery and his day in Court on all such disputed issues.

**D.**     **The "Acknowledgment Page" and "Join Email" Must Be Stricken**

Webloyalty claims to have submitted the "Acknowledgment Page" and "Join Email" to the Court in order to show compliance with EFTA's requirement for the providing of a "**copy**" of a "signed" fund transfer preauthorization, but neither the "Acknowledgment Page" nor the "Join Email" are an EFTA-required "**copy**" of a signed fund transfer preauthorization. Since neither of those documents demonstrate EFTA compliance as a matter of law – the reason for which defendants state they proffered those documents – they are entirely immaterial to the motion to

6

dismiss and must be stricken pursuant to Fed. R. Civ. P. 12(f). Further, neither document was incorporated into or integral to the Complaint demonstrating the inappropriateness of their consideration upon defendants' motion to dismiss.

There are other serious issues requiring the striking of these documents. Webloyalty claims that the "Acknowledgment Page" is properly authenticated by the Pipkin Declaration. However, Ms. Pipkin deceitfully fails to inform the Court in her declaration that the "Acknowledgment Page" attached as Exhibit A to her declaration **was never provided to plaintiff**. Rather, after plaintiff noted in his motion to strike that Pipkin Declaration Exh. A does not have plaintiff's name on it, has an incorrect address, an incorrect email address, and has no correct information about plaintiff at all, Webloyalty's counsel argued in the opposition brief that the Pipkin Declaration Exhibit A is a "template" that *would have been* filled out with plaintiff's correct information and *would have been* flashed on the screen to plaintiff with that information. That argument of counsel – not attested to by the declarant – has no evidentiary value at all and must be entirely disregarded.

Further, Webloyalty claims to have submitted the document to show that plaintiff was provided with an "Acknowledgment Page," not to show that Webloyalty possesses a form containing information about some other purported "customer" of Webloyalty. The document attached as Exhibit A to the Pipkin Declaration can only show that such a Webloyalty form exists, not that one with correct information was flashed[2] on the screen to plaintiff. As such, the document is immaterial, subject to being stricken pursuant to Fed. R. Civ. P. 12(f), and irrelevant, and thus not subject to consideration on the motion to dismiss. See, e.g., DiFolco v.

---

[2]Regardless, the "Acknowledgment Page" could not demonstrate EFTA compliance since it was not a "**copy**" of the "signed" so-called "Enrollment Page."

7

MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (to consider a document on a motion to dismiss, among other things, "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.").

The so-called "Join Email" attached as Exhibit B to the Pipkin Declaration should also be stricken. First, it is immaterial since it does not show compliance with EFTA. Second, Ms. Pipkin has no personal knowledge of the document and there are significant questions about her and Webloyalty's honesty at issue here. They cannot be accepted at their word – they have defrauded thousands of consumers, as found by the United States Congress, and experts in the marketing field, and there are serious issues that must be explored in discovery. For example, the reference line of the email does not state "confirmation form for preauthorized fund transfer." Rather, the reference line only refers to a "Membership Kit." If Webloyalty was intending to provide a "confirmation form" for a preauthorized fund transfer, why didn't it state that up front? Discovery will likely show that Webloyalty's intent in doing so was that the "Join Email" would not make it past a consumer's spam filter or, at a minimum, go un-opened and deleted.[3]

Moreover, Webloyalty is utterly incorrect where it asserts that emails are self-authenticating documents and so always capable of being considered on a motion to dismiss. Since the "Join Email" was not attached to the Complaint, was not incorporated by reference in the Complaint, and was not integral to the Complaint, it cannot be considered on a motion to dismiss. DiFolco, 622 F.3d at 113 ("The August 31 e-mail was not attached to the complaint,

---

[3]The so-called "Join Email" lists the sender as "Customer Service - IC SDR." Plaintiff would have had no reason to open an email, if sent, from this unknown sender. Webloyalty must inform the Court why the sender was not stated as Webloyalty and the reference line did not accurately state the reason Webloyalty now claims the email was being transmitted. Further, Ms. Pipkin who purports to authenticate the "Join Email" is not from Webloyalty's "customer service" division, which is listed as the sender on the email, and so has no basis for the purported authentication therefor.

was not incorporated by reference in the complaint, and was not integral to the complaint ... The District Court therefore erred in considering the August 31 e-mail.").

## **CONCLUSION**

For all of the foregoing reasons, plaintiff respectfully requests that the Court enter an Order granting the Motion to Strike in its entirety and for such other and further relief the Court deems just and proper.

Dated: April 21, 2011                                            **The Plaintiff**

/s/ David C. Katz
Joseph H. Weiss
David C. Katz (phv04500))
WEISS & LURIE
1500 Broadway
New York, New York 10036
(212) 682-3025
(212) 682-3010 (facsimile)
jweiss@weisslurie.com
dkatz@weisslurie.com

James E. Miller (ct21560)
Patrick A. Klingman (ct17813)
Karen Leser-Grenon (ct23587)
Shepherd, Finkleman, Miller & Shah LLP
65 Main Street
Chester, CT 06412
(860) 526-1100
(860) 526-1120 (facsimile)
jmiller@sfmslaw.com
Pklingman@sfmslaw.com
Kleser@sfmslaw.com

His Counsel

# CERTIFICATE OF SERVICE

In hereby certify that on April 21, 2011, a copy of foregoing Plaintiff's Reply Memorandum of Law in Further Support of the Motion to Strike was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by the operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ David C. Katz
David C. Katz (pvh04500)
Weiss & Lurie
1500 Broadway
New York, New York 10036
Phone: (212) 682-3025
Fax: (212) 682-3010
dkatz@weisslurie.com