## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| _____ ) | | |
| L.  S., a minor, by P. S., his parent and next friend ) | | |
| on behalf of himself and all others similarly ) | | |
| situated, ) | Case No. 3:10-cv-1372 (CSH) | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| WEBLOYALTY.COM, INC., GAMESTOP ) | | |
| CORPORATION, and VISA INC., ) | **July 17, 2014** | |
| ) | | |
| ) | | |
| Defendants. ) | | |
| _____) | | |

## RULINGS ON PLAINTIFF'S MOTION TO STRIKE AND
## DEFENDANTS' MOTIONS TO DISMISS

**HAIGHT, Senior District Judge:**

### I.  INTRODUCTION

In November 2009, it is alleged in the complaint in this action, Plaintiff L. S., a minor, accessed the internet website of Defendant GameStop Corporation.  GameStop is a video game retailer which, in addition to retail stores, operates an e-commerce site, GameStop.com. L. S. visited that site for the purpose of purchasing a video game, using a credit card issued by Defendant Visa Inc. to pay for it.

When L. S. signed off the GameStop site, he had bought a video game, charged to his Visa card.  He had also put himself in a position where Defendant Webloyalty.Com, Inc. would be

charging his card $12 a month, month after month.  How that latter relationship came about depends upon one's point of view.

Plaintiff's perception is that this is "a classic confidence scheme where online retailers such as GameStop Corporation ('GameStop') partner with sham marketer Webloyalty.com, Inc. ('Webloyalty') to perpetuate a fraud on unsuspecting customers (the 'Class') to steal $12 each month from duped customers until their illicit scheme is revealed."  Brief for Plaintiff [Doc. 50] at 8.

Defendants' quite different perception is that, after L.S. concluded his online purchase transaction, "he clicked on a promotional link and chose to receive information about a further offer," a choice leading L. S. to Webloyalty's "offer and enrollment internet webpage" for a Shopper Discounts and Rewards Program, which stated the monthly charge for the Program.  "L.S. then elected to join the Program."  Brief for Defendants Webloyalty and GameStop [Doc. 40-1] at 10.

L. S.'s Amended Complaint in this action ("AC"), purportedly a class action, asserts claims under federal and state statutes and the common law.  Specifically, the AC contains these counts:

Count I (against Webloyalty and GameStop): violation of Title I of the Electronics Communications Privacy Act, 18 U.S.C. § 2510, *et seq*.

Count II  (against Webloyalty): violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693(a).

Count III  (against Visa): violation of the Electronic Funds Transfer Act.

Count IV  (against all Defendants): unjust enrichment.

Count V  (against Webloyalty and GameStop): civil theft, in violation of Connecticut General Statutes § 52-564.

Count VI  (against Webloyalty and GameStop): money had and received.

2

Count VII  (against Webloyalty and GameStop): negligent misrepresentation.

Count VIII (against Visa):  negligent misrepresentation.

Count IX   (against Webloyalty and GameStop): fraud.

Count X     (against Webloyalty and GameStop): unfair or deceptive acts or practices, in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Connecticut General Statutes § 42-110g.

Count XI   (against Visa): unfair or deceptive acts or practices, in violation of CUTPA.

Count XII  (against Visa): aiding and abetting.

Count XIII (against GameStop): aiding and abetting.

Count XIV (against all Defendants): civil conspiracy.

The case is now before the Court on several motions.  Defendants move separately to  dismiss the Amended Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. [Doc. 38], [Doc. 40].  Plaintiff opposes the motions to dismiss, and also moves to strike two affidavits and attached exhibits submitted by Webloyalty in support of its motion to dismiss. [Doc. 54].

## II.  DISCUSSION

### A.    Preliminary Considerations

The creation of fee-charging membership clubs attendant upon an internet online purchase transaction occurs with increasing frequency in this electronic commercial world.  The practice is a fertile source of litigation.  The case at bar is an illustration.

