# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| L.S., a minor, by P.S., his parent and next friend, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br>  v.<br><br>WEBLOYALTY.COM, INC., GAMESTOP CORPORATION, and VISA INC.,<br><br>        Defendants. | Civil Action No.<br>3:10-CV-1372 (CSH)<br><br><br><br>OCTOBER 26, 2018 |

### OMNIBUS RULING ON DEFENDANT WEBLOYALTY.COM, INC.'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS WEBLOYALTY.COM, INC. AND GAMESTOP CORPORATION'S MOTION FOR JUDGMENT ON THE PLEADINGS

**HAIGHT, Senior District Judge:**

This case is on remand from the Second Circuit, which affirmed in part and vacated in part this Court's opinion in *L.S. v. Webloyalty.com, Inc.*, 138 F. Supp. 3d 164 (D. Conn. 2015). *L.S. v. Webloyalty.com, Inc.*, 673 F. App'x 100 (2d Cir. 2016). Specifically, the Second Circuit affirmed dismissal of a number of Plaintiff L.S.'s claims, but vacated this Court's dismissal of Plaintiff's (1) Electronic Funds Transfer Act ("EFTA") claim against Webloyalty.com, Inc. ("Webloyalty") and (2) Connecticut Unfair Trade Practices Act ("CUTPA") claim against Defendants Webloyalty and GameStop Corporation ("GameStop"). *Id.* These are the only surviving claims from Plaintiff's second amended complaint, [Doc. 91]. Webloyalty now moves for summary judgment on the EFTA claim, [Doc. 147], and Webloyalty and GameStop move for judgment on the pleadings on the CUTPA claim, [Doc. 146].

1

This Ruling resolves both motions. They are considered in that order.

## I. PLAINTIFF'S EFTA CLAIM AGAINST WEBLOYALTY

### A. Background

The following undisputed or indisputable facts are derived from the parties' submissions pursuant to Local Rule 56(a) and the affidavits and exhibits attached to the parties' submissions. This section also borrows from prior rulings where appropriate. All reasonable inferences have been drawn in Plaintiff L.S.'s favor.

In November 2009, Plaintiff purchased a video game from Defendant GameStop's website. Doc. 147-5 ("Def. 56(a) Stmt.") ¶ 1; Doc. 152-17 ("Pl. 56(a) Stmt.") ¶ 1. A banner for Defendant Webloyalty appeared on the wepbage after Plaintiff completed his online purchase, but the banner included a "Continue" button that led Plaintiff to believe he was still in the process of completing his GameStop purchase. Def. 56(a) Stmt. ¶ 2; Pl. 56(a) Stmt. ¶ 3. Clicking on the banner led Plaintiff to Webloyalty's enrollment page ("Enrollment Page"). Def. 56(a) Stmt. ¶ 3; Pl. 56(a) Stmt. ¶ 3. The Enrollment Page "advertised a $20 GameStop coupon and included references to GameStop throughout its description of Webloyalty's membership program. The page at issue required [Plaintiff] to enter the last four digits of his debit card number and to enter and verify his email. He apparently did so[.]" *L.S. v. Webloyalty.com, Inc.*, 673 F. App'x 100, 103 (2d Cir. 2016).

Webloyalty asserts that Plaintiff was then shortly presented with an acknowledgment page ("Acknowledgment Page"), [Doc. 147-3 ("Ack. Page")], and an email ("Join Email"), [Doc. 147-4 ("Join Email")], to confirm his enrollment. Def. 56(a) Stmt. ¶¶ 4, 5. Both the Acknowledgment Page and Join Email indicate to an enrollee that he was being given a thirty-day free trial, but that he would be charged $12 per month after the trial unless he cancelled his program membership.

Ack. Page; Join Email. Neither the Acknowledgment Page nor Join Email is an exact reproduction of the Enrollment Page. Doc. 154 ¶¶ 2, 3.

Plaintiff asserts Webloyalty violated EFTA by not providing a copy of the electronic fund transfer authorization, i.e., the Enrollment Page. Doc. 152 ("Pl. Mem.") at 14. Webloyalty contends that the Acknowledgment Page and Join Email satisfy the copy requirement under EFTA. Doc. 147-1 ("Def. Mem.") at 10. This Court had considered the parties' arguments before in this case, ruling in Webloyalty's favor on its motion to dismiss Plaintiff's entire complaint. *L.S. v. Webloyalty.com, Inc.*, 138 F. Supp. 3d 164, 182 (D. Conn. 2015). However, the Second Circuit vacated this Court's grant of the motion to dismiss on this EFTA claim on the basis that this Court considered the Join Email in its decision even though it "was not referenced in [Plaintiff's] complaint, not relied on in the course of the complaint's allegations, and [Plaintiff] contends that he never saw it." *L.S.*, 673 F. App'x at 107.

