**MANDATE**

# UNITED STATES COURT OF APPEALS
# FOR THE
# SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of March, two thousand twenty.

Before:  Dennis Jacobs,
 Susan L. Carney,
 Michael H. Park,
  *Circuit Judges.*

_____

L.S., a minor, by P.S., his parent and next friend, on behalf of himself and all others similarly situated,

 Plaintiff-Appellant,

v.

Webloyalty.com, Inc., GameStop Corporation,

 Defendants-Appellees,

Amazon.Com, Inc., Visa Inc.,

 Defendants.
_____

**JUDGMENT**

Docket No. 18-3639

The appeal in the above captioned case from a judgment of the United States District Court for the District of Connecticut was argued on the district court's record and the parties' briefs. Upon consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the district court's grant of summary judgment on L.S.'s EFTA claim is AFFIRMED. The district court's judgment dismissing L.S.'s CUTPA claims against Webloyalty and Gamestop is VACATED, and the case is REMANDED to the district court for further proceedings consistent with this Court's opinion.

 For the Court:
 Catherine O'Hagan Wolfe,
 Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

MANDATE ISSUED ON 05/04/2020

18-3639
L.S. v. Webloyalty, Inc., GameStop Corporation

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2019

No. 18-3639

L.S.,

*Appellant*,

v.

WEBLOYALTY.COM, INC., GAMESTOP CORPORATION,

*Defendants-Appellees*,

AMAZON.COM, INC., VISA INC.,

*Defendants.*

ARGUED: DECEMBER 2, 2019
DECIDED: MARCH 20, 2020

Before:    JACOBS, CARNEY, PARK, Circuit Judges.

In this putative consumer class action, plaintiff L.S. appeals from the dismissal on summary judgment of his claim under the Electronic Funds Transfer Act ("EFTA") alleging that defendant Webloyalty.com, Inc.

1

("Webloyalty") failed to provide L.S. with a copy of the written authorization he gave online for recurring monthly charges to his debit card. We agree with the district court that Webloyalty satisfied its obligation under EFTA by providing L.S. with an email containing the relevant terms and conditions of that authorization. On a separate claim arising under state law, the district court erroneously dismissed the claim for lack of subject matter jurisdiction.

Therefore, we AFFIRM in part and in part VACATE and REMAND.

_____

DAVID C. KATZ, WeissLaw LLP, New York, NY, for Plaintiff-Appellant L.S.

MARK C. FLEMING, (John J. Butts, Timothy J. Perla, Jessica R. Lisak, Paloma Naderi, on the brief), Wilmer Cutler Pickering Hale and Dorr LLP, for Defendants-Appellees Webloyalty.com, Inc. and GameStop Corporation.

DENNIS JACOBS, Circuit Judge:

In this putative consumer class action, plaintiff L.S. appeals from a grant of summary judgment in the District Court for the District of Connecticut (Haight, J.) dismissing claims against Webloyalty.com, Inc. ("Webloyalty") and Gamestop Corporation ("Gamestop," and together with Webloyalty, "Defendants") under

2

the Connecticut Unfair Trade Practices Act ("CUTPA") and the Electronic Funds Transfer Act ("EFTA").  The parties agree that the district court improperly dismissed L.S.'s CUTPA claims for lack of subject matter jurisdiction.  Therefore, the only contested issue is whether the district court properly granted summary judgment on L.S.'s EFTA claim against Webloyalty.

L.S. contends that Webloyalty failed to provide him with a "copy" of his authorization of recurring monthly charges to his bank account in violation of 15 U.S.C. § 1693e(a).  Webloyalty argues that it satisfied EFTA's "copy of such authorization" requirement by sending a confirmation email containing the material terms and conditions of the authorized electronic fund transfers. Because we agree with the district court that L.S.'s cramped interpretation of EFTA is inconsistent with the common-sense meaning, context, and statutory purpose of the "copy" requirement, we hold that: (1) EFTA did not require Webloyalty to provide L.S. with a duplicate of the webpage on which he provided authorization for recurring fund transfers; and (2) Webloyalty's email to L.S. was sufficient.

Accordingly, we AFFIRM the district court's grant of summary judgment in favor of Webloyalty on L.S.'s EFTA claim.  Because the district court

improperly dismissed L.S.'s CUTPA claims against Defendants for lack of subject matter jurisdiction, we VACATE the judgment of dismissal, and REMAND for further proceedings.