In addition, the practice came to the attention of the United States Senate Committee on Commerce, Science and Transportation.  The Majority Staff of that Committee's Office of Oversight

and Investigations addressed a staff report to Chairman Senator Rockefeller dated November 16, 2009 and titled "Aggressive Sales Tactics on the Internet and Their Impact on American Consumers."  The Executive Summary at 1 recited that since May 2009, the Commerce Committee staff "has been investigating three Connecticut-based direct marketing companies – Affinion, Vertrue, and Webloyalty – as well as the hundreds of online websites and retailers that partner with these three companies to sell club memberships to online shoppers. . . . [I]t is clear at this point that these three companies use highly aggressive sales tactics to charge millions of American consumers for services the consumers do not want and do not understand they have purchased."

Not surprisingly, Plaintiff's amended complaint in the present case gives prominent mention to this Commerce Committee staff report.  I take judicial notice of the fact that the staff issued the report.  I take no judicial notice of, and give no evidentiary value to, the findings of the report, such as those just quoted.   Equally unsurprisingly, Webloyalty does not agree with the report's conclusions.  Federal Rule of Evidence 201(b) allows a court to judicially notice an adjudicative fact only if the fact in question "is not subject to reasonable dispute," a threshold qualification I am not prepared to make with respect to this report's findings.  Other district courts in comparable cases have reached the same conclusion about the same Commerce Committee report.  *See, e.g., In re Easysaver Rewards Litigation*, 737 F.Supp.2d 1159, 1171 (S.D.Cal. 2010) ("The Court will not, however, consider the findings within the Senate's reports.  As the Defendants correctly note, the facts can be disputed, the findings pertained to other companies, and the conclusions involve interpretation, opinion and judgment."); *Berry v. Webloyalty.Com, Inc.*, No. 10-cv-1358, 2010 WL 8416525, at *8 (S.D.Cal. Nov. 16, 2010) ("The Court takes judicial notice of the fact that the Committee has issued reports on aggressive sales tactics. . . . However, the Court declines to take

4

judicial notice of the statements within the document as there is sufficient dispute about the content of the information even if it is in the public record.").

**B.     Case Law**

Cases such as these involve an asserted fee-paying membership in a discount or other benefit program generated during the course of an otherwise unrelated online purchase of a product. Typically, the consumer's membership in the program is claimed to have been created as the combined result of language appearing on the consumer's computer screen, arrows with instructions for the consumer to follow by clicking on them, requests for information from the consumer, and buttons reciting "I accept" for the consumer to click on. Subsequently, the consumer notices monthly fees for the program posted to his or her credit card. The resulting litigation routinely turns upon two basic contentions. "Fraud!" cries the consumer (L. S. in this case), who pays the fee money. "Informed consent!" cries the programmer (Webloyalty in this case), who rakes the money in. The district court decides who is right.

Whether a particular case falls into one or the other of these two general categories is fact intensive. The whole case turns upon what the programmer said to the consumer/online shopper, in the form of computer screen texts and instructions, and what the consumer did thereafter. Inevitably the defendant programmer moves to dismiss the complaint. If the district judge denies the motion to dismiss, it can happen that a programmer winds up paying a considerable amount of money to a plaintiff class of consumers. *Easysaver* is an example of that result. If the district judge grants the motion to dismiss, without further leave to amend the complaint, that is the end of the case. *Berry* is an example of that result. Both results are subject to review by the court of appeals.

5

*Easysaver* and *Berry,* as it happens, were both decided by the Southern District of California. They are informative in the case at bar.

In *Easysaver*, consumers ordered fresh flowers , bouquets and plants on the website of a company called Provide (analogous to GameStop in the case at bar). Consumers paid Provide for their purchases with a credit or debit card. Provide transmitted a consumer's credit or debit card information to its third party marketing partner, EMI (analogous to Webloyalty in the case at bar), which thereafter charged the card for purported savings or benefits. At the conclusion of the online purchase from Provide, a window popped up on the consumer's screen which plaintiffs contended "is part of an intentionally misleading and deceptive scheme, jointly orchestrated by Provide and EMI," with the result that EMI "fraudulently charges the cards or accounts without permission under the guise that Provide's customers have supposedly joined a savings program known as EASYSAVER Rewards, which [EMI] manages on [Provide's] behalf." 737 F.Supp.2d at 1163-1164 (internal quotation marks and brackets omitted).