In those circumstances, the Second Circuit faulted this Court for considering the Join Email in deciding the motion then before me, which was a motion to dismiss. "Before a district court may evaluate the legal effect of documents not integral to the complaint," the Court of Appeals said disapprovingly, "it is obligated to convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56." *Id.* (citation and internal quotation marks omitted). That is the generally worded mandate of Rule 12(d). If on the particular facts of this case this Court believed at that earlier time that "the matter was ripe for summary judgment" and "discovery on the relevant claims was properly closed," further proceedings under Rule 12(d) were not required and, in the Second Circuit's view, this Court "could have exercised its authority to convert and then evaluated whether

3

Webloyalty's email sufficed to meet with its statutory obligations in light of all the undisputed facts." *Id*. "Since that was not done," the Second Circuit says in conclusion, "we vacate as to the grant of the motion to dismiss on appellant's second claim that Webloyalty violated EFTA by failing to provide him with a copy of his funds transfer authorization." *Id.*

While I perforce acknowledge my Rule 12(d) transgression, I think it fair to say that the Second Circuit's reversal on the point was procedural in nature, not substantive. That much is apparent from the Second Circuit's observation that this Court had held the email's language satisfied Webloyalty's EFTA requirements, to which the Court of Appeals added: "We express no view as to the merits of that determination, but merely reiterate" that Rule 12(d) required this Court to convert the motion from one to dismiss to a motion for summary judgment. *Id.*

On remand, the legal viability of Plaintiff's EFTA claim against Webloyalty is again challenged by that Defendant, this time in the form of a motion for summary judgment under Rule 56.

**B.     Summary Judgment: Standard of Review**

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party must "demonstrate the absence of any material factual issue genuinely in dispute" to be entitled to summary judgment. *Am. Int'l Grp., Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir. 1981) (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975)) (internal quotation marks omitted). All inferences and ambiguities must be viewed in the light most favorable to the nonmoving party. *Rogoz v. City of Hartford*, 796 F.3d 236, 245–46 (2d Cir. 2015).

"In order to defeat a summary judgment motion that is properly supported by affidavits, depositions, and documents as envisioned by [Rule 56], the opposing party is required to come forward with materials envisioned by the Rule, setting forth specific facts showing that there is a genuine issue of material fact to be tried." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). The non-moving party cannot "defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Id.* (citations omitted). In other words, "[w]hen the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party "must present specific evidence demonstrating a genuine dispute." *Gannon v. UPS*, 529 F. App'x 102, 103 (2d Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks and citation omitted); *see also Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

## C. EFTA Claim: Discussion

Webloyalty makes no new arguments in its motion for partial summary judgment on Plaintiff's surviving EFTA claim. Def. Mem. at 9; *see also* Doc. 153 ("Def. Reply Mem."). Thus, the Court will first address the evidentiary issue raised by the Second Circuit and then delve into

5

parties' arguments on the merits of Plaintiff's EFTA claim.

### 1. *Authenticity of the Join Email*

The Second Circuit found that this Court could have first converted Webloyalty's previous motion to dismiss into one for partial summary judgment and then "evaluated whether Webloyalty's email sufficed to meet with its statutory obligations in light of all the undisputed facts." *L.S. v. Webloyalty.com, Inc.*, 673 F. App'x 100, 107 (2d Cir. 2016). Webloyalty has now moved for summary judgment on Plaintiff's surviving EFTA claim, and so it is necessary to address Plaintiff's authentication concern since Plaintiff contends that Webloyalty did not lay a proper testimonial foundation to introduce the Enrollment Page,[1] Acknowledgment Page, and Join Email. *See* Pl. Mem. at 26.

The Court stands by its prior findings that the Join Email, as well as the Acknowledgment Page, are authentic and admissible. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The proponent meets this requirement "if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *United States v. Ruggiero*, 928 F.2d 1289, 1303 (2d Cir. 1991) (internal quotation marks and citation omitted).