## BACKGROUND

This is L.S.'s second appeal in this case. See L.S. v. Webloyalty.com, Inc., 673 F. App'x 100 (2d Cir. 2016) ("Webloyalty I"). Our prior summary order included a summary of the essential facts underlying L.S.'s putative consumer class action and we reproduce that text here (lightly revised):

> The case turns on a single transaction in which L.S., a minor, was allegedly deceived into enrolling in a fee-based monthly discount club operated by Webloyalty. In late 2009, he purchased a video game from the website GameStop.com. In the course of executing his purchase, L.S. alleges that he unwittingly registered for Webloyalty's "Shopper Discounts" program by entering his personal information on a webpage integrated into the GameStop check-out process. The Webloyalty enrollment page (the "Enrollment Page") advertised a $20 GameStop coupon, included references to GameStop throughout its description of Webloyalty's membership program, and required him to enter the last four digits of his debit card number and to enter and verify his email address. He apparently did so, and GameStop thereafter transferred appellant's full billing information on to Webloyalty.
>
> After a thirty-day "free trial" period elapsed, Webloyalty debited the first of what would be several $12 monthly membership fees from appellant's account. "Shopper Discounts" was noted as the payee.

1  These debits continued through August 2010, when appellant filed
2  this suit.

Webloyalty I, 673 F. App'x at 103.   L.S.'s lawsuit alleged: (1) fraud (against

Webloyalty and Gamestop); (2) unfair or deceptive trade practices in violation of

CUTPA (against Webloyalty, Gamestop and Visa); and (3) violations of EFTA

(against Webloyalty and Visa).   Id.

Defendants moved to dismiss all claims against them, and the district

court granted the motion in full.   On appeal, this Court affirmed the dismissal of

L.S.'s fraud claims but remanded in part for further proceedings on certain

CUTPA and EFTA claims.   Id. at 107.   L.S.'s complaint had alleged two EFTA

claims against Webloyalty, which were treated differently.   We ruled that the

EFTA claim alleging that Webloyalty received unauthorized electronic fund

transfers in violation of 15 U.S.C. § 1693e(a) was properly dismissed because L.S.

"clearly gave written authorization" for the fund transfers when he digitally

entered his personal information, including his name and four digits of his debit

card number, on the Enrollment Page.   Id. at 106.

However, with respect to the EFTA claim alleging that Webloyalty failed

to provide him with a "copy of such authorization," we ruled that the district

5

court improperly rested its decision on evidence outside the scope of L.S.'s complaint:

> In defending against appellant's EFTA copy requirement claim, [Defendants] introduced an email describing the benefits of Webloyalty membership and including, in a footer, details about the debits they argued that [L.S.] had authorized. However, this email was not referenced in [L.S.'s] complaint, not relied on in the course of the complaint's allegations, and [L.S.] contends that he never saw it. To the extent that the district court relied on the affidavits submitted by Webloyalty employees authenticating the email to justify a ruling on the email's legal effect, this was a determination properly made on summary judgment, not in response to a motion to dismiss. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). . . .
>
> The fact that the district court had already allowed some discovery here does not change this analysis. To the contrary, if, in the district court's assessment, discovery on the relevant claims was properly closed, it could have exercised its authority to convert and then evaluated whether Webloyalty's email sufficed to meet with its statutory obligations in light of all the undisputed facts.

Webloyalty I, 673 F. App'x at 107. Accordingly, we remanded L.S.'s "copy" claim under EFTA along with his CUTPA claim alleging that Webloyalty and Gamestop engaged in deceptive trade practices. Id.

On remand, Webloyalty moved for summary judgment on the remaining EFTA claim. In granting summary judgment, the district court concluded that: (1) the email produced by Webloyalty, which contained the details of the

6

1   recurring payments authorized by L.S. (the "Join Email") was authentic, <u>L.S. v.</u>

2   <u>Webloyalty.com, Inc.</u>, 2018 WL 5314913, at *4 (D. Conn. Oct. 26, 2018); (2) there

3   was no genuine dispute of fact that L.S. received the Join Email, <u>id.</u> at *4-5; and

4   (3) the Join Email satisfied Webloyalty's obligation under EFTA, which requires

5   "not an exact reproduction of the entire authorization page . . . but rather, a

6   contemporaneous copy of the terms and conditions of a preauthorized electronic

7   fund transfer [L.S.] has authorized from his account," <u>id.</u> at *7 (internal quotation

8   marks omitted).   Finally, the district court dismissed L.S.'s CUTPA claims

9   against Defendants without prejudice for lack of subject matter jurisdiction,

10  holding that because CUTPA was a state statute, the court "c[ould] only rule on

11  the CUTPA claim if it chooses to exercise supplemental jurisdiction," which it

12  declined to in this case.   <u>Id.</u> at *8-9.   L.S. timely appealed.