EMI moved to dismiss the plaintiffs' complaint. The court denied that motion in an opinion by Judge Anello, who stated at 737 F.Supp.2d 1172: "At this early stage of the litigation, the Court accepts as true, and as plausible, the Plaintiffs' allegations that they were deceived into authorizing separate charges to their debit cards simply by typing in their e-mail address for a complimentary gift." Judge Anello noted that "Other courts have denied motions to dismiss on similar facts," citing as an example a Northern District of California case which "held that plaintiffs stated claims against a rewards program where consumers alleged they had been automatically enrolled in a membership program through a pop-up advertisement, without their consent, that charged monthly fees to their financial accounts unless the consumer affirmatively cancelled." *Id.* (citing *Nordberg v. Trilegiant*

6

*Corp.*, 445 F.Supp.2d 1082, 1087-88 (N.D.Cal. 2006)).

After some further litigation, the parties in *Easysaver* settled the case, one of the settlement provisions being that "Defendants will fund a $12.5 million Cash Fund that eligible class members can make claims against for refunds of payments for monthly membership fees." 921 F.Supp.2d 1040 at 1045 (S.D.Cal. 2013).

*Berry,* a Southern District of California case that came before Judge Huff, resonates particularly in the case at bar because the defendant marketer-programmer in *Berry* was Webloyalty, just as it is in this case, and the computer screen pop-up displays and instructions to consumers were the same in *Berry* as they are in the case at bar. *Compare* the reproductions in Judge Huff's opinion in *Berry,* reported at 2011 WL 1375665 (S.D.Cal. April 11, 2011), at *2-*3, with the exhibits to the Winiarski affidavit [Doc. 40-3] in the case at bar.

Judge Huff granted the defendants' motion to dismiss the complaint. 2011 WL 1375665, at *14. The district court entered judgment accordingly. Plaintiffs appealed to the Ninth Circuit, which disposed of the appeal in a memorandum and order stating succinctly: "Plaintiff Patrick Berry appeals the district court's dismissal of his suit for failure to state a claim against Webloyalty.com and Movietickets.com. We vacate and remand because Berry lacks Article III standing." 517 F. App'x 581 (9th Cir. 2013). That lack of standing was apparent, the Ninth Circuit reasoned, because "Berry has alleged no injury in fact sufficient to support Article III standing. The record reveals that Berry was fully compensated by Webloyalty.com for the $36.00 charged against his debit card." *Id.* at 582.

One cannot tell from Judge Huff's opinions in the district court or the Ninth Circuit's memorandum when Webloyalty paid this $36.00 refund to the plaintiff. If Webloyalty made the

payment after the district court entered judgment dismissing plaintiff's complaint and plaintiff filed his notice of appeal, it is not implausible to wonder if Webloyalty intended by the payment to deprive plaintiff of Article III standing to press his appeal, thereby preserving Judge Huff's decision in Webloyalty's favor.  If that was the tactic, it succeeded.  But I need not pursue that speculation.  In any event, the Ninth Circuit concluded its memorandum by saying: "Because we hold that Berry lacks standing, we do not reach his other contentions.  We vacate the district court's order and remand with instructions to dismiss without prejudice." 517 F. App'x  at 582 (citation and internal quotation marks omitted).

The Ninth Circuit's holding in *Berry* touched off a lively and entertaining exchange between counsel in the case at bar, taking the form of Notices of Additional Authority and Responses thereto. Counsel for Plaintiff filed a Notice [Doc.78] attaching a copy of the ninth Circuit's memorandum in *Berry*.  Plaintiff's Counsel observed pointedly that while counsel for Webloyalty cited Judge Huff's decision dismissing that plaintiff's complaint as additional authority for this Court to consider only two days after Judge Huff entered it, over a month had passed since the Ninth Circuit vacated that decision.  Plaintiff's counsel said disapprovingly: "Webloyalty, which is represented by the same counsel here as in the *Berry* case, neglected to provide notice to this Court despite having actual knowledge of the vacature of the very decision it previously – promptly – provided to the Court." Doc. 78 at 1.  Counsel continued: "Since the district court's decision in *Berry* has been vacated, Plaintiff respectfully submits  that Defendants' arguments based thereon should not be considered or should be struck from the record."  *Id*. at 2 (docket citation omitted).