---

[1] Although Plaintiff contends that the Enrollment Page is among the documents for which Megan Pipkin's testimony fails to establish an evidentiary basis, [Pl. Mem. At 26], Plaintiff's argument focuses only on the Acknowledgment Page and Join Email, likely because their authenticity is most pertinent to this claim. *See* Pl. Mem. at 26–29. The Court's reasoning will similarly home in on the Acknowledgment Page and Join Email but could equally apply to the Enrollment Page.

Plaintiff argues that the testimony of Webloyalty employee Meghan Pipkin[2] is insufficient to meet the standard set by Rule 901(a) of the Federal Rules of Evidence for the Acknowledgment Page and Join Email because she did not testify on personal knowledge. Pl. Mem. at 26. The Court has addressed this argument on two previous occasions.

First, the Court denied Plaintiff's motion to strike sworn declarations by Pipkin and Webloyalty's then-employee Richard Winiarski. *L.S. v. Webloyalty.com, Inc.*, No. 3:10-cv-1372, 2014 WL 3547640, at *8–*9 (D. Conn. July 17, 2014). "[T]he personal knowledge Winiarski and Pipkin have of Webloyalty's operative procedures is sufficient evidence to 'support a finding that the item is what the proponent claims it is.' In the case at bar, these declarants declare that the attached documents comprise and illustrate the onscreen displays in use by the Defendants at the pertinent times." *Id.* at *8 (internal citation omitted). "[T]he Wisniarski and Pipkin declarations attach[ed] as exhibits documents that they declare, again on sufficient knowledge, constitute copies of documents generated and created by activity in Plaintiff's own account." *Id.* at *9.

Second, the Court addressed this issue in its dismissal of Plaintiff's second amended complaint when Plaintiff again raised authentication concerns. *L.S. v. Webloyalty.com, Inc.*, 138 F. Supp. 3d 164, 171 n.5 (D. Conn. 2015) ("I am satisfied now, as I was in preparing the July 17 Ruling, that the documents in question are relevant . . . and the accompanying declarations are sufficient to 'support a finding that the item is what the proponent claims it is.'" (quoting Fed. R. Evid. 901(a))). Plaintiff has not demonstrated how the Court erred, and so the Court sees no reason

---

[2] Webloyalty incorporates the Acknowledgment Page and Join Email as exhibits to its memorandum by attesting they are true and accurate copies of documents authenticated by Pipkin in her declaration that was previously filed with the court, [Doc. 53-3]. Def. Mem. at 6 n.3, 7 n.4.

to depart from its prior rulings. Webloyalty has laid the proper foundation to admit the Acknowledgment Page and Join Email.

Plaintiff also makes three other arguments against admitting the Acknowledgment Page and Join Email. First is that Webloyalty's computer systems are "prone to errors" so "the Court cannot infer that the Acknowledgment Page filled in correctly, or at all, as to the Plaintiff after his 'enrollment' by Webloyalty into Shopper Discounts & Rewards." Pl. Mem. at 27. While it is true that the Acknowledgment Page may have not filled its blank fields with correct information, such as addressing Plaintiff as "FNAME" instead of his actual name, the Court fails to see how such errors undercut the authenticity of the Acknowledgment Page. These errors merely show that Plaintiff may not have received a properly personalized version of the Acknowledgment Page, not that he never received the Acknowledgment Page at all. Again, the Court is satisfied by Webloyalty's previously filed declarations that the Acknowledgment Page is an accurate representation of what the Plaintiff saw after enrollment.

Second, Plaintiff further argues that the Join Email is inadmissible because it was sent by an "unknown sender," i.e., not by Webloyalty, and is thus immaterial and irrelevant because EFTA requires the "recipient of the authorization," i.e., Webloyalty, to send a copy of the authorization. Pl. Mem. at 28. This assertion stretches the truth. The deposition of Pipkin identified the "SDR" in the email sender's name, "Customer Service – IC SDR," as an abbreviation for "shopping discounts and rewards." Doc. 147-8 at 56:7–15. Pipkin was unable to state what "IC" meant, but she nonetheless identified the Join Email as Webloyalty's welcome kit that is sent to enrollees. *Id.* at 55:11–56:15. It may be true that an email recipient may not easily be able to identify the sender, but Webloyalty has clearly established that it was the entity that had sent the Join Email through its

8

various declarations. Whether or not the Join Email met EFTA's requirements by virtue of having an obscure sender name is a question that goes to the merits of Plaintiff's EFTA claim, not to the Join Email's admissibility.