13                              **DISCUSSION**

14      "We review questions of statutory interpretation *de novo*."   <u>Roach v.</u>

15  <u>Morse</u>, 440 F.3d 53, 56 (2d Cir. 2006).   Likewise, we review de novo the district

16  court's decision to grant summary judgment on L.S.'s EFTA claim**.**   <u>Estate of</u>

17  <u>Gustafson v. Target Corp.</u>, 819 F.3d 673, 675 (2d Cir. 2016).

18

7

1        **I**

2        Satisfaction (or not) of the "copy of such authorization" requirement turns

3   on a question of statutory interpretation.   EFTA provides (in relevant part) that

4   "[a] preauthorized fund transfer from a consumer's account may be authorized

5   by the consumer only in writing, and a copy of such authorization shall be

6   provided to the consumer when made."   15 U.S.C. § 1693e(a).   L.S. contends

7   that Webloyalty failed to satisfy § 1693e(a) because it did not provide L.S. with a

8   duplicate or facsimile of the Enrollment Page on which he authorized recurring

9   payments.   Defendants argue that a copy of the material terms of the

10  authorization--in the form of the Join Email--was sufficient.[1]   The interpretation

11  of EFTA's "copy of such authorization" requirement is a matter of first

12  impression in this circuit; no other circuit has considered it.

13       The parties propose dueling dictionary definitions of "copy": either

14  one-for-one, as L.S. contends ("an imitation, transcript, or reproduction of an

15  original work," Webster's Third New International Dictionary (2002)); or closely

---

[1] Webloyalty argues that it also satisfied the copy requirement by immediately redirecting L.S. to a webpage containing similar payment details (the "Acknowledgment Page") upon enrollment.   Because we conclude that the Join Email was sufficient to satisfy Webloyalty's obligation under EFTA, we omit further discussion of the Acknowledgment Page.

similar, as Defendants contend ("[a] thing made to be similar or identical to another," Oxford American Desk Dictionary & Thesaurus (3rd ed. 2010)). Although the dictionaries are not dispositive, there seems to be substantial support for the definition of "copy" as "an imitation" or "reproduction of an original." Black's Law Dictionary (5th ed. 1979); The American Heritage Dictionary of the English Language (4th ed. 2000) (same); see also Webster's New World Dictionary (3d College ed. 1988) (explaining that copy "refers to any imitation, often only approximate, of an original"). Of course, it is a "cardinal rule" of statutory construction that "statutory language must be read in context since a phrase gathers meaning from the words around it." United States v. Watkins, 940 F.3d 152, 165-66 (2d Cir. 2019). Here, "copy" does not appear in isolation, but as part of the phrase "copy of such authorization." 15 U.S.C. § 1693e(a). Therefore, to determine what disclosure EFTA required Webloyalty to provide, we should also consider the scope of L.S.'s "authorization."

"Authorization" is "an instance" of "formal permission or approval" or "the action of making legally valid." The Oxford English Dictionary (3d ed. 2014). This narrows the scope of what needs to be "copied" to the text of the Enrollment Page that effected the authorization. Because the vast majority of

9

the Enrollment Page is comprised of extraneous marketing verbiage unrelated to the electronic fund transfer authorization, "copy of such authorization" cannot reasonably be read to encompass the entire Enrollment Page, as L.S. suggests. Instead, the transfer authorization itself was effected by L.S.'s inclusion of the last four digits of a credit/debit card on the Enrollment Page next to the terms of the recurring transfers from that account. See supra at 5. This interpretation is bolstered by the fact that it is consistent with the way "authorization" is used elsewhere in EFTA. See Pereira v. Sessions, 138 S. Ct. 2105, 2115 (2018) ("[I]t is a normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning."). For example, 15 U.S.C. § 1693a(12)(A)--although in the context of describing "unauthorized" transfers--suggests that an authorization is accomplished by the consumer's furnishing of "the card, code, or other means of access to [the] consumer's account . . . ."