Counsel for Webloyalty's Response [Doc. 79] rejected the criticism leveled by Plaintiff's counsel and proclaimed the continuing validity of Judge Huff's decision as useful authority.  "There

was no reason," counsel protest, "for Webloyalty to notify this Court about the *Berry Appeal Decision* because the Ninth Circuit based its decision exclusively (and *sua sponte*) on the plaintiff's lack of standing in that case," Doc. 79 at 1, a contention Defendants do not make in the instant case. "As such," counsel continue, "the *Berry Appeal Decision* does not affect the relevant reasoning and conclusions of Judge Huff, who dismissed the *Berry District Court Action* because, among other reasons, the disclosures on the Webloyalty Enrollment Page were not deceptive as a matter of law." *Id*. at 2. That core conclusion led Judge Huff to dismiss all plaintiff Berry's federal, state and common law claims. Counsel for Webloyalty cite a number of cases as exemplifying the proposition that courts "routinely consider decisions, such as in the *Berry District Court Action*, as persuasive authority even though they have been vacated on other grounds." *Id*.

Not in the least persuaded, counsel for Plaintiff riposted with a further Response [Doc. 80] which cites Ninth Circuit authority for the proposition that "a decision that has been *vacated* has no precedential authority whatsoever." Doc. 80 at 2 (quoting *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 n. 2 (9th Cir. 1991)) (emphasis in original). Counsel for Plaintiff argue that "the Ninth Circuit chose to vacate the *Berry* opinion in its entirety rather than reverse 'on other grounds.' Pursuant to the Ninth Circuit standards set forth in *Durning*, that choice strips the *Berry* decision of any precedential authority." Doc. 80 at 2. "The *Berry* decision has no precedential authority whatsoever," counsel conclude with a flourish, "and Defendants' arguments based thereon should be struck or, at a minimum, not considered." *Id*. at 3. (docket citation omitted).

These exchanges pose a stark choice. It is almost as if this Court is asked to choose between allowing Judge Huff to continue to preach in the words of her *Berry* decision, or excommunicate her for the purpose of burning that particular sermon. The alignment of the parties in the case at bar

9

depends upon whether one likes Judge Huff's decision and wants its presence to continue, or does not like the decision and wants it to simply go away.

The competing broadsides of counsel downplay the distinction between *precedential* and *persuasive* case law.  District judges are required to lead their professional lives within the boundaries set by *binding precedent.*  I am a judge of the District of Connecticut.  Decisions of the Supreme Court and the Second Circuit are binding upon me.  I am not bound by the decisions of any other district court in the nation, nor by the decisions of any circuit court other than the Second.  In conducting legal research to inform my own judgments, I am at liberty to regard decisions of judges of those other courts as thoughtful, well-reasoned, legally sound and *persuasive*, or (meaning no disrespect to the hypothetical authors) as superficial, misguided, contrary to law and *unpersuasive*. If a panel of a circuit court other than the Second files a divided opinion, I may choose to accept the reasoning of the dissent and disregard that of the majority.  Indeed, if in the *Berry* case the Ninth Circuit had reversed Judge Huff's decision on its merits (which the court of appeals took pains to say it was not doing), I would be free, from my Connecticut Shoreline chambers 3000 miles distant and in a different circuit, to regard Judge Huff's reasoning as more *persuasive* than that of the court of appeals.  Questions of *precedent* do not arise in such circumstances, at least in the sense of binding precedent.  When a district judge cites in an opinion a non-binding decision of some other court and refers to it as a "precedent," what the judge really means is that he or she finds that other decision to be persuasive.

**C.** **Resolution of the Motions in This Case**

**1.** *Motion to Dismiss*

In the case at bar, I am bound to say that Judge Huff's decision dismissing the complaint in *Berry* strikes me as persuasive.[1]  When she filed that opinion, 2011 WL 1375665, Judge Huff was just completing 20 years as a district judge.  The opinion is comprehensive, thorough, thoughtful and reasoned.