Third, Plaintiff also makes a related argument that summary judgment ought not be granted because further discovery is needed to determine (1) if the Acknowledgment Page correctly filled with Plaintiff's information and (2) if Webloyalty deliberately schemed to evade EFTA by "keeping the purported contract away from the consumer." Pl. Mem. at 24–26. As to the former, the Court is unclear how it would aid Plaintiff's EFTA claim. As to the latter, this theory appears to be highly speculative. The weight of the evidence, including Plaintiff's testimony that he does not remember seeing Webloyalty pages, [Doc. 152-3 at 58:19–65:17], and computer-automated nature of the enrollment process, suggests that consumers regularly receive acknowledgment pages and join emails from Webloyalty—not that Webloyalty never sends them at all. There appears to be no basis for further discovery on the EFTA claim, even if Plaintiff had more clearly specified how discovery will be reasonably expected to create a genuine issue of fact. *See Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151 (2016).

The Court was and is still satisfied as to the admissibility of the Acknowledgment Page and Join Email. Pipkin's declaration demonstrates sufficient personal knowledge to authenticate the documents, and any errors or uncertainties contained within the documents do not detract from their admissibility. Accordingly, the Court moves on to determine whether or not these documents satisfy EFTA requirements.

### 2. *Merits of the EFTA Claim*

As noted *supra*, the Second Circuit explicitly stated that it "express[ed] no view as to the

9

merits of [this Court's] determination" on Plaintiff's EFTA claim when examining this Court's dismissal of Plaintiff's second amended complaint. *L.S. v. Webloyalty.com, Inc.*, 673 F. App'x 100, 107 (2d Cir. 2016). In dismissing his complaint, this Court had found that Plaintiff interpreted EFTA too narrowly and Webloyalty fulfilled EFTA's copy requirements by sending the Acknowledgment Page and Join Email. In this analysis of Plaintiff's EFTA claim, the Court still finds Plaintiff's interpretation unpersuasive and Webloyalty's actions adequate.

The statute provides: "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e (2012). The regulations promulgated pursuant to the statute's authority state this requirement slightly differently: "Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer." 12 C.F.R. § 205.10(b) (2018).

The parties dispute what a "copy" entails under EFTA. When first considering that question, this Court concluded:

> [T]he EFTA does not mandate Plaintiff's narrow construction of § 1693e(a). The Act's declaration of congressional purposes concludes with the sentence: "The primary objective of this subchapter, however, is the provision of individual consumer rights." 15 U.S.C. § 1693(b). The discernible "individual consumer right" protected by § 1693e(a) is a consumer's right to receive a contemporaneous copy of the terms and conditions of a preauthorized electronic fund transfer he has authorized from his account. That is precisely what Webloyalty accomplished in the displayed Acknowledgment Page and the Join Email (the more significant communication which it created as a document to which Plaintiff could refer for future reference). The statutory regulations promulgated by the Federal Reserve Board state with respect to § 1693e(a) that a payee such as

> Webloyalty "may comply with the requirements of this section in various ways." Plaintiff argues that this language, intended to broaden forms of statutory compliance, should itself be narrowly construed as to preclude the ways employed by Webloyalty in this case. The argument is unappealing and I decline to accept it.
>
> It would be an entirely different case if Webloyalty had contented itself with Plaintiff's entries on the Enrollment Page as a preauthorization of electronic fund transfers and embarked upon monthly transfers, with no further communication to Plaintiff. However, on the same day as the Plaintiff's online acceptance of the Enrollment Plan, Webloyalty displayed the Acknowledgment Page and e-mailed Plaintiff the Join Email notice. These additional and contemporaneous communications fully revealed the terms, conditions, and monthly debit card charges under the program in question. I conclude that in these circumstances, Webloyalty complied with the requirements of EFTA, 15 U.S.C. § 1693e(a).

*L.S. v. Webloyalty.com, Inc.*, 138 F. Supp. 3d 164, 182 (D. Conn. 2015). A renewed look into statutory interpretation and other guidance reinforces the soundness of the Court's 2015 reasoning.

Statutory interpretation begins with the language of the statute, first determining "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (internal quotation marks and citation omitted). Plain meaning is normally controlling, unless it is one of the rare cases in which "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (citation and internal quotation marks omitted); *see also Hayden v. Pataki*, 449 F.3d 305, 322–23 (2d Cir. 2006) (declining to adopt literal interpretation where a "wealth of persuasive evidence" of Congressional intent existed). "In such cases, the intention of the drafters, rather than the strict language, controls." *Ron Pair Enters.*, 489 U.S. at 242.