Moreover, "we must (as usual) interpret the relevant words not in a vacuum, but with reference to the statutory context, 'structure, history, and purpose.'" Abramski v. United States, 573 U.S. 169, 179 (2014) (quoting Maracich v. Spears, 570 U.S. 48, 76 (2013)). When Congress enacted EFTA in

10

1978, it announced (in an introductory subsection titled "Congressional findings and declaration of purpose") that its primary purpose was to protect consumers in the then-novel context of electronic payment systems:

> The Congress finds that the use of electronic systems to transfer funds provides the potential for substantial benefits to consumers. However, due to the unique characteristics of such systems, the application of existing consumer protection legislation is unclear, leaving the rights and liabilities of consumers, financial institutions, and intermediaries in electronic fund transfers undefined.
>
> ...
>
> It is the purpose of this [statute] to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems. The primary objective of this subchapter, however, is the provision of individual consumer rights.

15 U.S.C. § 1693.

EFTA's stated purpose of consumer protection would be served whether the term "copy of such authorization" is read to mean a duplicate or a summary of material terms. But the former deviates from common usage in the consumer context. For instance, a customer who pays by credit or debit card at a brick-and-mortar shop may be asked to sign a receipt, and receive a "copy" that

differs, in appearance and substance, from the signed version: it may be marked "Customer Copy," lack the customer's signature, or omit itemized charges.

Moreover, as agencies responsible for applying EFTA in the consumer context have discovered, a narrow reading of the "copy of such authorization" requirement will yield some untenable results. For instance, the Consumer Financial Protection Bureau (the "CFPB") has suggested that the written authorization required by EFTA may be given orally over the phone pursuant to the E-SIGN Act, 15 U.S.C. § 7001 et seq; and that a payee can comply with the "copy" requirement by providing the customer with a "copy of the *terms* of the authorization . . . in paper form or electronically." Compliance Bulletin 2015-06, <u>Requirements for Consumer Authorizations for Preauthorized Electronic Fund Transfers</u>, 2015 WL 10372389 (Nov. 23, 2015) ("CFPB Bulletin Six") (emphasis added).[2] By contrast, giving the consumer a duplicate of the oral authorization (e.g., in the form of an audio recording, or a transcription of the telephone conversation) would burden the payee without any corresponding benefit to the consumer. Here, L.S. purportedly received a notice containing the material

---

[2] The CFPB has rulemaking authority to interpret and implement EFTA pursuant to the Dodd Frank Act of 2010, which transferred rulemaking authority from the Federal Reserve.

12

terms and conditions of the payment authorization; a duplicate of the Enrollment Page--which contained text and graphics unrelated to the authorization--would have afforded him no incremental protection.

Finally, L.S. has offered no convincing argument that his narrow reading conforms more closely to the plain meaning or stated purpose of the statute. On the contrary, it conflicts with the CFPB's Official Interpretations of Regulation E, which implements EFTA's "copy" requirement: "[t]he person that obtains the [payment] authorization must provide a copy of *the terms* of the authorization to the consumer either electronically or in paper form."   12 C.F.R. Pt. 205, supp. I, § 10(b), cmt. 5 (emphasis added).

Accordingly, we affirm the district court's holding that EFTA's copy requirement may be satisfied by providing the consumer with an email containing the terms of the preauthorized electronic fund transfer he has authorized from his account.

**II**

L.S. argues that even if we accept Defendants' interpretation of EFTA's "copy" requirement, the district court erred in holding that Webloyalty satisfied the requirement.   Principally, L.S. argues that: (1) the district court failed to

13

1   permit adequate discovery concerning the Join Email; and (2) the Join Email was

2   intentionally confusing.   These arguments are without merit.

3       L.S. argues that further discovery concerning Webloyalty's automated

4   enrollment system might have disclosed unspecified "errors" that interfered with

5   L.S.'s receipt of the terms of his payment authorization.   But a party seeking

6   further discovery "must show that the material sought is germane to the defense,

7   and that it is neither cumulative nor speculative, and a bare assertion that the

8   evidence supporting a plaintiff's allegation is in the hands of the defendant is

9   insufficient."   Alphonse Hotel Corp. v. Tran, 828 F.3d 146, 151 (2d Cir. 2016).

10  We review the district court's decision to forgo further discovery for abuse of

11  discretion.   Id.

12      The district court relied on Defendants' uncontroverted testimony

13  concerning the automated enrollment system that generated the Join Email, and

14  considered the only specific potential failure identified by L.S.: that it did not

15  populate the Acknowledgment Page with L.S.'s personal information.   As the

16  district court concluded, this was irrelevant to Webloyalty's fulfillment of its

17  obligations under EFTA.   Webloyalty, 2018 WL 5314913, at *4.   Having

18  determined that Webloyalty's testimony was credible, the district court

14

reasonably concluded that the possibility that there were more potential errors, or that there was deliberate interference with the automated system, was too speculative to justify further discovery.  Id.