It is important to note, however, that Judge Huff had filed an earlier opinion, 2010 WL 8416525, which granted in part and denied in part the defendants' first motion to dismiss the complaint.  That opinion and order granted leave to plaintiff to file an amended complaint, and granted the parties limited discovery with respect to the issue of the enrollment page screenshots (which, as previously noted, are the same as those in this case).  The expanded record that emerged in *Berry* as a result of that order furnishes useful guidance for governance of the case at bar.

Plaintiff's present pleading is an Amended Complaint.  Its principal contention is that the manner in which Webloyalty arranged and presented its enrollment page screenshots perpetrated a fraud upon a consumer like the child L. S., who alleges he found himself an unaware and unintentional  member of a bogus rewards program which lifted $12 out of his credit card pocket every month.

This overarching claim of fraud permeates several of the claims for relief asserted in the pleading.  The heightened pleading requirements of Fed. R. Civ. P. 9(b) apply to such claims.  Judge Huff's first opinion in *Berry*, 2010 WL 8416525 at *4, listed the claims "grounded in fraud" to which

---

[1]  "Persuasive," as that adjective is used in text, means deserving of serious consideration. It should not be read to mean that I am *persuaded* by the *Berry* decision to decide this case in a particular way – at least, not yet.

Rule 9(b) applied: negligent misrepresentation, fraudulent misrepresentation, violations under the California Consumer Legal Relations Act, false advertising, and violation of the California Business and Professional Code. As to those claims, Judge Huff recited Rule 9(b)'s requirement that a person alleging fraud or mistake must "state with particularity the circumstances constituting fraud or mistake." *Id.* at *4. She held that the Berry plaintiff's complaint did not meet that requirement. It is useful to quote her reasoning:

> The Court concludes these general allegations are insufficient under Rule 9(b)'s heightened pleading standards. Plaintiff does not identify with factual specificity the misrepresentations or specific advertisement that he relied on when he entered his email address. He only states vague allegations of the coupon offer. He does not allege what the coupon stated to mislead him to think that it was a free coupon offer. He does not allege what exactly was deceiving about the way the coupon was presented to make him think it was free. He does not allege all the steps he took to sign up for the offer and does not allege what representations or omissions were made to him at each step. Accordingly, the Court grants Defendants' motion to dismiss on these counts that are grounded in fraud.

*Id.* at *5.

As frequently occurs when a district court dismisses a complaint under Rule 9(b) for failure to plead fraud with the requisite specificity, Judge Huff granted the Berry plaintiff "30 days from the date of this order to amend to cure the deficiencies – if he can – in the complaint for these causes of action." *Id.*, at *8. Judge Huff's second opinion, 2011 WL 13756645, reflects at *1 that plaintiff filed a timely amended complaint. That opinion concluded with a dismissal of all plaintiff's claims, including those grounded in fraud. A careful reading of this second opinion shows that Judge Huff did not dismiss the fraud claims because the amended complaint failed to cure the pleading deficiencies of the first. Rather, the fraud claims were dismissed this time because the expanded evidentiary record in the case (including the marketing enrollment screenshots and a deposition of

the minor plaintiff) led the court to conclude that "the explicit and repeated disclosures that Defendants made in their enrollment page suffices to defeat the misrepresentation claims." *Id.* at *4. That is to say: After the amendment of the complaint, and limited and focused discovery, Judge Huff may have thought, though she did not say so explicitly, that the Rule 9(b) pleading deficiencies had been cured, or alternatively, that the better judicial course was to look beyond the pleadings and decide the case on the merits (which, in the event, profited the plaintiff nothing).