Plaintiff still advocates for a strict meaning of "copy" and "authorization," such that he claims

11

the EFTA requires an exact replica of the entire page granting Webloyalty permission to conduct electronic fund transfers, i.e., the Enrollment Page. Pl. Mem. at 19, 22–23. Such a requirement goes too far beyond what is needed to protect individual consumer rights, which is EFTA's objective. 15 U.S.C. § 1693(b) (2012); *see also L.S.*, 138 F. Supp. 3d at 182. Furnishment of the terms and conditions, not the inclusion of irrelevant references to third-parties or coupon offers such as those that were present on the Enrollment page, is what will aid consumers in preventing unauthorized fund transfers. *See* Pl. Mem. at 23. Indeed, adopting Plaintiff's narrow interpretation would mean that providing an exact facsimile of an authorization page littered with advertisements and confusing language would fulfill EFTA copy requirements, whereas a succinct copy of the terms and conditions of authorization in a clean follow-up email—which would likely provide greater protection of consumer rights via clarity of presentation—would not.

There exists persuasive precedent supporting a broader interpretation of EFTA copy requirements than what Plaintiff suggests. The Consumer Financial Protection Bureau clarified that EFTA requires disclosure of the terms and conditions: "Regulation E requires persons that obtain authorizations for preauthorized [electronic fund transfers] to provide a copy of the terms of the authorization must be provided to the consumer . . . . Two of the most significant terms of an authorization are the timing and amount of the recurring transfers from the consumer's account." Consumer Financial Protection Bureau, *Compliance Bulletin 2015-06, Requirements for Consumer Authorizations for Preauthorized Electronic Fund Transfers* 4 (Nov. 23, 2015). In addition, Plaintiff's interpretation implies only one way of complying. However, the Federal Reserve Board stated that parties "may comply with the requirements of [15 U.S.C. § 1693e(a)] in various ways." 12 C.F.R. part 205, Supp. I, § 10(b), cmt. 4. Although not binding, other courts' rulings also support

a broader reading. *See Blatt v. Capital One Auto Fin., Inc.*, 237 F. Supp. 3d 699 (M.D. Tenn. 2017) (holding paper copy of consumer's telephonic authorization sufficient under EFTA); *FTC v. Health Formulas, LLC*, No. 2:14-cv-01649-RFB-GWF, 2015 WL 2130504, at *15 (D. Nev. May 6, 2015) (finding company did not meet EFTA requirements because it did not send a confirmation email or other method for the authorization); *Chavez v. Bank of Am. Corp.*, No. C-10-0653 JCS, 2012 WL 1594272 (N.D. Cal. May 4, 2012) (holding paper mailing of consumer's telephonic authorization sufficient under EFTA); *Berry v. Webloyalty.com, Inc.*, No. 10-CV-1358-H (CAB), 2011 WL 1375665, at *7–*8 (S.D. Cal. Apr. 11, 2011), *vacated*, 517 F. App'x 581 (9th Cir. 2013) ("Both the acknowledgment and join email reiterated Plaintiff Berry's membership in the program, the terms and conditions of the program, and that $12 would be charged to the credit/debit card entered.").

The Court concludes, as it did previously, that EFTA requires not an exact reproduction of the entire authorization page with coupons and all, but rather, "a contemporaneous copy of the terms and conditions of a preauthorized electronic fund transfer he has authorized from his account." *L.S. v. Webloyalty.com, Inc.*, 138 F. Supp 3d 164, 182 (D. Conn. 2015). The Court now turns to determining whether the Acknowledgment Page and Join Email meet the requirements set out by EFTA. The Acknowledgment Page and Join Email each state the end date of the trial period, when charges would begin, the card being charged, the billing name, the monthly nature of recurring charges, the amount being charged, and how to cancel. *See* Ack. Page; Join Email. Plaintiff does not assert that Webloyalty omits these important terms, which aid consumers in identifying recurring charges and knowing how to stop such charges. Rather, Plaintiff quibbles that the Acknowledgment Page and Join Email do not suffice because "[a]ll references to Gamestop and the $20 coupon are excised; words are changed, [and] the layout is entirely different." Pl. Mem. at 22–23. It is unclear

to the Court how these differences detract from EFTA's objective in protecting consumers.