Second, L.S. contends that the Join Email was too confusing to pass muster under EFTA, because the details of L.S.'s payment authorization were at the bottom of a spam-like email beneath prominent graphics advertising Webloyalty's special offers and customer rewards.  These considerations may well be relevant to L.S.'s CUTPA claim alleging deceptive trade practices; and we do not rule out the possibility that a customer notification designed to obscure or omit payment details might violate EFTA's copy requirement.  But the Join Email included "Billing Details" in its subject line, and (under a header reading "OFFER AND BILLING DETAILS – CONFIRMATION FOR YOUR RECORDS") revealed all the material terms of the fund transfers authorized by L.S., including the end date of L.S.'s trial period, at which point charges would begin to accrue; the card being charged; and the monthly interval of the recurring charges. App'x at 791.  Therefore, we agree with the district court that Webloyalty satisfied its obligation under EFTA by sending L.S. the Join Email, a "contemporaneous communication[] [that] fully revealed the terms, conditions,

15

1    and monthly debit card charges under the program in question." Webloyalty,

2    2018 WL 5314913, at *5.

3                                                    **III**

4         We agree with the parties that it was error to dismiss L.S.'s CUTPA claim

5    for lack of subject matter jurisdiction.   The district court held that after granting

6    summary judgment on L.S.'s (federal) EFTA claims, it "c[ould] only rule on the

7    CUTPA claim if it chooses to exercise supplemental jurisdiction." Webloyalty,

8    2018 WL 5314913, at *8.   However, L.S.'s complaint adequately pled an

9    alternative basis for jurisdiction: under the Class Action Fairness Act ("CAFA"),

10   federal district courts are generally invested with original jurisdiction over

11   putative class actions alleging damages exceeding $5 million and a class of more

12   than 100 persons, in which any member plaintiff class is a citizen of a State

13   different from any defendant.   See 28 U.S.C. § 1332(d); App'x at 24 (¶ 7), 285

14   (¶ 19).   See also   Gale v. Chicago Title Ins. Co., 929 F.3d 74, 78 (2d Cir. 2019)

15   (emphasizing that courts must look to the allegations in the operative complaint

16   to determine CAFA jurisdiction).

17       The district court apparently rejected the application of CAFA jurisdiction

18   on the basis that there "may be a conflict emanating from CUTPA's class action

limitations if this claim were to remain in federal court." Webloyalty, 2018 WL 5314913, at *9. But aside from certain statutory exceptions that do not apply in this case, subject matter jurisdiction under CAFA is not discretionary, see 28 U.S.C. § 1332(d)(3)-(4); and the likelihood of class certification or success on the merits had no bearing on the district court's jurisdiction over L.S.'s putative CUTPA class-action claim in the first instance. Therefore, we agree with the parties that the dismissal of L.S.'s CUTPA claim should be vacated, and the case remanded to the district court for further proceedings.

* * *

L.S. requests that this case be assigned to a different judge on remand. Reassignment is justified only in "unusual circumstances." Martens v. Thomann, 273 F.3d 159, 174 (2d Cir. 2001). In reviewing a request for reassignment, we consider the following factors: (1) whether the judge is likely to have "substantial difficulty" putting out of mind "previously-expressed views or findings determined to be erroneous"; (2) whether reassignment is "advisable to preserve the appearance of justice"; and (3) whether it would create "waste and duplication out of proportion to any gain in preserving the appearance of fairness." United States v. Robin, 553 F.2d 8, 10 (2d Cir. 1977) (per curiam).

1   L.S. expresses a fear the district court "cannot be expected to put its
2   previously-expressed opinions out of mind while further presiding over this
3   case." Appellant's Br. at 52. However, nothing substantiates this concern; the
4   fact that the district court ruled against L.S. for a second time on remand is
5   insufficient alone to call into question Judge Haight's impartiality or jeopardize
6   the appearance of justice. See Federal Ins. Co. v. United States, 882 F.3d 348, 373
7   (2d Cir. 2018). Accordingly, we decline to reassign this case to a new judge on
8   remand.

9   **CONCLUSION**

10  We have considered L.S.'s remaining arguments and conclude that they
11  are meritless. For the reasons stated above, the district court's grant of
12  summary judgment on L.S.'s EFTA claim is **AFFIRMED**. The district court's
13  judgment dismissing L.S.'s CUTPA claims against Webloyalty and Gamestop is
14  **VACATED** and the case is **REMANDED** for further proceedings.