The operative complaint at bar suffers from the same Rule 9(b) pleading deficiencies that Judge Huff summarized in *Berry*. Plaintiff's amended complaint begins with sections captioned "Nature of the Case," "Parties," and "Class Action Allegations" which are cast in general and mostly conclusory terms, and do not purport to describe the facts giving rise to *this Plaintiff's* claims against these Defendants. Plaintiff L. S. does not make an appearance upon the stage of the amended complaint until page 9, ¶ 22, the first paragraph in a 21-page section captioned "Statement of Facts." Paragraph 22 alleges in pertinent part: "In late November 2009, Plaintiff went on GameStop.com in order to purchase a video game. Plaintiff's Visa debit card statement for November reflects that purchase." The ensuing ¶¶ 23-30, while ostensibly descriptive of Plaintiff, are cast principally in conclusory terms: *e.g.*, ¶ 23 ("Plaintiff was entirely unaware of who Webloyalty or Shopper discounts are."); ¶ 24 ("Plaintiff did not consent to being charged for any service offered by Webloyalty or Shipper Discounts."); ¶ 27 ("Plaintiff did not intend for GameStop to pass his debit card and other personal information to Webloyalty."); ¶ 28 ("Plaintiff did not consent to GameStop passing his debit card and other personal information to Webloyalty."); and ¶ 29 ("Plaintiff did not authorize Visa to process the improper and fraudulent Webloyalty charge to his account.").

The problem for this sort of allegation in the context of Rule 9(b) analysis is that the

13

allegations omit the early and middle chapters of the story and proceed immediately to the last chapter. What Plaintiff was aware of, what he intended, what he consented to, what he authorized: these are the ultimate questions in the case. Rule 9(b) provides that a fraud plaintiff must "state with particularity the circumstances" that constitute a fraud perpetrated by *these Defendants* upon *this Plaintiff*. It is not sufficient for L. S. simply to state the desired conclusions – "I did not know, I did not intend, I did not consent, I did not authorize" – while omitting a statement of the circumstances justifying those disclaimers. That, after all, is what the case is about: Defendants contend that in light of the enrollment pages' disclosures about the benefits program, and Plaintiff's post-disclosure actions, as a matter of law Plaintiff *did* know, he *did* intend, he *did* consent, he *did* authorize. Plaintiff cannot proceed past "Go" and collect damages for fraud without first complying with Rule 9(b)'s requirement that he state with particularity how he got there. Judge Huff's instructive reasoning in *Berry*, quoted *supra*, admirably summarizes the circumstances that a plaintiff in a case of this nature must state with particularity, and demonstrates why the allegations in the amended complaint at bar are deficient.

In consequence, the Defendants' motion to dismiss Plaintiff's claims sounding in fraud will be granted, for failure to plead fraud with the specificity required by Rule 9(b). Defendants say in their briefs that this requires dismissal of the entire amended complaint, since all Plaintiffs' claims, however captioned, sound in fraud. I will defer decision on that issue, because I have resolved to follow Judge Huff's example in *Berry*. Specifically, in this case I will allow Plaintiff to further amend his complaint, and allow discovery relevant to the questions discussed in this Ruling.

The boundaries of permissible discovery lead seamlessly to the second pending motion in the case, Plaintiff's motion to strike affidavits and exhibits proffered by Defendants. I turn to that

14

motion.

### 2.  *Motion to Strike*

In support of their motion to dismiss Plaintiff's complaint, Defendants Webloyalty and GameStop submit declarations sworn to by Richard Winiarski [Doc. 40-3] and Meghan L. Pipkin [Doc. 53-3].  Winiarski is Vice President of Marketing at Webloyalty.  Pipkin is a Senior Director of Marketing Strategy at that company.  The declarations attach and identify as exhibits replications of the onscreen displays generated by and used with the marketing of Webloyalty's membership benefits program.  These exhibits are virtually identical to those used for the *Berry* program marketing which were presented to Judge Huff and she considered in her decisions.

In the case at bar, Plaintiff moves to strike the Winiarski and Pipkin declarations and their documentary exhibits for a number of reasons, including:

* The documents are in dispute, and are not subject to judicial notice.

* The documents "are not cited in, attached, or integral to plaintiff's Amended Complaint . . . and are  not properly considered on a Motion to Dismiss."

* "The declarations are not made on personal knowledge."

* "The declarations, together with the attached documents, are immaterial."

Doc. 54 at 2.