As for Plaintiff's related contention that the Join Email does not meet EFTA requirements because it was sent by "Customer Service – IC SDR," not "Shopper Discounts & Rewards," [*id.* at 23], this difference also seems superficial. Plaintiff provides no precedent for his implication that EFTA has requirements regulating email sender names. The Court is satisfied that, contrary to Plaintiff's assertions, Webloyalty has shown that "the person who received the authorization" provided a copy of the authorization.[3] *See id.* at 23. In other words, Webloyalty, who received Plaintiff's authorization, sent the Join Email containing the terms and conditions of authorization to Plaintiff, as required under EFTA.

### 3. *Incorporation by Reference*

Plaintiff also makes a procedural point: Webloyalty's motion for summary judgment improperly "incorporates arguments from other briefs by reference." Pl. Mem. at 24. Plaintiff cites to other courts' decisions, which have only persuasive authority, and supposedly Rule 47(b) of this Court's local rules. However, Rule 47 concerns juror selections, not motions.[4] D. Conn. L. Civ. R. 47. While this Court does prefer the convenience of having all materials relevant to a summary judgment motion together in a more limited set of documents, it was only minimally inconvenient to the Court to review earlier submissions. Because the Second Circuit vacated this Court's ruling on the EFTA copy requirements on a procedural issue, Webloyalty made no new substantive

---

[3] The deposition of Pipkin not only identified the "SDR" in the Join Email sender's name, but also identified the Join Email as Defendant's welcome kit that is sent to enrollees. Doc. 147-8 at 55:11–56:15.

[4] Rule 47 of the Local Rules of Criminal Procedure governs motions, but this is not a criminal case.

arguments for this motion from the ones made in his earlier motion to dismiss Plaintiff's second amended complaint. *Compare* Doc. 94-1 *and* Def. Mem.

Even in light most favorable to Plaintiff, Plaintiff's EFTA claim must be rejected and Webloyalty granted summary judgment on that claim. Plaintiff's strict reading of EFTA's copy requirements do not further the objectives of the statute and cut against prevailing interpretations. Webloyalty, through the Acknowledgment Page and Join Email, met EFTA's requirements by providing a copy of membership terms and other relevant information. At this point, the Court will note that it could be arguable that these documents were designed so that a customer would be less likely to read these important terms and conditions. On the Acknowledgment Page, confirmation details of membership are located at the bottom of the page—after much text advertising the $20 GameStop coupon and other features of Webloyalty membership. Ack. Page. On the Join Email, this information is similarly located at the bottom, beginning instead with membership offers that a quick reader might mistake as unimportant spam email. Join Email. This is not to mention the supposedly unfamiliar email sender name. However, arguments that the Acknowledgment Page and Join Email, although meeting EFTA's copy requirements, are still unfair and deceptive are best adjudicated outside of the EFTA claim.

For the foregoing reasons, the Court GRANTS Webloyalty's motion for partial summary judgment on Plaintiff's EFTA claim. Judgment will enter dismissing that claim. The Court now turns to Plaintiff's CUTPA claim against Defendants Webloyalty and GameStop.

## II. PLAINTIFF'S CUTPA CLAIMS AGAINST WEBLOYALTY AND GAMESTOP

By granting Webloyalty's motion for summary judgment on the EFTA claim, this Court dismisses Plaintiff's remaining federal claim. Only the CUTPA claim now survives. Because

CUTPA is a state statute, this Court can only rule on the CUTPA claim if it chooses to exercise supplemental jurisdiction.

The general rule regarding supplemental jurisdiction is that "if the federal claims are dismissed before trial, even thought not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also* 28 U.S.C. § 1367(c)(4) (2012) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) [i.e., a state law claim] if the district court has dismissed all claims over which it has original jurisdiction."). This power to decline supplemental jurisdiction is permissive, not mandatory. *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305–06 (2d Cir. 2003) (comparing cases where the Second Circuit affirmed or denied district courts' exercise of supplemental jurisdiction over state law claims after federal claims were dismissed). Where the Second Circuit has upheld district courts' decisions to retain supplemental jurisdiction, federal law is implicated or the case has reached an advanced stage of litigation. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1191–92 (2d Cir. 1996) (finding no abuse of discretion in exercise of supplemental jurisdiction where federal claim dismissed days before scheduled start of trial); *Raucci v. Town of Rotterdam*, 902 F.2d 1050, 1055 (2d Cir. 1990) (affirming exercise of supplemental jurisdiction where discovery completed, three dispositive motions decided, and state law claims concerned settled principles); *Baylis v. Marriot Corp.*, 843 F.2d 658, 665 (2d Cir. 1988) ("One factor that may sometimes favor retaining pendent jurisdiction is when a state claim is closely tied to questions of federal policy and where the federal doctrine of preemption may be implicated.").