The first of these objections is well taken.  Neither the existence of these documents, nor their meaning, nor their effect fall within the limited universe of "adjudicative facts" that a court may judicially notice.  *See* F. R. Evid. Rule 201, discussed in Part II.A., *supra*.  This proposition is so apparent that no further discussion is required.

The rest of Plaintiff's asserted bases for striking these declarations and exhibits are entirely

15

lacking in substance.

First, the documents, which purport to demonstrate the enrollment page screenshots used by Defendants to attract Plaintiff, are quintessentially integral to Plaintiff's complaint, which alleges that this very sort of documentation was the instrument of that fraud. It is hard to imagine how documents could be more integral to a complaint than these documents are to this complaint.

Second, the personal knowledge Winiarski and Pipkin have of Webloyalty's operative procedures is sufficient evidence to "support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). In the case at bar, these declarants declare that the attached documents comprise and illustrate the onscreen displays in use by the Defendants at the pertinent times. Perhaps Winiarski takes the analysis a step farther when he says in his declaration at ¶ 5 that one of the documents "is a true and accurate copy" of the billing disclosures "on the Enrollment Page that Plaintiff would have seen prior to his enrollment" in the program "in the actual size they appear when viewed on a 17" computer monitor." Winiarski could have "personal knowledge" of what L.S. actually saw on his computer screen that November 2009 day only if Winiarski was looking over L.S.'s shoulder in the room to which L.S. repaired to place his online orders with the GameSpots of this world. But Wisniarski does not pretend in his declaration to have such particularized knowledge. He simply says, on the basis of adequate personal knowledge, that these are the marketing and enrollment documents in electronic use at the time made pertinent by Plaintiff's complaint. This admissible evidence forms the basis for the inference Defendants contend should be drawn: L. S. actually read, or chose to ignore, the language Defendants rely upon. But that is for a later stage in the litigation. These circumstances provide no basis for striking this evidence.

In addition, the Wisniarski and Pipkin declarations attach as exhibits documents that they

16

declare, again on sufficient knowledge, constitute copies of documents generated and created by activity in Plaintiff's own account.  These is no discernible basis for striking these documents.

Third, Plaintiff protests that "the declarations, together with the attached documents, are immaterial." The discussion *supra* renders it unnecessary to belabor this contention's lack of substance.  What a purported contract says is material to a claim that what it says is fraudulent.

Plaintiff's motion to strike will be denied.

### III.  CONCLUSION

For the foregoing reasons, the Court enters the following Order:

1.  Defendants' Motions to Dismiss the Amended Complaint [Doc. 38] and [Doc. 40], are GRANTED, insofar as the Plaintiff's claims in that pleading are grounded in fraud.

2.  On the contested issue of whether all claims Plaintiff pleads in the Amended Complaint are grounded in fraud, and so must be dismissed in accordance Paragraph 1 of this Order, decision is RESERVED.

3.  In respect of those claims manifestly grounded in fraud, and therefore dismissed by this Ruling and Order, Plaintiff is GRANTED LEAVE TO REPLEAD his Amended Complaint.

4.  Plaintiff's Motion to Strike the Wisniarski and Pipkin declarations and their attached exhibits [Doc. 54] is DENIED.

5.  Within the context of Defendants' Motion to Dismiss the Amended Complaint, the parties are GRANTED LEAVE TO CONDUCT LIMITED DISCOVERY into the issues identified by this Ruling.  If counsel sensibly follow the course steered by Judge Huff in *Berry,* that discovery will include the depositions of Plaintiff, Wisniarski and Pipkin, as well as such additional evidentiary

17

sources as may occur to counsel, provided that they are relevant to the issues identified in the Ruling.

6.   Any further amended complaint should be filed by **August 15, 2014**, and limited discovery completed by **September 26, 2014**, unless the Court enlarges those times for good cause shown.

7.   There will then be an additional round of briefing by counsel, following a schedule to be set by subsequent Order.

It is SO ORDERED.

Dated:   New Haven, Connecticut
           July 17, 2014


                                                    /s/Charles S. Haight, Jr.
                                                    CHARLES S. HAIGHT, JR.
                                                    Senior United States District Judge