However, the Second Circuit generally disfavors exercising such jurisdiction. *Valencia ex rel. Franco*, 316 F.3d at 306 (citing *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001);

*Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56, 64 (2d Cir. 2001); *Seabrook v. Jacobson*, 153 F.3d 70, 71–73 (2d Cir. 1998); *Fay v. South Colonie Central School District*, 802 F.2d 21, 34 (2d Cir. 1986)), *overruled on other grounds by Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768 (2d Cir. 2002). There are good reasons to do so. The Supreme Court has counseled that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Even when neither party asks the Court to exercise supplemental jurisdiction, the default rule is that state law claims should be dismissed if all federal claims are dismissed. *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 405–06 (2d Cir. 2017) (Calabresi, J., concurring) ("A district court judge would be well-advised, if the propriety of exercising supplemental jurisdiction is noticed early enough in a case, to say, 'I decline to decide the state-law issues, however simple they may be.'").

On one hand, one could argue that this Court should rule on the surviving claim because it implicates federal policy. CUTPA is based on the Federal Trade Commission Act, and the state statute explicitly instructed turning to federal interpretations for guidance: "It is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C [§] 45(a)(1)), as from time to time amended." Conn. Gen. Stat. § 42-110b(b) (2017). However, the Court finds little left to do in the federal arena. Much of Plaintiff's CUTPA claim centers on the "data pass" practice, which has since been banned by Congress. *See* 15 U.S.C. §§ 8401–8405 (2012). As for his other allegations, this would require interpreting what constitutes "unfair or deceptive acts or practices" under

Connecticut state law. Moreover, although the case was first filed ten years ago in this Court, discovery is still incomplete, and trial would be many months away. A state court ought to be able to quickly familiarize itself with the facts of this case to be able to rule on the only claim left. Considerations of "judicial economy, convenience, fairness, and comity" favor state adjudication of this state claim. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

The potential uncertainty regarding the viability of this case as a class action in federal court also suggests that the Court should choose not to exercise supplemental jurisdiction. Plaintiff also asserts class action subject-matter jurisdiction based on 28 U.S.C. § 1332(d)(2). Doc. 91 ¶ 19. The Court will not delve deeply into this issue as parties have not had an opportunity to argue class certification, but the Court notes that there may be a conflict emanating from CUTPA's class action limitations if this claim were to remain in federal court. *See* Conn. Gen. Stat. § 42-11g (2017) ("Persons entitled to bring an action under subsection (a) of this section may, pursuant to rules established by the judges of the Superior Court, bring a class action on behalf of themselves and other persons similarly situated who are *residents of this state or injured in this state* to recover damages.") (emphasis added); *see also Fraiser v. Stanley Black & Decker, Inc.*, 109 F. Supp. 3d 498, 503–06 (D. Conn. 2015) (holding plaintiff could not bring a nationwide class action under CUTPA); *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 114–19 (D. Conn 2014), *aff'd by Williams v. Affinion Grp., LLC*, 889 F.3d 116 (2d Cir. 2018) ("[T]his Court finds that the class action restriction in CUTPA reflects a substantive policy judgment by the Connecticut legislature. Because the restriction is substantive rather than procedural, Rule 23 [of the Federal Rules of Civil Procedure] cannot supersede it.").

The Court declines to exercise supplemental jurisdiction over Plaintiff's CUTPA claims.

Accordingly, the CUPTA claims will be dismissed without prejudice, for lack of subject matter jurisdiction.

### III. CONCLUSION

For the foregoing reasons, Defendant Webloyalty's Motion for Partial Summary Judgment on Plaintiff's EFTA claim, [Doc. 147], is GRANTED.

Defendants Webloyalty and GameStop's Motion for Judgment on the Pleadings on Plaintiff's CUTPA claim, [Doc. 146], is DENIED. This claim is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

As a result, there are no pending claims in this action. The Clerk is directed to close the file.

It is SO ORDERED.

Dated: New Haven, Connecticut
October 26, 2018

*/s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge